# UNITED STATES DISTRICT COURT

for the

Middle District of North Carolina

**"MS. LuLu Bell Michelle Frazier"
convicted as
Michael Louis Frazier**

Case No. **1:24CV956**

*(to be filled in by the Clerk's Office)*

_____

*Plaintiff(s)*
*(Write the full name of each plaintiff who is filing this complaint.*
*If the names of all the plaintiffs cannot fit in the space above,*
*please write "see attached" in the space and attach an additional*
*page with the full list of names.)*

**North Carolina Department
of Adult Corrections
et, al.,, (See Attachment 1)**

_____

*Defendant(s)*
*(Write the full name of each defendant who is being sued. If the*
*names of all the defendants cannot fit in the space above, please*
*write "see attached" in the space and attach an additional page*
*with the full list of names. Do not include addresses here.)*

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

## COMPLAINT FOR VIOLATION OF CIVIL RIGHTS

(Prisoner Complaint)

---

### NOTICE

Federal Rules of Civil Procedure 5.2 addresses the privacy and security concerns resulting from public access to electronic court files. Under this rule, papers filed with the court should *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include *only*: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number.

Except as noted in this form, plaintiff need not send exhibits, affidavits, grievance or witness statements, or any other materials to the Clerk's Office with this complaint.

In order for your complaint to be filed, it must be accompanied by the filing fee or an application to proceed in forma pauperis.

---

Case 1:24-cv-00956-WO-JLW   Document 1   Filed 11/18/24   Page 1 of 73

I. **The Parties to This Complaint**

A. **The Plaintiff(s)**

Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

Name — *Michael Louis Frazier*
All other names by which you have been known: — *Ms. LuLuBell Michelle Frazier*
ID Number — *NCDAC # 0966 292*
Current Institution — *Scotland Correctional Institution*
Address — *22385 McGirts Bridge Rd*
*Laurinburg    NC    28353*
*City            State        Zip Code*

B. **The Defendant(s)**

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. Make sure that the defendant(s) listed below are identical to those contained in the above caption. For an individual defendant, include the person's job or title *(if known)* and check whether you are bringing this complaint against them in their individual capacity or official capacity, or both. Attach additional pages if needed.

Defendant No. 1
Name — *North Carolina Department of*
Job or Title *(if known)* — *Adult Corrections Defendant(s)*
Shield Number — *et al.,*
Employer
Address — *831 West Morgan St.*
*Raleigh    NC    27603*
*City        State        Zip Code*
☐ Individual capacity    ☑ Official capacity

Defendant No. 2
Name — *Todd E. Ishee*
Job or Title *(if known)* — *Secretary of NCDAC*
Shield Number
Employer — *NCDAC*
Address — *831 West Morgan St*
*Raleigh    NC    27603*
*City        State        Zip Code*
☐ Individual capacity    ☑ Official capacity

Defendant No. 3

Name       *BrandeShawn Harris*

Job or Title *(if known)*    *Cheif Deputy Secretary NCDAC*

Shield Number

Employer       *NCDAC*

Address       *831 West Morgan St,*
*Raleigh    NC   27603*
            *City*       *State*      *Zip Code*

☐ Individual capacity   ☑ Official capacity

Defendant No. 4

Name       *GARY JUNKER*

Job or Title *(if known)*    *Deputy Secretary NCDAC*

Shield Number

Employer       *NCDAC*

Address       *831 West Morgan St,*

*see Attachment 2*     *Raleigh   NC   27603*
            *City*       *State*      *Zip Code*

☐ Individual capacity   ☐ Official capacity

## II.    Basis for Jurisdiction

Under 42 U.S.C. § 1983, you may sue state or local officials for the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]." Under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971),* you may sue federal officials for the violation of certain constitutional rights.

A.    Are you bringing suit against *(check all that apply)*:

☐ Federal officials (a *Bivens* claim)

☐ State or local officials (a § 1983 claim)

B.    Section 1983 allows claims alleging the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]." 42 U.S.C. § 1983. If you are suing under section 1983, what federal constitutional or statutory right(s) do you claim is/are being violated by state or local officials?

*see Attachment 3*

C.    Plaintiffs suing under *Bivens* may only recover for the violation of certain constitutional rights. If you are suing under *Bivens*, what constitutional right(s) do you claim is/are being violated by federal officials?

Case 1:24-cv-00956-WO-JLW    Document 1    Filed 11/18/24    Page 3 of 73

N/A

D. Section 1983 allows defendants to be found liable only when they have acted "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia." 42 U.S.C. § 1983. If you are suing under section 1983, explain how each defendant acted under color of state or local law. If you are suing under *Bivens*, explain how each defendant acted under color of federal law. Attach additional pages if needed.

See
Attachment 4

## III. Prisoner Status

Indicate whether you are a prisoner or other confined person as follows *(check all that apply)*:

☐ Pretrial detainee

☐ Civilly committed detainee

☐ Immigration detainee

☑ Convicted and sentenced state prisoner

☐ Convicted and sentenced federal prisoner

☐ Other *(explain)* _____

## IV. Statement of Claim

State as briefly as possible the facts of your case. Describe how each defendant was personally involved in the alleged wrongful action, along with the dates and locations of all relevant events. You may wish to include further details such as the names of other persons involved in the events giving rise to your claims. Do not cite any cases or statutes. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

A. If the events giving rise to your claim arose outside an institution, describe where and when they arose.

NO, inside NC DAC prisons

B. If the events giving rise to your claim arose in an institution, describe where and when they arose.

See Attachment(s) #5 pages IV B(1) to IV B(21)

C.  What date and approximate time did the events giving rise to your claim(s) occur?

See Attachment 5
From May of 2021 until present time

D.  What are the facts underlying your claim(s)? *(For example: What happened to you? Who did what? Was anyone else involved? Who else saw what happened?)*

See Attachment 5 states facts for claims) But Not limited to the Narrowed scope of events. Plaintiff Has a Brief Prepaired for after this step in process.

## V. Injuries

If you sustained injuries related to the events alleged above, describe your injuries and state what medical treatment, if any, you required and did or did not receive.

See Attachment 6 pages -V(1)>to -V(2).

## VI. Relief

State briefly what you want the court to do for you. Make no legal arguments. Do not cite any cases or statutes. If requesting money damages, include the amounts of any actual damages and/or punitive damages claimed for the acts alleged. Explain the basis for these claims.

See Attachment 7

**VII.    Exhaustion of Administrative Remedies Administrative Procedures**

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), requires that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

Administrative remedies are also known as grievance procedures. Your case may be dismissed if you have not exhausted your administrative remedies.

A.    Did your claim(s) arise while you were confined in a jail, prison, or other correctional facility?

☑ Yes

☐ No

If yes, name the jail, prison, or other correctional facility where you were confined at the time of the events giving rise to your claim(s).

See Attachment 8

_____

B.    Does the jail, prison, or other correctional facility where your claim(s) arose have a grievance procedure?

☑ Yes

☐ No

☐ Do not know

C.    Does the grievance procedure at the jail, prison, or other correctional facility where your claim(s) arose cover some or all of your claims?

☑ Yes

☐ No

☐ Do not know

If yes, which claim(s)?

See Attachment 9 Dates, Topic, Number

D. Did you file a grievance in the jail, prison, or other correctional facility where your claim(s) arose concerning the facts relating to this complaint?

☑ Yes

☐ No

If no, did you file a grievance about the events described in this complaint at any other jail, prison, or other correctional facility?

☐ Yes

☐ No

E. If you did file a grievance:

1. Where did you file the grievance?

Following Facilities Columbus CI, Sampson CI, Harnett CI, Neuse CI, Pender CI, Scotland CI, Avery-Mitchelle CI, Mt. View CI

2. What did you claim in your grievance?

See Attachment 9

3. What was the result, if any? Exhausted, ALL grievances every time DAC always says we are wrong that the violation of my Rights was Right DAC Nearly every time Rejected my complaint

4. What steps, if any, did you take to appeal that decision? Is the grievance process completed? If not, explain why not. *(Describe all efforts to appeal to the highest level of the grievance process.)*

Exhausted Step (1), (2), (3) Exhausted each Topic,

F.     If you did not file a grievance:

1.     If there are any reasons why you did not file a grievance, state them here: I filed PREA Complains on mental Health Forms, and other means by Voicemail at # 1-972-535-3499 on Prison Phone system

2.     If you did not file a grievance but you did inform officials of your claim, state who you informed, when and how, and their response, if any: ALL Medical, PREA, Sexual Harassment, Accommodations, Medical Refusals, Gender Marker, et al were Topics of Past F-TARC meetings And D-TARC Appeals

G.     Please set forth any additional information that is relevant to the exhaustion of your administrative remedies. Asked For Help constantly to all Custody, Medical, DAC Staff Also ✓✓

*(Note: You may attach as exhibits to this complaint any documents related to the exhaustion of your administrative remedies.)*

## VIII. Previous Lawsuits

The "three strikes rule" bars a prisoner from bringing a civil action or an appeal in federal court without paying the filing fee if that prisoner has "on three or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury." 28 U.S.C. § 1915(g).

To the best of your knowledge, have you had a case dismissed based on this "three strikes rule"?

☐ Yes

☒ No

If yes, state which court dismissed your case, when this occurred, and attach a copy of the order if possible.

A.  Have you filed other lawsuits in state or federal court dealing with the same facts involved in this action?

☐ Yes

☑ No

B.  If your answer to A is yes, describe each lawsuit by answering questions 1 through 7 below. *(If there is more than one lawsuit, describe the additional lawsuits on another page, using the same format.)*

1.  Parties to the previous lawsuit
    Plaintiff(s) _____
    Defendant(s) _____

2.  Court *(if federal court, name the district; if state court, name the county and State)*
    *N/A*

3.  Docket or index number
    *N/A*

4.  Name of Judge assigned to your case
    *N/A*

5.  Approximate date of filing lawsuit
    *N/A*

6.  Is the case still pending?

    ☐ Yes

    ☑ No

    If no, give the approximate date of disposition. _____

7.  What was the result of the case? *(For example: Was the case dismissed? Was judgment entered in your favor? Was the case appealed?)*

    *N/A*

C.  Have you filed other lawsuits in state or federal court otherwise relating to the conditions of your imprisonment?

☐ Yes

☑ No

D.      If your answer to C is yes, describe each lawsuit by answering questions 1 through 7 below.  *(If there is more than one lawsuit, describe the additional lawsuits on another page, using the same format.)*

1.  Parties to the previous lawsuit

Plaintiff(s) _____

Defendant(s) _____

2.  Court *(if federal court, name the district; if state court, name the county and State)*

N/A _____

3.  Docket or index number

N/A _____

4.  Name of Judge assigned to your case

N/A _____

5.  Approximate date of filing lawsuit

N/A _____

6.  Is the case still pending?

☐ Yes

☑ No

If no, give the approximate date of disposition _____

7.  What was the result of the case? *(For example: Was the case dismissed?  Was judgment entered in your favor?  Was the case appealed?)*

N/A _____

## IX.    Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A.    For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served.  I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: _____

Signature of Plaintiff    *Ms Evelyn Bell Michelle" Ms N Frazier*

Printed Name of Plaintiff    "MS, LuluBell Michelle" ms. Michael L. Frazier

Prison Identification #    0966242

Prison Address    22385 McGirts Bridge Rd,
Laurinburg        NC      28353
        *City*        *State*        *Zip Code*

### B.    For Attorneys

Date of signing: _____

Signature of Attorney    _____

Printed Name of Attorney    _____

Bar Number    _____

Name of Law Firm    _____

Address    _____
        *City*         *State*        *Zip Code*

Telephone Number    _____

E-mail Address    _____

# ATTACHMENT 1

North Carolina Department of Adult Corrections et al., ; Todd E. Ishee; Gary Junker; Arthur Campbell; Brandeshawn Harris; Terri Catlett; Jonathan Peiper; Brian Sheitman; Valerie Langley; Abhay Agarwal; Sarah Cobb; Josh Panter; Charlotte Williams; Elton Amos; Jessica Laub; FNU Dr. Collins; Amanda Faulk; Kelly Dennis (R. FNP); FNU J. Hunt; FNU Timmons; FNU Captian H. Locklear; FNU officer Goodman; FNU sergeant Evans; FNU Sergeant Hernadez; FNU sergeant Wargo; FNU officer Martain; FNU case manger Ruiz; Diane Browning (R. FNP); Timmothy Jones; FNU officer Beuthler; Carmen Hindricks (P.A.), FNU Nurse OXIDINE (male Nurse); FNU officer (male) HARDEE

ATTACHMENT 2 Pages 3(a)(1) to 3(a)(7)

DEFENDANT 5:

Arthur L. Campbell, M.D. (in his official capacity as)
Chief Medical Officer [Division Transgender Accomodation
Review Committee]["DTARC"]

N.C.D.A.C.
831 West Morgan Street
Raleigh, N.C.          27603-1659


DEFENDANT 6:

Brian Sheitman, M.D. (in his official capacity as)
Chief of Psychiatry "DTARC"
N.C.D.A.C
831 West Morgan Street
Raleigh, N.C.     27603-1659


DEFENDANT 7:

Lewis Johnathan Peiper, Ph.D. (in his official capacity as)
Director of Behavioral Health "DTARC"
N.C.D.A.C.
831 West Morgan Street
Raleigh, N.C.     27603-1659


DEFENDANT 8:

Josh Panter (in his official capacity as)
N.C.D.A.C's Director of Operations "DTARC"
N.C.D.A.C. Division of Prisons
831 West Morgan Street
Raleigh     N.C.          27603-1659

- 3(a)(1) -

DEFENDANT 9:

GARY JUNKER (IN HIS OFFICIAL CAPACITY AS)
DIRECTOR OF HEALTH AND WELLNESS SERVICES
N.C. D.A.C  D.O.P
831 WEST MORGAN STREET
RALEIGH                N.C.        27603 - 1659

DEFENDANT 10:

SARAH COBB (IN HER OFFICIAL CAPACITY AS)
D.A.C.'s DIRECTOR OF REHABILITATIVE SERVICES
N.C. D.A.C.    D.O.P.
831 WEST MORGAN STREET
RALEIGH       N.C       27603 - 1569

DEFENDANT 11:

ABHAY AGARWAL (IN HIS OFFICIAL CAPACITY AS)
DEPUTY CHIEF MEDICAL OFFICER
N.C.D.A.C.    D.O.P.
831 WEST MORGAN STREET
RALEIGH      N.C.         27603 - 1659

DEFENDANT 12:

JESSICA LAUB, M.A. (IN HER OFFICIAL CAPACITY AS)
STAFF PSYCHOLOGIST (SCOTLAND CORR INST)
N.C. D.A.C.
22385 M<sup>c</sup>GRITS BRIDGE ROAD
LAURINBURG      N.C.          28353

- 3 (a)(2) -

**DEFENDANT 13:**

Dr. Collins M.A.R.P.A (in her official capacity)
Regional Supervisor of Psychology
N.C.D.A.C. [Scotland Corr Inst]
22385 M^c Grits Bridge Road
Laurinburg   N.C.      28352

**DEFENDANT 14:**

Carmen Hendricks   (in her official capacity)
Physician's Assistant
N.C.D.A.C. [Scotland Corr Inst]
22385 M^c Grits Bridge Road
Laurinburg   N.C.      28352

**DEFENDANT 15:**

Charlotte Williams   (in her official capacity as)
P.R.E.A Director
N.C.D.A.C.   Div of Prisons
831 West Morgan Street
Raleigh   N.C.      27603-1659

**DEFENDANT 16:**

Terri Catlett   (in her official capacity as)
Director of Healthcare Administration
N.C. D. A. Corr   Div of Prisons
831 West Morgan Street
Raleigh   N.C.      27603-1659

- 3 (o)(3) -

DEFENDANT 17:

ELTON AMOS     (IN HIS OFFICIAL CAPACITY)
UTILIZATION REVIEW BOARD MEMBER
N.C. DEPT ADULT CORR · DIVISION OF PRISONS
831 WEST MORGAN STREET
RALEIGH      N.C.      27603-1659

DEFENDANT 18:

VALERIE LANGLEY  (IN HER OFFICIAL CAPACITY)
DIRECTOR OF NURSING
N.C.D.A.C.    D.O.P.
831 WEST MORGAN STREET
RALEIGH      N.C.      27603-1659

DEFENDANT 19:

TIMOTHY JONES   (IN HIS OFFICIAL CAPACITY AS)
CORRECTIONS ADMINISTRATOR I (SUPERINTENDENT)
N.C.D.A.C.   PENDER CORR INST.
906 PENDER LEA HIGHWAY
BURGAW      N.C      28421

DEFENDANT 20:

MRS. RUIZ  (IN HER INDIVIDUAL CAPACITY)
CASE MANAGEMENT SUPERVISOR
N.C.D.A.C. PENDER CORR INST
906 PENDER LEA HIGHWAY
BURGAW      N.C.      28421

- 3(a)(4) -

DEFENDANT 21:

SERGEANT HERNANDEZ (IN HIS INDIVIDUAL CAPACITY)
CORRECTIONAL OFFICER
N.C.D.A.C. - D.O.P. PENDER CORR. INST.
906 PENDER LEA HIGHWAY
BURGAW    N.C.         28421

DEFENDANT 22:

SERGEANT EVANS (IN HIS INDIVIDUAL CAPACITY)
CORRECTIONAL OFFICER
N.C.D.A.C - D.O.P PENDER CORR INST.
906 PENDER LEA HIGHWAY
BURGAW    N.C.         28421

DEFENDANT 23:

SERGEANT WARGO   (IN HIS INDIVIDUAL CAPACITY)
CORRECTIONAL OFFICER
N.C.D.A.C - D.O.P. PENDER CORR INST
906 PENDER LEA HIGHWAY
BURGAW    N.C.         28421

DEFENDANT 24:

OFFICER MARTIN (IN HIS OFFICIAL CAPACITY)
CORRECTIONAL OFFICER
N.C.D.A.C. - D.O.P. PENDER CORR INST.
906 PENDER LEA HIGHWAY
BURGAW    N.C.         28421

- 3 (a)(5)

DEFENDANT 25:

Captain H. Locklear (Individual Capacity)
Correctional Supervisor   Scotland Corr Inst.
N.C.D.A.C - D.O.P
22385 M°Grits Bridge Road
Laurinburg   N.C.          28352

DEFENDANT 26:

Sergeant Timmons (Individual Capacity)
Correctional Officer
N.C.D.A.C - D.O.P. Scotland Corr Inst.
22385 M°Grits Bridge Road
Laurinburg   NC          28352

DEFENDANT 27:

Officer J. Hunt (Individual Capacity)
Correctional Officer
N.C.D.A.C - D.O.P. Scotland Corr Inst.
22385 M°Grits Bridge Road
Laurinburg   N.C.          28352

DEFENDANT 28:

Officer Ms. Goodman (In Her Individual Capacity)
Correctional Officer
N.C.D.A.C. - D.O.P. Scotland Corr Inst.
22385 M°Grits Bridge Road
Laurinburg   N.C.          28421

- 3 (a)(b)

Defendant 29: AMANDA FAULK
(IN Her offical Capacity)
Staff Psychologist Counselor
Scotland Corr. INST.
N.C.D.A.C.
22385 McGirts Bridge Rd.
Laurinburg N.C. 28353

Defendant 30: KELLY DENNIS, R. FNP.
(IN Her offical Capacity)
Registered Family Nurse
Practitioner, Scotland Corr. INST.
22385 McGirts Bridge Rd.
Laurinburg N.C. 24353

Defendant 31: OFFICER BEUTLER
(IN Her individual Capacity)
Correctional OFFICER
906 PenderLea HighWay
BurGaw N.C. 28421

Defendant 32: Diane Browning, R. FNP.
(IN Her Official Capacity)
Registered Family NURSE
Practitioner, PendeR Corr. INST.
906 PenderLea HighWay
BurGaw N.C. 28421

3 (a)(7)

Defendant 33: FNU (male Nurse)
OXIDINE (IN His Individual Capacity)
Medical Staff
Scotland C.I.
N.C.D.A.C.
22385 McGirts Bridge Rd.
Laurinburg, N.C. 28353

Defendant 34: FNU (Officer Mr.)(I His
HARDEE    (Individual Capacity)
Custody D.A.C. Officer I
Scotland Facility
N.C.D.A.C.
22385 McGirts Bridge Rd.
Laurinburg, NC 28353

3 (a)8

# Attachment 3
## Basis For Jurisdiction

II

(B)(A) Plaintiff brings this action pursuant to 42 U.S.C. § 1983; the Cruel and Unusual Punishments Clause of the Eighth Amendment of the United States Constitution; the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution; the Cruel or Unusual Punishments Clause of Article I, Section 27 of the North Carolina Constitution; the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, et. seq.; and Section 504 of the Rehabilitation Act of 1973 ("Rehab Act"), 29 U.S.C. § 794a.

(B)(b) This Court has subject matter jurisdiction pursuant to 28 U.S.C.A. § 1331, which provides that District Courts have original jurisdiction in civil actions to address deprivation(s) occurring under color of any State law, of any right or privilege secured by the United States Constitution.

(B)(C.) This Court has supplemental jurisdiction over Plaintiff's State law claim(s) pursuant to 28 U.S.C.A § 1367(a) because it/they is/are so related to Plaintiff's Federal law claim(s) that it is part of the same case or controversy under Article III of the United States Constitution.

(B)(D) This Court has personal jurisdiction over the Parties as North Carolina Residents.

- 3 (B)(1)

(B)(E.) Venue is proper under 28 U.S.C.A. § 1391 (b)(2) since a substantial part of the events, acts or omissions giving rise to Plaintiff's claims occurred in the Middle District of North Carolina.

## II D.    Attachment 4

1. The North Carolina Department of Adult Correction ["N.C.D.A.C. or "D.A.C"] known as such since 2021, is a "Public Entity" as is defined by Title II of 42 U.S.C.A. § 12131 (i)(A) and (B) and as such constitutes a Program or Activity receiving Federal Financial Assistance under the provisions of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C.A. § 794 (b)(1)(A). "D.A.C" is a Department within the Executive Branch's Cabinet authorized pursuant to Article III, Section 5 (4) and (8) of the North Carolina Constitution. Therefore, any personnel in the employ of this "Administrative Department of the Executive Office" is employed "under color of [state] law."

   Defendant N.C.D.A.C-D.OP is being sued for acts or omissions of its named defendant personnel pursuant to the Equal Protection and Due Process Clause(s) of the Fourteenth Amendment; the Cruel and Unusual Punishments Clause of the Eighth Amendment of the United States Constitution; the "law of the land" and Equal Protection Clause(s) of Article I, Section 19; and the Cruel or Unusual Punishments Clause of Article I, Section 27 of the North Carolina Constitution.

Case 1:24-cv-00956-WO-JLW    Document 1    Filed 11/18/24    Page 22 of 73

2. DEFENDANT Todd E. ISHEE IS THE SECRETARY OF THE NORTH CAROLINA DEPARTMENT OF ADULT CORRECTION - DIVISION OF PRISONS SERVING "UNDER COLOR OF LAW" AT THE PLEASURE OF THE GOVERNOR. THE SECRETARY IS RESPONSIBLE FOR THE OVERALL OPERATION(S) OF THE "D.A.C", INCLUDING NORTH CAROLINA's PRISONS. THE SECRETARY HAS A LEGAL DUTY AND CONSTITUTIONAL OBLIGATION TO ENSURE THAT NEEDED HEALTH CARE IS PROVIDED TO ALL PERSONS IN "D.A.C-D.OP" CUSTODY. THE SECRETARY IS ALSO INCLUDED IN THE "CHAIN OF COMMAND" FOR THE REVIEW AND DECISION-MAKER ASPECTS OF GRIEVANCES SUBMITTED PURSUANT TO "D.A.C" ADMINISTRATIVE REMEDY PROCEDURE. THE SECRETARY IS THUS SUED IN HIS OFFICIAL CAPACITY UNDER 42 U.S.C.A. §1983 FOR ACTS OR OMISSIONS IN VIOLATION OF PLAINTIFF's EIGHTH, AND FOURTEENTH AMENDMENT RIGHTS; AND ARTICLE I, SECTION(S) 19 AND 27 OF THE STATE CONSTITUTION.

3. DEFENDANT Brandeshawn Harris IS THE COMMISSIONER OF PRISONS (FORMERLY "DIRECTOR" OF PRISONS) FOR THE DIVISION OF PRISONS ("D.O.P") OF THE N.C.D.A.C. THE COMMISSIONER IS RESPONSIBLE FOR THE ADMINISTRATION OF THE STATE's PRISONS, THAT INCLUDES THE PROMULGATION AND IMPLEMENTATION OF "N.C.D.A.C.-D.OP. POLICIES AND PROCEDURES. THE COMMISSIONER HAS A LEGAL DUTY AND A CONSTITUTIONAL OBLIGATION TO PROVIDE ANY NEEDED HEALTH CARE TO ALL PERSONS IN D.O.P. CUSTODY. THIS PRISON OFFICIAL IS BEING SUED IN Her OFFICIAL CAPACITY UNDER 28 U.S.C.A. §1983 FOR ACTS OR OMISSIONS IN VIOLATION OF PLAINTIFF's EIGHTH AND FOURTEENTH AMENDMENT RIGHTS; AND ARTICLE I, SECTION(S) 19 AND 27 OF THE STATE CONSTITUTION.

$-4D(a)-$

4   DEFENDANT Gary JunkeR    IS THE ASSISTANT COMMISSIONER
OF PRISONS FOR THE DOP. THE ASSISTANT COMMISSIONER IS ALSO
RESPONSIBLE FOR THE OVERALL CUSTODY AND SECURITY OPERATIONS
OF THE DOP. UPON INFORMATION AND BELIEF, THIS DEFENDANT IS ONE
OF TWO FINAL REVIEWERS AND DECISION-MAKERS IN REGARD FOR REQUESTS
FOR SURGICAL INTERVENTION MADE TO THE "DIVISION TRANSGENDER
ACCOMODATION REVIEW COMMITTEE ("DTARC"). THIS DEFENDANT IS
BEING SUED IN HIS OFFICIAL CAPACITY UNDER 42 U.S.C.A. §1983 FOR
ACTS OR OMISSIONS IN VIOLATION OF PLAINTIFF'S EIGHTH AND FOURTEENTH
AMENDMENT RIGHTS; AND ARTICLE I, SECTION(S) 19 AND 27 OF THE
STATE CONSTITUTION.

5.  DEFENDANT, DR ARTHUR "LES" CAMPBELL IS THE MEDICAL DIRECTOR
FOR THE DOP. HE IS RESPONSIBLE FOR OVERSIGHT OF THE DAY-TO-
DAY OPERATIONS OF MEDICAL SERVICES AND FOR ENSURING THE
QUALITY OF THE MEDICAL SERVICES PROVIDED TO ALL PERSONS IN
D.O.P. CUSTODY. DEFENDANT CAMPBELL, AS A PHYSICIAN, HAS A
LEGAL, MORAL AND ETHICAL DUTY TO PROVIDE ANY NEEDED HEALTH CARE
TO PERSONS IN DAC-DOP CUSTODY. UPON INFORMATION AND BELIEF,
DEFENDANT CAMPBELL IS A MEMBER OF DTARC, A PROFESSIONAL MEMBER,
ONE OF THREE PROFESSIONAL MEMBERS, IN FACT, WHO "ACTING UNDER
COLOR OF LAW", ACCORDING TO INFORMATION RECEIVED, HAS NEVER
FOUND THE SURGERY SOUGHT IN THIS CASE TO BE "MEDICALLY NECESSARY
TO TREAT GD." HE IS BEING SUED IN HIS OFFICIAL AND INDIVIDUAL
CAPACITIES UNDER 1983 FOR VIOLATIONS OF PLAINTIFF'S RIGHTS UNDER
THE EIGHTH AMENDMENT AND ARTICLE I, SECTION 27 OF THE
STATE CONSTITUTION.

-4D(3)

6 DEFENDANT BRIAN SHELTMAN, MD IS THE CHIEF OF PSYCHIATRY
FOR THE DIVISION OF PRISONS. DEFENDANT SHELTMAN HAS A LEGAL,
MORAL AND ETHICAL DUTY TO ENSURE THAT NEEDED MEDICAL HEALTH
CARE IS PROVIDED TO ALL PERSONS IN DOP CUSTODY. UPON INFORMATION
AND BELIEF, DEFENDANT SHELTMAN, MD, IS A SECOND OF THREE
PROFESSIONAL MEMBERS OF DTARC, WHO, IT IS BELIEVED, DEFERS
TO THE OPINION OF DEFENDANT 5, supra. HE IS BEING SUED IN HIS
OFFICIAL CAPACITY UNDER §1983 FOR VIOLATIONS OF PLAINTIFF'S
EIGHTH AMENDMENT RIGHTS AND ARTICLE I, SECTION 27 RIGHTS OF
THE STATE CONSTITUTION.

7 DEFENDANT LEWIS JOHNATHAN PEIPER, PH.D. IS THE DIRECTOR OF
BEHAVIORAL HEALTH FOR THE DIVISION OF PRISONS. DEFENDANT IS
RESPONSIBLE FOR THE APPROVAL OF THE BEHAVIORAL HEALTH SERVICES
PROVIDED TO ALL PERSONS IN DOP CUSTODY AS WELL AS BEING
RESPONSIBLE TO OVERSEE THE DAY-TO-DAY OPERATION OF BEHAVIORAL
HEALTH SERVICES AND ENSURING THEIR QUALITY. AS SUCH, DEFENDANT
HAS A LEGAL, MORAL AND ETHICAL DUTY TO PROVIDE NEEDED HEALTH
CARE TO ALL PERSONS IN DOP CUSTODY. UPON INFORMATION AND
BELIEF, DEFENDANT PEIPER IS THE THIRD OF THREE PROFESSIONAL
MEMBERS OF DTARC, WHO, IT IS BELIEVED, DEFERS TO THE OPINION
OF DEFENDANT 5, supra, AS TO "MEDICAL NECESSITY." HE IS BEING
SUED IN HIS OFFICIAL CAPACITY UNDER §1983 FOR VIOLATIONS OF
PLAINTIFF'S EIGHTH AMENDMENT RIGHTS AND UNDER ARTICLE I, SECTION
27 OF THE STATE CONSTITUTION.

8 Defendant Josh Panter is the Director of Operations for the Division of Prisons. Upon information and belief, Defendant is not a clinical staff member of DTARC, is not a medical professional, and has no experience treating medical infirmities. Defendant, as a DTARC member nonetheless has a legal duty to provide needed health care to all persons in DOP custody. He is sued in his official capacity under §1983 for violations of Plaintiff's rights under the Eighth and Fourteenth Amendments and Article I, Section 27 of the State Constitution.

9. Defendant Dr. Gary Junker is the Director of Health and Wellness for the Division of Prisons. As such, he is responsible for the administration, planning, organizing, and coordinating a health and wellness delivery system which includes medical, nursing, dental, behavioral health, mental health, pharmacy, quality assurance and compliance for all persons in DOP custody. The Defendant must, as Director of Health and Wellness, approve all DOP health and wellness policies and directives. Defendant, therefore, has a duty to ensure that those policies and directives approved by him, provide the needed health care to all persons in DOP custody. Upon information and belief, Defendant is one of two prison officials rendering the final review and decision, approving or disapproving requests submitted to DTARC for surgical intervention. Thus, logically, if DTARC's recommendations are subject to approval by Defendant, they can also be subject to disapproval as well. He is sued in his official and individual capacity under §1983 for violations of Plaintiff's 8th and 14th Amendment rights

- 4D(5) -

Case 1:24-cv-00956-WO-JLW   Document 1   Filed 11/18/24   Page 26 of 73

AND UNDER ARTICLE I, SECTION 27 OF THE STATE CONSTITUTION.

10. DEFENDANT SARAH COBB IS THE DIRECTOR OF REHABILITATIVE SERVICES OF THE DIVISION OF PRISONS. DEFENDANT IS A NON-CLINICAL MEMBER OF DTARC'S STAFF, AND IS NOT A MEDICAL PROFESSIONAL, BUT STILL HAS A LEGAL DUTY TO PROVIDE NEEDED HEALTH CARE TO ALL PERSONS IN DOP CUSTODY. SHE IS SUED IN HER OFFICIAL CAPACITY UNDER §1983 FOR VIOLATIONS OF PLAINTIFF'S 8TH AND 14TH AMENDMENT RIGHTS AND UNDER ARTICLE I, SECTION 27 OF THE STATE CONSTITUTION.

11. DEFENDANT DR. ABHAY AGARWAL IS THE DEPUTY MEDICAL DIRECTOR OF THE DIVISION OF PRISONS. DEFENDANT AGARWAL HAS A DUTY, INTER ALIA, TO PROVIDE NEEDED HEALTH CARE TO ALL PERSONS IN DOP CUSTODY. UPON INFORMATION AND BELIEF, THIS DEFENDANT IS A DTARC MEMBER. HE IS SUED IN HIS OFFICIAL CAPACITY UNDER §1983 FOR VIOLATIONS OF PLAINTIFF'S RIGHTS UNDER THE 8TH AND 14TH AMENDMENTS AND ARTICLE I, SECTION 27 OF THE STATE CONSTITUTION.

12. DEFENDANT JESSICA LAMB, M.A.L.PA, IS A STAFF PSYCHOLOGIST EMPLOYED AT SCOTLAND CORRECTIONAL INSTITUTION. DEFENDANT PERSONALLY SEES AND INTERACTS PROFESSIONALLY WITH PERSONS INCARCERATED WHO HAVE MENTAL HEALTH ISSUES REQUIRING TREATMENT. DEFENDANT HAS A LEGAL, MORAL AND ETHICAL DUTY TO ENSURE THAT NEEDED MEDICAL AND MENTAL HEALTH CARE IS PROVIDED TO ALL PERSONS IN DOP CUSTODY THAT ARE IN HER CARE. SHE IS SUED IN HER OFFICIAL CAPACITY FOR VIOLATIONS OF PLAINTIFF'S RIGHTS UNDER §1983 PURSUANT TO THE 8TH AND 14TH AMENDMENTS AND ARTICLE I, SECTION 27 OF THE STATE CONSTITUTION.

- 4 D (6) -

13 Defendant Dr. Collins, MH,PA is the Regional Supervisor of Psychology that encompasses Scotland County Prison Facilities, et al., Dr. Collins oversees the Psychiatric Standards of Care, and the Personnel Administering those Standards to ensure that Persons in the DOP Receive the Needed Mental Health Care they Require. Dr. Collins is sued in an Official Capacity under §1983 for violations of Plaintiff's 8th and 14th Amendment Rights and under Article I, §27 of the State Constitution.

14 Defendant Carmen Hendricks is a Physician's Assistant who Practices at Scotland Correctional Institution. Defendant, in this capacity, determines and documents the existence of any medical need(s) she diagnoses, and is the "Early Echelon" of medical infirmities Prevalent to all in DAC-DOP Custody. She is the Primary Source of Treatment for any infirmity Diagnosed. She is sued under §1983 in his official capacity for violations of Plaintiff's Rights under the 8th and 14th Amendments and Article I, §27 of the State Constitution.

15. Defendant Charlotte Williams is the Prison Rape Elimination Act ["P.R.E.A"] 42 U.S.C.A §15601 et seq. (2003) Director for all of DAC-DOP Adult Correction and Juvenile Justice. She is Responsible for the development, implementation and oversight of DAC Efforts to come into compliance with the P.R.E.A. Standards in all its Facilities. She is Responsible for the oversight of Reported PREA incidents within the Prison System. Defendant Has a Legal Duty to Provide any Required Protection or

- 4 D(7) -

Health Services Required (physical and/or mental) for all PREA victims. Upon information and belief, Defendant Williams is a member of DTHRC. She is sued in her official capacity under §1983 for violations of Plaintiff's Rights under the 8th and 14th Amendments, and Article I, §27 of the State Constitution.

16. Defendant Terri Catlett is the Director of Healthcare Administration for the Division of Prisons. As such, she is responsible for the oversight of the Budget, Staffing, Contracts for the DOP Medical Services, maintaining Medical Records, Electronic Records, and Telehealth Related Services to all Persons in DOP Custody, inter alia. Undoubtedly, she has a duty to provide any needed Health Care to those in DOP Custody. Upon information and belief, Defendant Catlett is a member of DTHRC. She is sued in her official capacity under §1983 for violations of Plaintiff's 8th and 14th Amendment Rights and under Article I, Section 27 of the State Constitution.

17. Defendant Elton Amos is a member of the Utilization Review Board for the DOP. Defendant Amos, et al, review medical referrals from prison units for a determination of medical necessity. He has a legal duty to provide Health Care due to medical necessity for all persons in DOP Custody. He is being sued in his official capacity under §1983 for violations of Plaintiff's Eighth, Fourteenth Amendment Rights and under Article I, Section 27 of the State Constitution.

− 4b(8) −

18 Defendant VALERIE LANGLEY, RN, is the Director of Nursing for the Division of Prisons. Defendant Langley has an ethical and legal duty to ensure that the Nurses of the DOP provide the needed care for the health concerns involved to all persons in DOP custody. Upon information and belief, Defendant Langley is a member of DTARC. She is sued in her official capacity under § 1983 for violation of Plaintiff's 8th and 14th Amendment Rights and Article I, Section 27 of the State Constitution.

19 Defendant TIMOTHY JONES is the Correctional Administrator I (AKA "Superintendent" or "Warden") of the Pender Correctional Institution. He is ultimately responsible for the "Professional" conduct of his Institutional personnel. He is ultimately responsible to ensure that those entrusted to his care and supervision receive necessary and adequate health care. He is ultimately responsible to ensure that those entrusted to his care suffer no P.R.E.A. violations by staff or other prisoners. It is alleged that Defendant has ultimately failed in these responsibilities. He is being sued in his official capacity under § 1983 for violations of Plaintiff's 8th and 14th Amendment Rights and Article I, § 27 of the State Constitution.

20 Defendant RUIZ is a Case Manager employed at Pender Correctional Institution, who is also Case Management Supervisor. June 10, 2022, Defendant Ruiz was present in the Receiving Area of P.C.I. when Plaintiff transferred into that institution. At that time Plaintiff was sexually harassed by yet another Defendant (named infra). Defendant Ruiz was a witness to this harassment

AND KNEW, OR HAD REASONABLE GROUNDS TO BELIEVE, THAT PRISON POLICY AND PROCEDURE, CHAPTER F, SECTION .3400 et seq WAS BEING VIOLATED, AS WERE PREA PROTECTIONS. MRS RUIZ HAD A LEGAL DUTY TO, IF NOT STOP THIS SEXUAL HARASSMENT, TO REPORT SAME TO THE APPROPRIATE AUTHORITIES FOR INVESTIGATION AND APPROPRIATE REMEDIAL MEASURES. DEFENDANT, HOWEVER, APPEARED TO BE DELIBERATELY INDIFFERENT TO THESE WITNESSED EVENTS. UPON INFORMATION AND BELIEF, MRS RUIZ NEVER REPORTED THESE VIOLATIONS TO PREA STAFF. DEFENDANT IS SUED IN HER INDIVIDUAL CAPACITY UNDER $1983 FOR VIOLATING PLAINTIFF'S 8TH AND 14TH AMENDMENT RIGHTS AND ARTICLE I, $27 OF THE STATE CONSTITUTION.

21 DEFENDANT SERGEANT HERNANDEZ IS A RANKING CORRECTIONAL OFFICER OF PENDER CORRECTIONAL INSTITUTION. IN THE POSITION OF A SUPERIOR, CORRECTIONAL OFFICER, HE HAS A DUTY UNDER DAC-DOP POLICIES AND PROCEDURES TO PROJECT A PROFESSIONAL DEMEANOR AND EXAMPLE FOR THE SUBORDINATES UNDER HIS SUPERVISION AND CONTROL. DEFENDANT HERNANDEZ, INSTEAD, FOR THE NINE (9) MONTHS (OR SO) BEING HOUSED AT PENDER, WHILE ACTING UNDER COLOR OF LAW, DID, WITH PREMEDITATION AND DELIBERATION CONSPIRE WITH OTHERS (TO BE NAMED infra ) TO VIOLATE, SYSTEMATICALLY, PLAINTIFF'S 4TH, 8TH AND 14TH AMENDMENT RIGHTS THROUGH PURPOSEFUL SEXUAL HARASSMENT THUS SUBJECTING THE PLAINTIFF TO INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS ("IIED") WHICH IS EXPONENTIALLY DETRIMENTAL TO A PERSON'S MENTAL HEALTH WHEN COUPLE WITH GD, THAT CONSTITUTES CRUEL AND/OR CRUEL AND UNUSUAL PUNISHMENT INFLICTED FOR NO LEGITIMATE PENOLOGICAL PURPOSE. DEFENDANT IS SUED IN HIS INDIVIDUAL CAPACITY UNDER $1983 FOR VIOLATING PLAINTIFF'S 4TH, 8TH AND 14TH AMENDMENT RIGHTS AND ARTICLE I $27 OF THE STATE CONSTITUTION

- 4D(10) -

22. DEFENDANT SERGEANT EVANS IS A CORRECTIONAL OFFICER AT PENDER CORRECTIONAL INSTITUTION. THIS DEFENDANT IS A CO-CONSPIRATOR OF SERGEANT HERNANDEZ (DEFENDANT 21, supra.) WHO COMMITTED OVERT ACTS IN THE FURTHERANCE OF SAID CONSPIRACY. THEREFORE, THE ALLEGATIONS FOR HERNANDEZ ARE HEREBY INCORPORATED HEREIN BY REFERENCE. DEFENDANT IS SUED UNDER §1983 IN HIS INDIVIDUAL CAPACITY FOR VIOLATIONS OF PLAINTIFF'S 4TH, 8TH, AND 14TH AMENDMENTS AND UNDER ARTICLE I, SECTION 27 OF THE STATE CONSTITUTION.

23. DEFENDANT SERGEANT WARGO IS A "RANKING" CORRECTIONAL OFFICER AT PENDER CORRECTIONAL INSTITUTION. THIS DEFENDANT IS A CO-CONSPIRATOR AND COHORT OF SERGEANT HERNANDEZ (DEFENDANT 21, supra.) WHO, WITH OTHERS, COMMITTED OVERT ACTS IN VIOLATION OF NORTH CAROLINA DEPARTMENT OF ADULT CORRECTION PRISONS - POLICIES AND PROCEDURES - CHAPTER F, SECTION .3404 (n)(2); .3406 (b)(2)(c); .3406 (g)(1)(c); .3406 (h)(2)(B) AND (D), IN THE FURTHERANCE OF THE CONSPIRACY TO FLAGRANTLY VIOLATE PLAINTIFF'S 4TH, 8TH AND 14TH AMENDMENT RIGHTS AND UNDER ARTICLE I § 27 OF THE STATE CONSTITUTION WHILE ACTING UNDER COLOR OF LAW. DEFENDANT IS SUED UNDER §1983 IN HIS INDIVIDUAL CAPACITY

24. DEFENDANT MARTIN IS A CORRECTIONAL OFFICER SUBORDINATE TO SAID DEFENDANTS 21, 22 AND 23 supra, AT PENDER CORRECTIONAL INSTITUTION. DEFENDANT MARTIN WITNESSED, AND AT TIMES, ACTIVELY PARTICIPATED IN THE VIOLATION OF PLAINTIFF'S RIGHTS, UPON DIRECT ORDERS FROM AFORESAID SUPERIORS. DEFENDANT MARTIN, HOWEVER, FAILED TO REPORT THESE ACTS PURSUANT TO DAC POLICY AS DEMANDED. HE IS SUED IN HIS OFFICIAL CAPACITY UNDER §1983 FOR VIOLATIONS OF PLAINTIFF'S 4TH, 8TH & 14TH AMENDMENT RIGHTS AND UNDER ARTICLE I § 27 OF THE STATE CONSTITUTION.

- 4 D(11) -

25. Defendant Captain H. Locklear is a Correctional Supervisor at Scotland Correctional Institution. In this upper-echelon position, the Defendant is in charge of overseeing all subordinate staff in the day-to-day administration, operation and management at S.C.I. On or about April 20, 2023, the Facility Transgender Accommodation Review Committee ("FTARC") reviewed Plaintiff's accommodations. Since this information, posted on the HR-51 screen of the Opus system, notified staff of the accommodations, Captain Locklear had a duty, inter alia, to ensure that staff "honored" the said accommodations. Additionally, Defendant had a duty to protect Plaintiff from forbidden sexual harassment by other inmates and/or staff. Defendant is sued in an official and individual capacities under §1983 for violation of Plaintiff's 4th, 8th and 14th Amendment rights and under Article 1, §27 of the State Constitution.

26. Defendant Sergeant Timmons is a ranking Correctional Officer at Scotland Correctional Institution. Acting under color of law, the Defendant knowingly, deliberately and maliciously, physically assaulted Plaintiff unnecessarily and subjected Plaintiff to sexual harassment forbidden by DAC policy and procedure. He is sued under Section 1983 for violation(s) of Plaintiff's Fourth, Eighth and Fourteenth Amendment rights, and under Article I, Section 27 of the State Constitution in his official and in his individual capacities.

27 Defendant Officer J. Hunt is a Correctional Officer at Scotland Correctional Institution. Since this Defendant, under color of law, acted in concert with Sergeant Timmons (26 supra) what is alleged there is incorporated herein by reference. Defendant is sued in his official and individual capacity under §1983 for incorporated violations of Plaintiff's rights under the 4th, 8th and 14th Amendments and Article I, Section 27 of the State Constitution.

28 Defendant Goodman is a Correctional Officer employed at the Scotland Correctional Facility. She, among others, is who the Plaintiff had reported incidents of Sexual Harassment and fears of physical attack, attempted extortion and other threats to Plaintiff's safety and security. May 9, 2023, Defendant Goodman witnessed Officer Hunt sexually harass Plaintiff. This distressed Plaintiff to the point where Plaintiff was compelled to call the PREA Hotline yokemail. Goodman did not report this incident. The "Call," triggered undue physical and mental trauma to be inflicted by Timmons and Hunt in excessive quantities. Goodman did not report this either as policy mandates. Goodman is sued under §1983 in her official and individual capacities for violations of Plaintiff's 4th, 8th, 14th Amendment Rights and under Article I, §27 of the State Constitution.

Case 1:24-cv-00956-WO-JLW    Document 1    Filed 11/18/24    Page 34 of 73

29. Defendant AMANDA FAULK, is a Psychologist employed at Scotland Correctional Institution. Defendant is Responsible for seeing and Interacts Professionally with persons incarcerated who have Mental Health issues Requiring Treatment. Defendant has a Legal, moral and ethical Duty to Ensure that Needed medical and mental Health Care is provided to all Persons in DAC Custody that are in Her Care, And that Care is Constitutionally Adequate treatment, that care is "Competent and Adequate" See: De'lonta I, 330 F. 3d at 635-36; She is Sued in Her offical Capacity For Violations of Plaintiff's Rights under §1983 Pursuant to the 8th and 14th Admendments and Article I, Section 27 of the N.C. State Constitution.

30. Defendant Kelly Dennis, R. FNP; is a registered Family Nurse Practitioner who Practices at Scotland Correctional Institution. Defendant, in this Capacity, Determines and does Documents the Existence of Any Medical Infirmities Prevalent to All in DAC-DOP Custody. She is the Primary Source of treatment For Any infirmity Diagnosed. She is sued under §1983 in Her offical Capacity For violations of Plaintiff's Rights under 8th and 14th Admendments and Article I, Section 27 of the State Constitution.

— 4 D — 14 —

Defendant 31: Defendant officer BEUTLER, is a correctional officer employed at Pender Correctional Instution. She worked in Clothes house as custody staff, SHE had expressed Hatred and Bigotry Toward LGBTQ and espicaly Transgenders based on (Personal, Religous, Political Views); She had warned Plaintiff about another inmate ("Todd" AKA) Mark mcdonald being a sexual preadator — stalker when Ms. Frazier was assigned to work in the clothes house, Then would in Following Days — weeks — month(s) would watch Amazon movies on office Computer while the offender would chase Ms. Frazier to off camera view, Pull out his penis and say " you are a No good Bitch because my Nuts still Full of CUM ". Ms. Frazier had been told by officer if she complained she would be Fired From Job; this was All unwanted sexual Harassment and Abuse while officer BEUTLER watched Amazon Movies. officer BEUTLER HAD A Duty to stop and Report These P.R.E.A. Violations, AND Did Not do so. BEUTLER is sued under §1983 IN HER Official And Individual Capacities For Violations of Plaintiff's 4th, 8th, 14th Admendment Rights and under Article I, section 27 of state Constitution.

— 4D — 15 —

32. Defendant DIANE BrownING, R.FNP, is a registered Family Nurse Practitioner who practices at Pender Correctional Institution. Defendant did NOT give Constitutionally adequate-Compentent medical Care, was Not a Expert in Area of Gender Dysphoria and Refused to recommend referral to an Expert with Adequate, Compentent, Professional experience in feild of Gender Dysphoria. Plaintiff continualy Alerted Her of the persistence of Plaintiff's symptoms and the Ineffieacy of MS, Frazier's existing Treatment, She has Never been evaluated With Concern for her suitability For surgery. Despite their Defendant[s] Knowledge of MS, Frazier Symptoms being worse due to her Body and Breast changed to more Femnine Appearance, her genitals still disgusted MS, Frazier and Do NoT match the rest of Her Body. Defendant in this capacity, Determines and does Document the Existence of any medical infirmities Prevalent to All in DAC Custody. She is sued under §1983 in her official and Individual Capacities For Violations of Plaintiffs Rights under 8th, 14th Admendments and Article I, section 27 of the State Constitution.

$$- 4D - 16 -$$

33. Defendant (man Nurse) FNU OXIDINE, LPN, is a Nurse at Scotland Correctional Institution. Defendant has a Duty to provide Adequate, compentent medical Care. Defendant however did Sexualy Harass Plaintiff, (several times when MS. Frazier was on Protective Custody from (5) may -2023 till (10) October 2023) and Recently on October 25th day of 2024 about 9 Am in moring, MS. Frazier was woken in cell by OFFICER HARDEE to go to medical, when at Medeical Nurse OXIDINE Asked Her Name she said "MS. Frazier", Oxidine did misgendered Her as A (He/Him), Plaintiff Requested correct Pro Nouns of (She/Her); The Nurse made an Joke of MS. Frazier's Gender of Religous Bigtory of " God Knows you ANT NO Woman, your in an ANT Male Facility, you ANT NO Woman" This unReasonable ,unprofessional Conduct is prohibited by the Prison Policy and State Law. Defendant knew MS. Frazier is in Fact Legaly Female and has by state LAW N.C.G.S. 130A-118 (a) a Gender Certification, as in Court order 1:21 CV 840 which is a Legal Instrument of Gender Certification that MS. Frazier is in Fact Legaly Female.

— 4 D — in

Defendant OXIDINE has a legal Duty NOT to sexualy Harass Plaintiff MS. Frazier. Defendant has an Ethical and Legal Duty to provide Medical Care to All in DAC Custody, and do it with out Sexualy Harassing them. He is sued For these ACTS under §1983 in their Individual Capacity For Violations of Plaintiff's 8th and 14th Admendments and Article I, section 27 of the state Constitution.

34. Defendant FNU OFFICER HARDEE is a Correctional Officer employed at Scotland Correctional Instution. He was present when NURSE OXIDINE Sexualy Harassed Plaintiff. Defendant Hardee saw the mental and physical distress this Sex Based Haerassment had on the Plaintiff, it Triggered undue Physical and Mental trauma which the sexual Harassment inflicted by NURSE OXIDINE, HARDEE by prison Policy and State Law had a Duty to stop the sexual Harassment and to Report it to P.R.E.A. manger MS. chavis, He did Not do either upon information and Belief. Officer Hardee is Sued in his Individual and Offical capacities under §1983 for Violations of Plaintiff's 8th and 14th Admendments and Article I section 27 of the state Constutition.

— 4D – 18 –

# ATTACHMENT 5

IV.    STATEMENT OF CLAIM(S)

1.   Plaintiff Michael Louis Frazier has been in the custody of the North Carolina Department of Correction' since January, 2011. In May of 2021, Plaintiff was diagnosed and professionally confirmed by Psychological Services Co-ordinator Kelly G. Elkins, M.A to be suffering from Gender Dysphoria, a "serious medical condition." Plaintiff has required, and formally requested "constitutionally adequate treatment" by expert(s) in the specific medical realm of Gender Dysphoria for several years.

   The American Psychiatric Association (APA) states that Gender Dysphoria is a condition involving an "incongruence between one's experienced/expressed gender and their assigned gender." Patients experiencing Gender Dysphoria typically exhibit "depression, anxiety, compulsivity, behavior disorders, personality disorders, and tendencies toward self-harm and suicide."

   Plaintiff has formally requested treatment and sought accommodations to subdue the clinical distresses of Gender Dysphoria including

---

1.  Since 2010, the North Carolina State "Prison System" has undergone at least three (3) nomenclature modifications due to litigation for breach of contract. In 2010, it was designated "Department of Correction" ("D.O.C."); litigation cause the designation as being incorporated into the "Department of Public Safety" (N.C. D.P.S"); after bankruptcy settlement, in 2021 it was again legislatively modified, to become the "N.C. Department of Adult Correction and Juvenile Services -Division of Prisons" ("N.C. DAS-D.O.P")

-IV B(1)-

BUT NOT NECESSARILY LIMITED TO: GENDER-AFFIRMING HORMONE
THERAPY ("HRT"); SOCIAL TRANSITION; CLINICAL AND PSYCHIATRIC
EVALUATION(S) PURSUANT TO THE WORLD PROFESSIONAL ASSOCIATION
FOR TRANSGENDER HEALTH ("WPATH") STANDARDS OF CARE ("SOC") FOR
THE HEALTH OF TRANSSEXUAL, TRANSGENDER, AND GENDER NONCONFORMING
PEOPLE, TO DETERMINE WHETHER SEX REASSIGNMENT SURGERY ("SRS") MAY
BE APPROPRIATE AND MEDICALLY NECESSARY TO TREAT THE GENDER DYSPHORIA
IN THIS CASE; CURTAILMENT OF CROSS-GENDER STRIP SEARCHES; THE
CURTAILMENT OF "GROUP STRIP SEARCHES" BY MULTIPLE-MALE OFFICERS ON
DEMAND SIMPLY TO HARASS; GENDER CONSISTENT PRONOUNS; THE ABILITY TO
UPDATE THE "GENDER MARKER" TO "CORRECT GENDER"; FEMALE UNIFORM; BODY
HAIR REMOVAL SERVICES AND/OR PRODUCTS; FEMININE HYGENE PRODUCTS, etc.

PLAINTIFF'S ACCOMMODATION REQUESTS GRANTED AT ONE FACILITY (i.e.
FEMININE UNDERWEAR, MAKE-UP AND HYGENE PRODUCTS) WERE LATER ARBITRARILY
RESCINDED UPON TRANSFER TO ANOTHER FACILITY. OTHER ACCOMMODATIONS
GRANTED HAVE BEEN UNJUSTIFIABLY DELAYED, EXACERBATING TYPICAL
SYMPTOMS ASSOCIATED WITH GENDER DYSPHORIA. AS TO ACCOMMODATIONS IT
HAS APPROVED (i.e. HORMONE THERAPY), "THE DEPARTMENT HAS ULTIMATELY
FAILED TO PROVIDE THE ESSENTIAL, MEDICALLY ACCEPTED AND APPROVED COURSE
OF TREATMENT FOR GENDER DYSPHORIA CONSISTENTLY. THIS HAS CAUSED
THE "CONDITION" TO DETERIORATE — THE PLAINTIFF'S PRIOR TREATMENTS HAVE
NOT ADEQUATELY ALLEVIATED THE ACUTE PHYSICAL, EMOTIONAL AND
PSYCHOLOGICAL DISTRESS ASSOCIATED WITH THE ROOT PROBLEM — GENDER
DYSPHORIA. N.C.D.A.C. CURRENTLY HAS PLAINTIFF'S TREATMENT
REGIMEN "IN A de facto "FREEZE FRAME" ENCOMPASSING ONLY THE
"HRT" THERAPY. N.C.D.A.C PERSONNEL ("DEFENDANTS") HAVE NOT
AGREED TO ALLOW PLAINTIFF AN EVALUATION AND TREATMENT BY THE

-IV B(2)-

RECOGNIZED EXPERTS ON THE SUBJECT OF GENDER-DYSPHORIA. (WPATH).
THOSE PROFESSIONALS, FOREIGN AND DOMESTIC, HAVE EVOLVED THE "TRIADIC
TREATMENT SEQUENCE" ("TTS") OF THEIR SOC, INCLUDING EVALUATION FOR
"SRS". THUS, WPATH'S SOC ARE, UNDENIABLY, THE WORLD'S LEADING
AUTHORITY ON THIS SPHERE OF MEDICAL AND PSYCHOLOGICAL SCIENCE.

ON OR ABOUT AUGUST 22, 2019, THE DEPARTMENT OF PUBLIC SAFETY
(see FOOTNOTE 1) SUPERSEDED ITS HEALTH SERVICES POLICY REGARDING ITS
TRANSGENDER OFFENDERS. THE SUPERSEDING POLICY OF 2019 DID
ESTABLISH THE "EVALUATION AND MANAGEMENT OF TRANSGENDER OFFENDERS"
("ETMO") POLICY. THE ETMO POLICY ALSO PROVIDED FOR A "DIVISION
TRANSGENDER ACCOMODATION REVIEW COMMITTEE" ("DTARC") ASSIGNED
TO REVIEW TRANSGENDER INMATES' REQUESTS FOR MEDICAL INTERVENTIONS.
WHEN INMATES SUFFERING FROM GD REQUEST TREATMENT FROM THE
N.C.D.A.C., THE DTARC SERVES AS THE UTILIZATION REVIEW AUTHORITY
WITH THE POWER TO APPROVE OR DENY REQUESTED TREATMENTS.

PLAINTIFF APPARENTLY SATISFIES THE CRITERIA FOR SRS
UNDER N.C.D.A.C's ETMO POLICY. HOWEVER, NO N.C.D.A.C POLICY
OR PROCEDURE MENTIONS, REFERS TO, ADOPTS OR APPLIES WPATH'S
STANDARDS OF CARE. THEREFORE, NEITHER DOES ANY OF THE
DEFENDANTS NAMED HEREIN (SEE DEFENDANTS #2 THROUGH #11 AND
#16 AND #17 supra) APPLY THOSE STANDARDS OF CARE TO ANY OF
THE INDIVIDUALIZED CASES SENT TO THEM FOR UTILIZATION REVIEW.[2]

---

[2] CURRENTLY THERE IS A QUESTION BEFORE THE U.S. DISTRICT COURT [W.D.N.C.]
SUBJECT TO A HEARING IN A SIMILAR CASE - "WHETHER THE ETMO POLICY,
SPECIFICALLY THE DTARC AND DR. CAMPBELL'S ROLE THEREIN AMOUNTS
TO A DE FACTO BAN ON GENDER AFFIRMING SURGERY FOR GD PATIENTS."

- IV B(3) -

The foregoing question arose as a result of two facts: (1) While various Federal Courts (District and Circuit), based upon evidence from UPATH-SOC, have recognized that Sex Reassignment Surgery, in some [Individualized] cases, is appropriate and medically needed to adequately treat Gender Dysphoria; (2) N.C.D.A.C's DTARC members have never found, in its entire existence, "A medical need for [this] Surgery for the treatment of GD."

Plaintiff submits that the foregoing facts are admissible in these proceedings as they tend to establish "facts upon which relief can be granted" based upon "Routine Practice," [3] under N.C.G.S.§ 8C-1, Chapter 406; and Fed. R. Evid., Rule 406.

A question of material fact arises when the State recognizes Gender Dysphoria as a mental disorder, and that it recognizes

---

[3] "Habit" is a person's regular practice of meeting a particular type of situation with a specific type of responsive conduct. Habit is a form of propensity, and in some cases it is difficult to distinguish Habit from a character trait. The distinction is, however, important. Character evidence is highly restricted by Rule 404; whereas, the admissibility of Habit evidence is authorized under Rule 406. Where the propensity is specific and connected with an identifiable prompting circumstance, it does constitute Habit governed by Rule 406. Equivalent behavior on the part of a group is designated as "Routine Practice of an organization" under the 406 Rule. Agreement is general that Habit evidence is highly persuasive as proof of conduct on particular occasion(s).

- W B(4) -

THAT GENDER REASSIGNMENT SURGERY **CAN BE MEDICALLY** NECESSARY IN SOME CASES, ON THE ONE HAND, AND IN DETERMINING MEDICAL NECESSITY, IT CANNOT THEN SET UP A SHAM PROCESS WHERE THE ANSWER IS ALWAYS NO, ON THE OTHER HAND.

THUS, IF IT CAN BE PERSUASIVELY ESTABLISHED THROUGH EXPERT OPINION TESTIMONY, CITING WPATH's SOC, THAT THE N.C.D.A.C's ETMD POLICY AND PROCEDURE(S), AUTHORED BY THE DEFENDANTS, AND THAT THE DTARC COMMITTEE MEMBERS CREATED THEREBY, IN THEIR APPLICATION(S) THEREOF, HAVE INSTITUTED BY OPERATION, AN SRS BAN, THEN THE DEFENDANT DTARC MEMBERS' "MEDICAL NECESSITY" DETERMINATIONS HAVE BEEN INADEQUATE UNDER THE EIGHTH AMENDMENT AND ARTICLE I, § 27. THE "AUTHORS" OF N.C.D.A.C's ETMD POLICY WOULD ALSO BE LIABLE FOR THE DTARC's "INADEQUACIES" IN ALLOWING THE INADEQUACIES TO OCCUR, FOR LACK OF OVERSIGHT. DEFENDANT DTARC's DECISION-MAKERS LACK EXPERTISE IN TREATING PEOPLE WITH GD, AND CONSISTENTLY FAIL TO APPLY WPATH's SOC AT ALL. INSTEAD, THEY DEFER TO ONE MEMBER FOR DETERMINING THE "MEDICAL NECESSITY" FOR SRS — DEFENDANT DR CAMPBELL. THEIR ACTION(S) CONFLICT WITH REPORTED OPINIONS OF THE FOURTH CIRCUIT, et al, WHICH HAVE HELD THAT DENYING SUCH SURGICAL TREATMENT (WHEN MEDICALLY NEEDED) "CAN POSE A COGNIZABLE EIGHTH AMENDMENT CLAIM." SUCH A "BLANKET BAN" APPLICATION OF ETMD's POLICY AND PROCEDURE(S) "DOES NOT ALLOW FOR THE CONSIDERATION OF AN INMATE's PARTICULAR MEDICAL NEEDS." [4] THEREFORE, THE AFORESAID REPRESENTS A GENUINE ISSUE OF MATERIAL FACT FOR RULE 12 (FED. R. CIV. P.) PURPOSES. FURTHERMORE THE FOREGOING TEND

---

[4] FISHER v FED. BUREAU OF PRISONS, 484 F. SUPP. 3d. 521, 543 (N.D OHIO 2020)

TO PROMULGATE "A GROUND UPON WHICH RELIEF CAN BE GRANTED," AS A MATTER OF LAW UNDER §1983.

2. COMPARABLY, IT CANNOT BE REASONABLY DISPUTED THAT GENDER DYSPHORIA HAS NOT BEEN MEDICALLY, PSYCHOLOGICALLY AND LEGALLY RECOGNIZED TO BE "A SERIOUS MEDICAL NEED." FOR THOSE AFFECTED, TREATMENT IS NECESSARY. FOR THOSE AFFECTED WHILE INCARCERATED, THAT TREATMENT MUST BE PROVIDED BY THE GOVERNMENT BY VIRTUE OF THE EIGHTH AMENDMENT [5] AND ARTICLE I, §27. IF, AT SOME POINT, THE TREATMENT REGIMEN PROVIDED IS DETERMINED TO BE INADEQUATE, THE OBJECTIVE PRONG FOR EIGHTH AMENDMENT / ARTICLE I, §27 INQUIRY IS SATISFIED. [6] AT THAT POINT, THE SECOND, SUBJECTIVE PRONG INQUIRY INTO DELIBERATE INDIFFERENCE BECOMES THE FOCUS OF THE DISPUTE. THE SUBJECTIVE INQUIRY, ON THE ONE HAND, SERVES AS A GENUINE ISSUE OF MATERIAL FACT TO BE RESOLVED FOR RULE 12 (FED. R. CIV. P.) MOTION TO DISMISS PURPOSES, WHEREAS, THE SAME REPRESENTS "A GROUND UPON WHICH RELIEF CAN BE GRANTED" ON THE OTHER HAND FOR SURVIVING A MOTION TO DISMISS UNDER RULE 12 (FED. R. C. V. P.).

3. REGARDING THE AFORESAID "DELIBERATE INDIFFERENCE" SUBJECTIVE INQUIRY, PLAINTIFF HAS PREVIOUSLY FORMALLY REQUESTED AN ACCOMODATION FOR CLINICAL AND PSYCHOLOGICAL EVALUATION(S) BY EXPERIENCED PROFESSIONALS WHO TREAT GD PURSUANT TO WPATH'S SOC, FOR THEIR LEARNED OPINION(S) AS TO WHETHER (OR NOT)

---

[5] ESTELLE V. GAMBLE, 429 U.S. 97,106 (1976); FARMER V. BRENNAN, 511 U.S. 825, 835-37 (1994)

[6] EDMO V. CORIZON, INC., 935 F.3D 757, 767 (9TH CIR 2019)

- Ⅳ B(6) -

AFTER THEIR INDEPENDENT DIAGNOSES, SEX REASSIGNMENT SURGERY (SRS), IS WARRANTED, APPROPRIATE OR MEDICALLY NECESSARY TO ADEQUATELY TREAT THE GENDER DYSPHORIA IN THIS PARTICULAR CASE. THIS ACCOMODATION WAS SOLICITED BECAUSE OF THE TOTALITY OF THE CIRCUMSTANCES INVOLVED SURROUNDING THE DTARC COMMITTEE'S "HANDLING" OF PLAINTIFF'S REFERRALS TO THE COMMITTEE FROM THE MEDICAL AND PSYCHOLOGICAL SERVICE PROVIDERS AT THE FUNDAMENTAL INSTITUTIONAL LEVEL.[7] THE DTARC COMMITTEE, ABSENT ANY CONTACT OR INTERACTION WITH PLAINTIFF, ARBITRARILY DENIED THIS FORMAL REFERRAL. THIS SUMMARILY DENIED ACCOMODATION ON THE COMMITTEE'S PART IS PERPLEXING, GIVEN THAT MOST COURTS HAVE ACCEPTED WPATH'S SOC AS THE APPROPRIATE MEANS TO TREAT TRANSGENDER PATIENTS;[8] AND WHAT PLAINTIFF WAS ULTIMATELY ATTEMPTING TO OBTAIN WAS AN UNBIASED, INDEPENDENT, CLINICAL AND PSYCHOLOGICAL EVALUATION(S) BY QUALIFIED PROFESSIONALS FAMILIAR WITH AND APPLYING WPATH's SOC — SOMETHING ATTAINABLE UNDER RULE 35(1)(FED. R. CIV. P.) — TO PROVIDE THE COURT ALL MATERIAL, RELEVANT EVIDENCE AVAILABLE, TO RENDER A REASONABLE AND JUST RULING AND RESOLUTION OF THIS CASE.

---

7. WHO, IN _THEIR_ PROFESSIONAL OPINION, AFTER A FACE-TO-FACE INTERACTION WITH THE PLAINTIFF, DETERMINED THAT THE ACCOMODATION REQUESTED WAS CREDIBLE AND WAS MERITORIOUS ENOUGH TO WARRANT A REFERRAL TO THE DTARC COMMITTEE IN THE FIRST PLACE.

8. EDMO, 935 F. 3d. @ 769; KEOHANE v FLA DEPT OF CORR SEC'Y, 952 F. 3d. 1257, 1288 (11TH CIR 2020); DE'LOATA, v JOHNSON, 708 F. 3d. 520, 522-23 (4TH CIR 2013); SONEEYA v SPENCER, 851 F. SUPP. 2d., 228, 231-32 (D. MASS. 2012).

4. WPATH is "AN INTERNATIONAL, MULTIDISCIPLINARY, PROFESSIONAL ASSOCIATION WHOSE MISSION IS TO PROMOTE EVIDENCE-BASED CARE, EDUCATION, RESEARCH, ADVOCACY, PUBLIC POLICY, AND RESPECT IN TRANSEXUAL AND TRANSGENDER HEALTH." [9] WPATH HAS PUBLISHED STANDARDS OF CARE FOR TREATING GENDER DYSPHORIA. THE LATEST STANDARDS OF CARE, VERSION 8, RELEASED IN SEPTEMBER, 2022 [10], EXPANDS UPON VERSION 7 FROM 2011. THESE STANDARDS ARE RECOGNIZED BY THE AMERICAN MEDICAL ASSOCIATION, AMERICAN PSYCHIATRIC ASSOCIATION, AMERICAN PSYCHOLOGICAL ASSOCIATION, AND THE AMERICAN COLLEGE OF OBSTETRICIANS AND GYNECOLOGISTS; BUT NOT BY THE N.C.D.A.C's DTARC COMMITTEE, WHICH IS PERPLEXING.

---

[9] KEOHANE v JONES, 328 F. SUPP. 3d., 1288, 1294 (N.D. FLA 2018)

[10] WPATH's SOC, VERSION 8, IS THE LATEST COMPILATION OF EVIDENCE-BASED FACTS DISREGARDED BY N.C.D.A.C's DTARC MEMBERS (ESPECIALLY DR. CAMPBELL) AND EVEN THE ATTORNEY GENERAL WHO REFUSE TO ACCEPT AS AUTHORITY, OR TO APPLY TO ANY DECISION(S) REGARDING SRS SURGERY AS A VIABLE TREATMENT FOR GD. FURTHERMORE, SECRETARY OF CORRECTIONS, TODD ISHEE; ASSISTANT SECRETARY OF CORRECTION; THE COMMISSIONER OF PRISONS; AND ASSISTANT COMMISSIONER OF PRISONS (WHO ESTABLISH PRISON POLICY AND PROCEDURE) HAVE UTTERLY FAILED THEIR SUPERVISORY OBLIGATION AND CAPACITY TO OVERSEE PRISON OPERATION(S), TO INSTITUTE PRISON POLICIES THAT RECOGNIZE AND ACKNOWLEDGE BOTH THE REASONABLENESS AND SIGNIFICANCE OF THE SOC, AND INCORPORATE SAME INTO USE IN PRISON POLICY, AND INTO THE DTARC's DECISION-MAKING METHODOLOGY FOR SRS AND OTHER CARE NECESSARY TO ADDRESS GENDER DYSPHORIA CONCERNS.

-IV B(8)-

To say the least, prompting reasonable minds to contemplate and marvel about the basis of the motivation, while questioning the justification behind such an antithetical posture and opinion, especially in light of the Eighth Amendment (and Article I, § 27) jurisprudence regarding Gender Dysphoria and its treatment — backed by overwhelming, contradictory, research-backed, evidence belying the position taken by the Defendants; individually and en masse collectively. The Defendants' "Posture and Position" in the case sub judice, is especially relevant since treatment for GD is multimodal, individualized, on a case-by-case patient requirement basis. As is the fact situation sub judice, "Providing Hormone Therapy while Denying the ability to socially transition is not only medically and logically inconsistent, but also potentially harmful." [11] That potential (present and future) harm enhances the possibility that the District Court (or Magistrate) could hold that the subjective aspect of an Eighth Amendment / Article I § 27 claim of Deliberate Indifference has been satisfied, under a totality of the circumstances. As such, this constitutes a ground upon which relief can be granted.

5. Trans (Gender) individuals can seek to change their name and to amend their gender marker to be consistent with their gender identity. It has been alleged that the State of North Carolina impermissibly burdens the _right_ of Transgender individuals born in North Carolina to obtain birth certificates

---

11. Kadohane v Jones, 328 F. Supp. 3d. ___ @ 1295.

THAT REFLECT THEIR SEX, CONSISTENT WITH THEIR GENDER IDENTITY, VIOLATING, inter alia, THE EQUAL PROTECTION CLAUSE AND DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION. [12] AS A "STATE ENTITY," BOTH THE NORTH CAROLINA DEPARTMENT OF ADULT CORRECTION - DIVISION OF PRISONS AND ITS PERSONNEL, HEREIN NAMED AS DEFENDANTS (supra @ 2, 3, 3(a)(1) THROUGH 3(a)(4)) ARE HEREBY ALSO ALLEGED TO BE IN VIOLATION OF THE EQUAL PROTECTION AND DUE PROCESS CLAUSES OF BOTH THE UNITED STATES AND STATE CONSTITUTIONS.

THE N.C.D.A.C - DOP PERSONNEL HAVE REFUSED TO ALLOW THE PLAINTIFF THE OPPORTUNITY TO "UPDATE" OR "CORRECT" PLAINTIFF'S GENDER MARKER IN ORDER TO BE CONSISTENT WITH GENDER IDENTITY ON THE PRISON IDENTIFICATION (S) AND BIRTH CERTIFICATE, inter alia. PRISON "MEDICAL PROVIDER(S) AND PSYCHOLOGISTS, SPECIFICALLY, JESSICA LOWE, M.A. AND DR. COLLINS, M.D., P.A. (DEFENDANTS 12 + 13) HAVE ABSOLUTELY REFUSED, IN BOTH THEIR OFFICIAL AND INDIVIDUAL CAPACITYES TO GIVE PLAINTIFF A REQUESTED AND REQUIRED "CERTIFICATION LETTER" TO FORWARD TO THE N.C.D.M.V AND TO THE VITAL STATISTICS PROGRAM WITHIN THE DEPARTMENT OF HEALTH AND HUMAN RESOURCES TO UPDATE THE GENDER MARKER ON PLAINTIFF'S BIRTH CERTIFICATE. THE N.C.D.A.C. - D.O.P PERSONNEL, TO WHOM THE "CERTIFICATION LETTER" TRANSGENDER ACCOMMODATION WAS FORMALLY REQUESTED STATED THAT, "[THEY DID] NOT HAVE TO DO SO, SINCE THERE WAS NOTHING IN PRISON POLICY REQUIRING THEM TO DO SO." N.C. GEN. STAT. §130A-118 et. seq.

---

12. AND SIMILARLY, ARTICLE I §19's "LAW OF THE LAND" AND EQUAL PROTECTION CLAUSES.

-IV-B(10)-

AND ITS IMPLEMENTING RULES PROVIDES THE PROCESS FOR INDIVIDUALS SEEKING TO CORRECT THE SEX ON THE BIRTH CERTIFICATE BECAUSE OF SEX REASSIGNMENT SURGERY. WHERE A WRITTEN REQUEST TO CORRECT THE SEX ... IS FOR REASONS OTHER THAN BECAUSE OF SEX REASSIGNMENT SURGERY, SUCH AS WHEN THE ASSIGNED SEX AT BIRTH DIFFERS FROM THEIR GENDER IDENTITY, VSP SHALL PROCESS THE REQUEST UNDER N.C. GEN. STAT. § 130A-118(a) AND ITS IMPLEMENTING RULES.

DEFENDANTS HAVE KNOWN, OR SHOULD HAVE KNOWN THESE FACTS FOR SEVERAL YEARS. THEREFORE, FAILING TO ACCOMODATE THIS SPECIFIC TRANSGENDER ACCOMODATION APTLY DEMONSTRATES THE SUBJECTIVE "DELIBERATE INDIFFERENCE" BY N.C.D.A.C. NOT ONLY TO THE PLAINTIFF'S KNOWN WANTS AND MEDICAL AND PSYCHOLOGICAL NEEDS, BUT ALSO EXHIBITS THE SAME TO ANOTHER EXECUTIVE DEPARTMENT'S DULY ENACTED LEGISLATED RULES AND PROCESSES. FURTHER, N.C.D.A.C. - DOP's ATTITUDE PLAINLY IGNORES A FEDERAL DISTRICT COURT RULING ON THIS SUBJECT MATTER, IN AN AMENDED CONSENT JUDGMENT[13] WHICH AVERS, "[T]HIS CONSENT JUDGMENT IS TO BENEFIT ALL NORTH CAROLINIANS, INCLUDING TRANSGENDER PEOPLE BORN IN NORTH CAROLINA." IT MUST BE DULY NOTED AT THIS LOCUS THAT THE COURT'S CONSENT JUDGMENT CONTAINS NO HINT OF A STIPULATION THAT IMPLIES EXCLUSION OF INCARCERATED TRANSGENDERS FROM ITS SCOPE OR REACH, ANYWHERE IN ITS TEXT OR IN ITS CONTEXT. THEREFORE, THE COURT'S LANGUAGE AND INTENT NEVER CONTEMPLATED SUCH AN EXCLUSION STIPULATION, SO DID NOT INCLUDE ONE IN ITS JUDGMENT. THUS, THE N.C.DAC - D.O.P's

---

13. CAMPOS, et al. v. KINSLEY, et al., 1:21-CV-880-LCB (M.D.N.C. 6/2/22)

Case 1:24-cv-00956-WO-JLW    Document 1    Filed 11/18/24    Page 50 of 73

ABSOLUTE REFUSAL TO ACCOMODATE THIS ACCOMODATION IS UNTENABLE AND ILLOGICAL. OBVIOUSLY, THE DISCREPENCY IS NOT WITH THE VITAL STATISTICS PROGRAM - HOWEVER, IT SEEMS LIKELY THAT INJUNCTIVE RELIEF WILL BE NECESSARY TO CAUSE THE N.C.D.A.C AND ITS PERSONNEL TO REVISE (DRASTICALLY) ITS POLICIES IN THIS REGARD TO SYNCHRONIZE WITH APPLICABLE STATE LAW(S).

**6.** THE FOURTH AMENDMENT FORBIDS "UNREASONABLE SEARCHES AND SEIZURES" BY GOVERNMENTAL PERSONNEL.[14] THE FOURTH AMENDMENT PROTECTS PLACES OR THINGS IN WHICH A PERSON HAS A LEGITIMATE EXPECTATION OF PRIVACY[15] THAT SOCIETY MUST BE PREPARED TO RECOGNIZE AS OBJECTIVELY REASONABLE.[16] THE FOURTH AMENDMENT AFFORDS MORE PROTECTION AGAINST STRIP SEARCHES SINCE PEOPLE INHERENTLY HAVE AN EXPECTATION OF PRIVACY CONCERNING THEIR BODIES. STRIP SEARCHES OF THE INCARCERATED MUST BE REASONABLY RELATED TO A LEGITIMATE PENOLOGICAL INTEREST AND CANNOT BE EXCESSIVE OR USED TO HARASS, INTIMIDATE, OR PUNISH. IN THIS CONTEXT, THE EIGHTH AMENDMENT AND ARTICLE I § 27 OF THE STATE CONSTITUTION PROTECT IN CONJUNCTION WITH THE FOURTH AMENDMENT (AND A 14) AGAINST BODILY SEARCHES THAT ARE MALICIOUS AND HAVE NO

---

[14] AS DOES NORTH CAROLINA CONSTITUTION, ARTICLE I, SECTION 20.

[15] OLIVER v UNITED STATES, 466 U.S. 170, 180 (1984)

[16] KATZ v UNITED STATES, 389 U.S. 347, 351, 357 (1967); HUDSON v PALMER, 468 U.S. 517, 525 n 7 (1984).

- IV B(13)-

LEGITIMATE PENOLOGICAL PURPOSE."[17] FEDERAL COURTS HAVE OPINED THAT WHILE THE FOURTH AMENDMENT OFFERS PROTECTION IN THIS CONTEXT, THE EIGHTH AMENDMENT IS "MORE PROPERLY POSED"[18] TO PROTECT AGAINST UNCONSTITUTIONAL STRIP SEARCHES. CONSTITUTIONAL RIGHTS CAN CO-EXIST: PRISONERS, LIKE ALL CITIZENS, BENEFIT FROM THE PROTECTION OF NUMEROUS ENUMERATED RIGHTS UNDER THE CONSTITUTION, AND THESE RIGHTS SOMETIMES OVERLAP. THE APPLICABILITY OF ONE CONSTITUTIONAL AMENDMENT TO A CASE, DOES NOT PRE-EMPT THE GUARANTEES OF ANOTHER CONSTITUTIONAL AMENDMENT FROM APPLYING TO THAT SAME CASE SITUATION. IN ANALYZING BODY CAVITY SEARCHES, STRIP SEARCHES, OR ANY INVASIONS OF BODILY PRIVACY, A COURT WILL BALANCE THE NEED FOR THE SEARCH AGAINST THE INVASION OF PRIVACY THE SEARCH INVOLVES. FOR EXAMPLE, ONE COURT STATED THAT A SECOND STRIP SEARCH MIGHT BE UNCONSTITUTIONAL BECAUSE THE PRISONER WAS UNDER THE CONSTANT SUPERVISION OF THE GUARDS SINCE THE FIRST STRIP SEARCH.[19] THE PRISON RAPE ELIMINATION ACT OF 2003, 42 U.S.C.A. § 15601 et seq, MANDATES

---

17 MERRIWEATHER v FAULKNER, 821 F.2d. 408, 418 (7TH CIR 1987)(COURT ALLOWED A TRANSGENDER WOMAN'S 8TH AMENDMENT CLAIM TO PROCEED AFTER BEING STRIP SEARCHED BEFORE A GROUP OF GUARDS WHO SOUGHT TO HUMILIATE AND HARASS HER).

18 PECKHAM v WISCONSIN DEP'T OF CORRECTION, 141 F.3d. 694, 697 (7TH CIR 1998)

19 JEAN-LAURENT v WILKERSON, 540 F.SUPP.2D. 501 (S.D.N.Y 2008); PARKELL v DANBERG, 833 F.3d. 313 (3RD CIR 2016).

- IV B(13) -

THAT SEARCHES OF TRANSGENDER AND INTERSEX INCARCERATED INDIVIDUALS **must** BE RESPECTFULLY AND PROFESSIONALLY CONDUCTED.[20] TRANSGENDER INDIVIDUALS HAVE SUCCESSFULLY CHALLENGED CROSS-GENDER STRIP SEARCHES IN THE FEDERAL COURTS.[21] AS OCCURRED IN THOSE CASES, THE PLAINTIFF HERE ASSERTS AND ALLEGES THAT DEFENDANT (DEFENDANTS 20 THROUGH 38 supra @ 3(a)(4) THROUGH 3(a)(6)) PRISON GUARDS HAVE REPEATEDLY, UNNECESSARILY AND DEPRAVINGLY REQUIRED, BY DIRECT ORDER TO DO SO, TO HAVE THE PLAINTIFF TO STRIP IN FRONT OF OTHER MALE CORRECTIONAL OFFICERS SOLELY SO THAT THEY MAY BE "ENTERTAINED" BY VIEWING THE PLAINTIFF's UNIQUE CHARACTERISTICS – AND THAT SUCH DEGRADING AND HUMILIATING CONDUCT SATISFIES A FOURTH AND EIGHTH AMENDMENT CLAIM FOR INJUNCTIVE (AND POSSIBLY FOR PUNITIVE) RELIEF.

WHILE THESE STRIP SEARCH HUMILIATIONS AND DEGRADATIONS HAVE TRANSPIRED THROUGHOUT PLAINTIFF's INCARCERATION SINCE 2011, THE PLAINTIFF HEREIN, OPTS TO LIMIT THE CLAIMS AND TO CONCENTRATE THE COURT'S JURISPRUDENCE AND RESOURCES ON THE MOST EGREGIOUS "OCCURRENCES" AS FOLLOWS:

THE PLAINTIFF, BETWEEN SEPTEMBER, 2021 AND DECEMBER, 2023 WAS ARBITRARILY AND ERRATICALLY TRANSFERRED FROM ONE STATE

---

20  THE TERM "STRIP SEARCH" REFERS HEREIN TO A VISUAL INSPECTION OF A NAKED INMATE WITHOUT INTRUSION INTO THE PERSON's BODY CAVITIES.

21  MERIDWEATHER, 821 F.2d. @ 417

-IVB(14)

PRISON FACILITY TO ANOTHER "EXTREMELY FREQUENTLY" - SEVEN (7) TIMES IN A LITTLE OVER TWO (2) YEARS. DURING THAT TIME, THE PLAINTIFF WAS ARBITRARILY SUBJECTED TO:

ON DECEMBER 29, 2021, AT HARNETT CORRECTIONAL INSTITUTION, "I DORM," PLAINTIFF WAS "SELECTED" FOR A PURPORTED SEARCH OF PLAINTIFF'S LOCKER. WHILE THAT IN AND OF ITSELF, IS ROUTINE, THE STRIP SEARCH ATTACHED THERETO IN A SHOWER STALL WITH TWO (2) OFFICERS PRESENT, ORDERED THE TRANSGENDER PLAINTIFF TO REMOVE BRA AND PANTIES — THEN ORDERED PLAINTIFF TO BEND AT THE WAIST AND SPREAD PLAINTIFF'S BUTTOCKS 3 TIMES IN SUCCESSION CLAIMING, "YOU AREN'T SPREADING YOUR BUTT CHEEKS WIDE ENOUGH, DO IT AGAIN!"

ON MARCH 17TH, 2022 AT NEUSE CORRECTIONAL INSTITUTION CORRECTIONAL STAFF RESPONDED TO A "DISTURBANCE" IN ANOTHER DORM, THUS ABANDONING THEIR POST WHILE THEY DID NOT SECURE THE SHOWER AREA FOR PLAINTIFF. PUERTO RICAN GANG MEMBERS BEAT UP THE PLAINTIFF IN THE "UNSECURED" SHOWER, HELD A "SHANK" TO PLAINTIFF'S NECK, AND THEN "GANG RAPED" PLAINTIFF. THEY THEN HELD PLAINTIFF FOR A BLACK GANG MEMBER "TO GET HIS TURN."
THE FOLLOWING DAY, THE 18TH THIS WAS REPEATED, AS IT WAS ON THE 21ST.
ON THE 25TH, TWO BLACK INDIVIDUALS BEAT UP THE PLAINTIFF AND RAPED THEIR "VICTIM"
ON APRIL 11TH, 2022 PLAINTIFF WAS PLACED IN SEGREGATION AFTER THE PUERTO RICANS PAID ANOTHER INMATE TO ATTACK PLAINTIFF

- IV B(15) -

ON THE YARD. THERE WERE NO OFFICERS ON THE YARD. THERE WAS NO MEDICAL CARE PROVIDED AFTER THE RAPES WERE REPORTED.

ON JUNE 10TH, 2022 PLAINTIFF WAS TRANSFERRED TO PENDER CORRECTIONAL INSTITUTION, WHERE MEDICAL TREATMENT WAS FINALLY RECEIVED. CASE MANAGER RUIZ (DEFENDANT #20) WAS PERFORMING THE ROUTINE "INTAKE SEARCH" OF PLAINTIFF'S ("FRAZIER") PERSONAL PROPERTY. WHILE THIS WAS BEING CONDUCTED, SERGEANT HERNANDEZ (DEFENDANT #21) "CAME OVER TO HELP" RUIZ. AFTER MISGENDERING PLAINTIFF, HERNANDEZ BEGAN SEXUALLY HARASSING FRAZIER TO THE EXTREME EXTENT THAT THE CONDUCT EMOTIONALLY DISTRESSED FRAZIER TO THE POINT OF OPENLY CRYING. THIS DISRESPECTFUL AND UNNECESSARY VERBAL ABUSE DID CONTINUE WITH, "YOU CAN NOT BE [A] FEMALE, YOU'RE IN A ALL GOD DAMN MALE PRISON!"[22] HE THEN WENT ON, SAYING, "LET ME HELP RUIZ GET PAST THIS BULLSHIT!", AND PROCEEDED TO MALICIOUSLY AND UNNECESSARILY "TEAR UP" ALL OF FRAZIER'S PERSONAL PROPERTY. HE SMASHED, BROKE, DESTROYED AND DISCARDED THIRTY ($30) DOLLARS WORTH OF MAKE UP ITEMS (AN ACCOMODATION FORMERLY ALLOWED) AND RANSACKED ALL OF FRAZIER'S LEGAL DOCUMENTS TO THE POINT THAT IT TOOK A WEEK TO SORT OUT AND RECOLLATE THE LEGAL DOCUMENTS INTO A SEMBLENCE

22. THIS VIOLATES N.C. GEN. STAT. §148-23, THE LAST SENTENCE OF WHICH READS: "[A]NY SUPERINTENDENT, WARDEN, GUARD, SUPERVISOR, OR OTHER PERSON HOLDING ANY POSITION IN THE DEPARTMENT OF ADULT CORRECTION — DIVISION OF PRISONS WHO CURSES A PRISONER UNDER HIS CHARGE SHALL BE SUBJECT TO IMMEDIATE DISMISSAL FROM EMPLOYMENT AND SHALL NOT BE ELIGIBLE FOR REINSTATEMENT."

~ IV B (16)

OF ORDER. Because Hernandez was obviously harassing based solely on Frazier's gender identity and transgender status in violation of state prison policy and procedure, Chapter F, Section(s) .3400 et seq., Defendant Ruiz had a duty intercede on Frazier's behalf, or at least to report the incident under the same policies to superiors or to the PREA manager. She did neither and thus acted in concert.

On or about February 15th, 2023, both Sgt Hernandez and Sgt Evans (Defendant #22) conducted a urinalysis drug test on Frazier, where, pursuant to prison policy and procedure, one (1) officer was sufficient. This was "overintrusive overkill" to state the obvious, and was very "opportunistic" of Frazier being transgender and undergoing hormone therapy (HRT). When Frazier sat to urinate into the provided cup, Hernandez yelled, "You have to stand - You cannot sit to piss in the cup[23] - You are not a real woman." There was no legitimate penological interest involved in forcing someone to stand to perform this function. This aptly demonstrates a "sexually harassive" motivation, causing significant embarrassment, humiliation and constitutes the "intentional infliction of emotional distress."

Approximately a month later, March 15, 2023, Hernandez and Sgt Wargo (Defendant #23) handcuffed Frazier and escorted her

---

23. There exists no such requirement written in prison policy - as long as a prisoner urinates into the cup in the presence of a witnessing officer, IT MATTERS NOT if the prisoner is standing or sitting or even standing on his head!

TO ADMINISTRATIVE SEGREGATION PURPORTEDLY FOR SOME SORT OF AN "INVESTIGATION."[24] HERNANDEZ AND WARGO (DEFENDANT #23) ORDERED OFFICER MARTIN (DEFENDANT #24) TO CONDUCT THE SEGREGATION INTAKE STRIP SEARCH. WHEN IT BECAME OBVIOUS THAT HERNANDEZ AND WARGO WERE "STAYING TO WATCH," FRAZIER STATED, "I'LL SUBMIT TO OFFICER MARTIN SEARCHING ME ALONE." HERNANDEZ ORDERED, "YOU'LL STRIP FOR ALL THREE OF US OR I'LL MAKE YOU." FRAZIER ADVISED THAT THIS WOULD BE REPORTED TO PREA. HERNANDEZ SAID, "GO AHEAD, NO ONE WILL BELIEVE A QUEER CONVICT — STRIP NOW!"

PLAINTIFF, IN FACT, REPORTED THIS THREE-WAY PEEP SHOW INCIDENT TO CAPTAIN HANKINS WHO, INSTEAD OF TAKING DISCIPLINARY ACTION AGAINST THE OFFICERS INVOLVED, SHE RETALIATED AGAINST FRAZIER, FOR REPORTING IT IN THE FIRST PLACE, AND FRAZIER WAS TRANSFERRED SIX (6) DAYS LATER TO A LEVEL 3 GANG CAMP, THUS KNOWINGLY, DELIBERATELY AND MALICIOUSLY PLACING FRAZIER INTO A PRECARIOUSLY MORE DANGEROUS SAFETY SITUATION.

PLAINTIFF HAS CLEARLY SET FORTH GROUNDS FOR FOURTH, EIGHTH AMENDMENT AND ARTICLE I, § 20 + 27 UNDER THE STATE CONSTITUTION CLAIMS FOR UNCONSTITUTIONAL SEARCHES THAT COULD INVOLVE CRUEL AND/OR UNUSUAL PUNISHMENT.

ON MARCH 21ST, 2023 PLAINTIFF WAS TRANSFERRED BY CAR TO SCOTLAND (COUNTY) CORRECTIONAL INSTITUTION. AS PREVIOUSLY SAID, SCOTLAND IS DESIGNATED AS A LEVEL THREE (3) "SECURITY THREAT GROUP" COMPOUND.

---

[24] PLAINTIFF NEVER DID FIND OUT WHAT WAS SUPPOSEDLY BEING INVESTIGATED

-IVB(18)-

REMARKABLY, THERE WAS NO STRIP SEARCH AT SCOTLAND'S INTAKE/RECEPTION AREA. BASED ON INTERESTS OF SAFETY, FRAZIER INITIALLY REQUESTED OF STAFF ACCOMODATIONS FOR PRIVATE SHOWERING PRIVILEGES, TO BE INFORMED THERE WERE NO "PRIVATE SHOWERS" AT SCOTLAND — THIS DUE TO THERE BEING A HUGE WINDOW THAT IS SEPARATE AND APART FROM THE "PREA CURTAIN" AT THE DOORWAY. ALSO REQUESTED WAS A BED LOCATION AT THE FRONT OF THE WING, IN FULL VIEW OF THE VIDEO CAMERA. REGARDING PRIVATE SHOWERS, FRAZIER ASKED PERMISSION TO BE ALLOWED TO SHOWER IN THE INTAKE AREA PRIVATE SHOWER CELL. THAT REQUEST WAS DENIED.

THEREAFTER, WHILE FRAZIER SHOWERED IN AN "UNPRIVATE" BATHING FACILITY, ON SEVERAL OCCASIONS, A "MENTAL HEALTH OFFENDER" WOULD COME TO THE TOILET NEAREST A WINDOW, STAND THERE AT THE SAID WINDOW, STARE THROUGH IT AT THE SHOWER AND MASTERBATE. STAFF NEVER EVEN ATTEMPTED TO CURTAIL THIS OBVIOUS SEXUAL HARASSMENT.

ON OR ABOUT APRIL 20, 2023, THE FACILITY TRANSGENDER ACCOMODATION REVIEW COMMITTEE ("FTARC") RENEWED ALL OF FRAZIER'S "APPROVED" ACCOMODATIONS WHICH INCLUDED PRIVATE SHOWERING PRIVILEGES. STAFF IS NOTIFIED OF THESE ACCOMODATIONS BY VIRTUE OF THE OPUS COMPUTER PROGRAMMING ON THE OFFENDER'S HR-51 SCREEN. FRAZIER RELAYED TO VARIOUS STAFF MEMBERS SERIOUS CONCERNS REGARDING THE <u>ONGOING</u> <u>SEXUAL HARASSMENT</u> AND FEARS OF ASSAULT(S) BY MENTAL HEALTH OFFENDERS, APPARENTLY WITH NO SUCCESS. IN TANDEM WITH THOSE SERIOUS CONCERNS, WERE THREATS OF SERIOUS HARM FROM EXTORTION BY GANG MEMBERS WHO TOLD FRAZIER THAT IN ORDER TO SHOWER, <u>FRAZIER WOULD HAVE TO PAY A</u>

— IV B(19) —

TWENTY ($20) DOLLAR "FEE" EACH TIME FRAZIER SHOWERED, AND A FINE ($5) DOLLAR "FEE" EACH TIME THE TOILET WAS USED, AND IF NOT PAID, THEY WOULD STAB FRAZIER TO DEATH. OBVIOUSLY, THIS WOULD BE CONSTANTLY NERVE-RACKING. FINALLY, ON THE MORNING OF MAY 9TH, 2023, AT 06:30 HOURS, PLAINTIFF REQUESTED STAFF ASSISTANCE FROM OFFICER (MS) GOODMAN (DEFENDANT #28). FRAZIER ASKED THE OFFICER TO EITHER ALLOW SHOWERING TO TAKE PLACE IN THE WHOLE SHOWER CELL AS PER THE PRIVATE SHOWERING APPROVED BY FTARC, OR FRAZIER WANTED PROTECTIVE CUSTODY. OFFICER J. HUNT (DEFENDANT #27) OVERHEARD THIS REQUEST AND BEGAN SEXUALLY HARASSING FRAZIER. RAISING HIS VOICE, HUNT RANTED SEVERAL TIMES, "DO YOU HAVE A VAGINA, DO YOU HAVE A VAGINA? CAUSE YOU'RE IN AN ALL MALE PRISON!" THIS VERBAL BARRAGE WAS TOTALLY UNNECESSARY AND UNPROFESSIONAL, AND IS THE INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS.

FRAZIER REPORTED THE INCIDENT VIA THE PREA HOTLINE VOICEMAIL VERBATIM, AFTER INFORMING HUNT THAT THE INCIDENT WOULD BE REPORTED AS SEXUAL HARASSMENT TO PREA REPRESENTATIVES.

HUNT, TO COUNTER-ATTACK THE PREA COMPLAINT, CONVINCED SGT TIMMONS (DEFENDANT #26) TO INTERVENE IN HIS BEHALF. TIMMONS, IN RESPONSE, ANGRILY APPROACHED PLAINTIFF FROM THE HALL AND SAID, "I'LL SHOW YOU SEXUAL HARASSMENT - I'LL GIVE YOU WHAT YOU WANT!" HE THEN PROCEEDED TO MACE FRAZIER WHO WAS PLACIDLY STANDING INSIDE THE ENTRANCE TO THE DORM (CAUGHT ON VIDEO). THAT VIDEO WILL CLEARLY ESTABLISH THAT TIMMONS DELIBERATELY USED EXCESSIVE FORCE WHEN NO FORCE WAS ACTUALLY NEEDED. PLAINTIFF WAS NOT THREATENING TO ANYBODY IN ANY WAY. PLAINTIFF SIMPLY REQUESTED

to be protected from one form of harm - only to be abused and subjected to harm by the "Protectors" in retaliation for what the Plaintiff possessed a legal right and responsibility under PREA law to do. After being blinded by the mace, the Plaintiff was handcuffed. Officers Hunt and Goodman then "escorted" Frazier to the segregation unit in such "a professional manner" that Plaintiff's head "accidently" got slammed into a steel sallyport doorway, with such force as to temporarily cause a loss of consciousness - which prompted Hunt to "bend a hand back over the cuff" to regain control "of a resisting prisoner." <u>The impact did draw blood.</u> Plaintiff was placed in a bottom floor shower stall with no curtain, to wash off the mace, in direct view of three (3) "recreation cages" with a suspended occupant in each, despite the known shower accommodation by FTARC. This was being deliberately indifferent to the accommodation and a totally malicious abuse of authority; malicious use of excessive force to inflict cruel and/or unusual punishment under color of (State) law. Plaintiff's personal property was packed up. In the process Frazier's legal journal was taken. When later returned, several pages dealing with the sexual harassment were torn out.

Plaintiff would spend 154 days on protective custody and would then be transferred to Avery/Mitchell Corr. Inst. on October 10th, 2023, and then to Mountain View Corr. Inst. approximately two (2) months later on December 11th, 2023.

# Attachment 6

## I.  Injuries

**A.** As to physical injuries associated with Category IV, the Statement(s) of the Claim, the described violations involving beatings and multiple rapes at Neuse Correctional Institution occurring between March 17th, 2022 and March 25th, 2022, detailed herein supra @ IV B(15) and (16), along with the beating of April 11th, 2022, were never medically assessed let alone treated at Neuse! Any and all assessments and treatments received for these injuries occurred after Plaintiff's arrival at Pender Correctional Institution.

**B.** At Scotland Correctional Institution, the purportedly "accidental" impact with the steel sallyport doorway/portal shown and described supra @ IV B(21) that did cause unconsciousness and did draw blood, was never medically assessed or treated since it is believed the incident was never reported.

**C.** Plaintiff further suffers "injuries" and endures those associated with the Kelly G. Elkins, M.A. diagnosis confirming that Plaintiff suffers from "a serious medical condition" — Gender Dysphoria. Plaintiff experiences and attempts to endure the "typical symptoms" of "depression, anxiety, compulsivity, behavioral disorders, personality disorders, and self-harm possibilities." Although generally mental, innately, these are no less debilitating, physically. Plaintiff's Statement of Claims, supra, delineates the exacerbation of the "typical symptoms" by Defendant's "Freeze Frame" practices

-V(1)-

AND THE SAME EXACERBATION FROM THE DEFENDANT'S LACK OF
EXPERTISE WITH GENDER DYSPHORIA GENERALLY, AND THEIR FAILURE
TO ACKNOWLEDGE WPATH'S STANDARD(S) OF CARE ARE AUTHORATIVE,
LET ALONE APPLY THAT AUTHORATIVE CRITERIA TO THEIR TREATMENT
PROTOCOLS FOR GENDER DYSPHORIA. THEREFORE, DTARC'S ABSOLUTE
REFUSAL(S) TO "EXPAND ITS TREATMENT HORIZONS" AS CONTINUING
MEDICAL "EDUCATION" MANDATES, THE DRACONIAN STAGNATION IN
REGARDING GENDER DYSPHORIA'S TREATMENT, HAS, INSTEAD OF
ADVANCING A POSITIVE TREATMENT REGIMEN OF THE GENDER DYSPHORIA
CONDITION, HAS INSTEAD DEGENERATED AND "PLATEAUED" PLAINTIFF'S
TREATMENT REGIMEN INTO PERMANENT STAGNATION, EXACERBATING
THE MENTAL DURESSES THAT DEFENDANTS ARE CONSTITUTIONALLY
COMMANDED TO ADDRESS AND EFFECTIVELY TREAT IN ITS ENTIRETY

- V(2) -

# Attachment 7

WHEREFORE, Plaintiff Michael Louis Frazier respectfully requests the entry of judgment in her favor and against Defendants, granting the following relief:

A. Preliminary and Permanent injunctions requiring Defendants to provide Plaintiff with the necessary medical care and appropriate accomodations for the treatment of Gender Dysphoria, including but not limited to, adoption and the utilization by Defendant of the professionally recognized WPATH Standards of Care, into the Defendant's policies and procedures, to include inter alia the "Triadic Treatment Sequence" procedures; Gender-Consistent terminology; Consistent Hormone therapy maintenance; Prompt Gender-affirming Vulvoplasty Surgery; and Gender-marker records adjustment(s);

B. A Declaration that Defendants' current practices in obstructing and denying Plaintiff et al similarly situated adequate and necessary medical treatment and accomodations for Gender Dysphoria; are unconstitutional and unlawful as currently applied, and that treatment(s) may become Constitutionally adequate through WPATH Standard of Care evaluations;

C. Nominal and Compensatory Damages, in an amount to be determined at trial;

D. Punitive Damages against Defendants being sued in their individual capacities under 42 U.S.C. § 1983 in an amount to be determined at trial for intentional violation(s) of Plaintiff's Civil Rights while they were acting under the color of law;

E. Plaintiff's Costs, including Reasonable Attorneys' Fees; and

F. Any Further Relief to which the Court deems Plaintiff may be entitled.

# Attachment 8

Names of correctional facilities and Times I was there and gave rise to mis. Frazier's claims.

|  | From | TO |  |
|---|---|---|---|
| 9/15/2021 | Columbus CI | Sampson CI | 32 Days |
| 10/17/2021 | Sampson CI | Harnett CI | 106 Days |
| 2/1/2022 | Harnett CI | Neuse CI | 130 Days |
| 6/10/2022 | Neuse CI | Pender CI | 284 Days |
| 3/21/2023 | Pender CI | Scotland CI | 203 Days |
| 10/10/2023 | Scotland CI | Avery-Mitchell CI | 62 Days |
| 12/11/2023 | Avery Mitchell CI | Mountain View CI | 171 Days |
| 5/29/2024 | Mountain View CI | Scotland CI |  |

10/28/2024 Currently AT Scotland CI In mental Health POD, So Far.

# ATTACHMENT 9
## Grievance Claims Exhausted

1). 11/22/2021 No. 3805-2021-I DM-16514
Proper Size 6 Panties

2). 1/14/2022 No. 3805-2022-IDM-00046
Cross-Gender-Strip search

3). 3/29/2022 No. 3060-2022-B3 DM-17796
WPATH-SOC Gender Related Denials

4). 7/21/2022 No. 4150-2022-SCS-18697
Reporting Sexual Harassment-Abuse

5). 9/1/2022 No. 4150-2022-C1 DM-18934
medical Deliberate indifference

6). 11/4/2022 No. 4150-2022-D2 DM-19649
Cross Gender Strip search

7). 12/21/2022 No. 4150-2022-D2 DM-19848
Acommodations Delayed Deliberate indifference

8). 1/20/2023 No. 4150-2023-D2 DM-00085
WPATH-SOC Requested

9). 1/27/2023 No. 4150-2023-D2 DM-00095
Gender Marker to be Corrected Refusal

10). 3/2/2023 No. 4150-2023-E2 DM-00245
Accommodation Bunk Location for Safety And
Private Showering

## VII - C -1

## Attachment 9 continued

11). 4/16/2023 No. 4860-2023-T1B-00757
PREA complaint Shower Curtain

12). 5/1/2023 No. 4860-2023-T1B-00869
medical Deliberate indifference

13. 5/24/2023 No. 4860-2023-LPODA-22636
Deliberate indifference Failure to Protect

14). 6/26/2023 No. 4860-2023-LPODA-22724
Failure to Protect Retaliation

(PREA)
15). 7/13/2023 NO. 4860-2023-LPODA-23331
Gender Marker Corrected Refused

16). 10/2/2023 No. 4860-2023-LPODA-22770
PREA Complaint

17). 4/19/2024 NO. 4855-2024-HPOD--00540
Birth certificate Modification Certification
Prison I.D. Card GenderMarker Change

18). 7/10/2024 NO. 4860-2024-JPODA-26590
Spical Wash Bag NOT Returned NO Clean
Bras to Conseal Breast Movement PREA
Concern

19). 8/1/2024 No. 4860-2024-JPOD-25747
Hormone Therpy With held

20). 9/14/2024 No. 4860-2024-JPODA-26305
Denied individual F-TARC meeting as in Policy.

21) 9/19/2024 NO. 4860-2024-JPODA-26334
Refused individualized Psychotherpy.

VII - C - 2

IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

Michael Louis FRAZIER
"AKA"
Ms. LuLu Bell Michelle
       Plaintiff

V.

NCDPS, et al.,
Defendants

DECLARATION OF
MICHAEL LOUIS FRAZIER
"AKA"
Ms. LuLuBell Michelle

CIVIL ACTION: _____

Ms. Frazier hereby declares: I Am a prisoner in custody of NCDPS at scotland CI. On 17th day of MAY, 2021 Dr. Kelly ELkins G M.A. Psychological Coordinator confirmed my Disability of Gender Dysphoria in Adolescents and Adults. I knew my self to be Female at the age of 6 years old my whole life I have suffered From this medical Psyical Condition of being TransGender. I have had some of the WPATH-SOC Treatments, which being Hormone Therpy, Female under Clothes, other Accommodations such as make up. However, Just Because DPS Has Provided Plaintiff with some treatment Consistent with WPATH-SOC "Triadic Treatment Sequence"; step one is Hormones, step Two is real life experience of living and Dressing in correct gender, step Three is sex Reassignment Surgery;

(1)

It does Not Follow that they have necessarily Provided her with Constitutionally Adequate Treatment SEE: De'Lonta I, 330 F.3.d at 635-36; Langford V. Norris, 614 F.3.d 445, 460 (8th Cir. 2010) ("[A] total deprivation of Care is Not a necessary Condition For Finding A Constitutional Violation; Grossly incompetent or inadequate care can also constitute deliberate indifference. Plaintiff MS. Frazier has never been evaluated concering her suitability For SRS Surgery. The HRT has allowed her Body to Femininize, Grow Fully developed Breasts, which, Now, Exasperate and Provoke her Gender Dysphoria Systems, to where now the only possible treatments left are step Two and Three of "Triadic Treatment's of WPATH-SOC Sequence" AT this point it is in Fact Cruel and unusual and deliberate indifference to leave her in this medical state of distress and Gender Dsyphoria. I declare that my Fourth, Eighth, Fourteenth, Admendments; Article I, Section 27 of state constitution are actively Being Violated. Plaintiff also Being Violated in Violation

( 2 )

of the Americans with Disabilities ACT, 42 U.S.C. §12101 et seq. and The Rehabilitation ACT, 29 U.S.C. §794a on the basis of Gender and Disability and Discrimination due to her Gender Dysphoria. Defendants have denied Expert WPATH Doctors; delay and Denied Further medically necessary Health care; Denied Her to take HVAC and Welding Certification Because of Gender; Have A culture of De facto Ban of Sex Reassignment Surgery; Denied her to socialy Transition and Provide a Female style Tshirt and cargo pants that match the colors of male uniform; Denied Hair Removal Services, products, and tools. Plaintiff incorporates All the allegations in the <u>Complaint</u> as if stated Fully here in. There is No dispute that Defendants have, at relevant times, been aware of Ms. Frazier's Gender Dysphoria and its total debilitating effects on her. The Step one HRT therpy has been provided, with No consideration of Step Two or Three. However, the Standards of Care also indicate that Sex Reassignment Surgery "SRS" may be necessary For individuals who continue to present with Exasperated Gender Dysphoria systems After one year of Hormone therpy and Dressing as a Woman.

(3)



MS. Frazier is in the same legal situation as MS. Kanautica Zayre-Brown which won her eighth Admedment claim with the court ORDER NO.3:22-CV-191-MOC-DCK on April 16th, 2024. MS. Frazier is seeking the same simular legal Justice, and equality in medical care, but not Limited to; NO cross Gender strip searches, and Equality in Participation in Trade and College Classes. MS. Frazier will seek a (Order To show cause For A Preliminary Injunction and A Temporary Restraining) if within 15 days of service Via US Postal Mail NCDPS does not enter into a pretrial settlement and correct the Denial of Expert medical care, give a written Contract to grant Full Female Accommodation and grant Her to Take HVAC at Lumberton CI, welding at Harnett CI, grant her to Take CDL-A Training to Renew CDL Prior to Release, grant Hair Removal (services, products, tools) and Expert evaluation For suitability FoR SRS. For D-TARC Approve Full Female Acess to Female Style Uniform, makeup, Hygene, MackUp mirror, Nair, Hair Removal services, No Cross gender strip searches, et al.,

(4)

Ms. Frazier only expects to be treated as all other Females in custody. She wishes to stay at Male Camps and to be treated as the Female she is; she is also in Legal Female Status has her Gender Certification by Social Worker Anne Davis which was issued on May 4th 2024 this is the Legal Requirement to update - Correct the Gender on Birth Certificate per Court order No: 1:21-CV980; Ms. Frazier is Formaly Requesting Her Gender Marker to be Corrected on State Issued Prison ID to "Female".

I declare under penalty of Perjury that the Foregoing is true and Correct.

Executed at Laurinburg, N.C, on September, 30th, 2024

P/ Ms. Michael Lewis Frazier
s/ Ms Michael L. Frazier
"AKA" Ms. LuLu Bell Michelle Frazier

(5)