THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
FILE No. 1:24-CV-956

|  |  |  |
|---|---|---|
| MICHAEL LOUIS FRAZIER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **MEMORANDUM IN SUPPORT OF** |
| v. | ) | **MOVING DEFENDANTS'** |
| | ) | **JOINT MOTION TO DISMISS** |
| NC DEPARTMENT OF ADULT | ) | |
| CORRECTION, ET AL, | ) | |
| | ) | |
| Defendants | | |

NOW COME Defendants North Carolina Department of Adult Correction ("DAC"), Todd E. Ishee, Brandeshawn Harris, Gary Junker, Dr. Lewis Jonathan Peiper, Dr. Elton Amos, Josh Panter, Sarah Cobb, Jessica Laub, Dr. Collins, Charlotte Williams, Terri Catlett, Valerie Langley, Timothy Jones, Mrs. Amanda Ruiz, Sgt. Rene Hernandez, Sgt. Cameron Evans, Sgt. Richard Wargo, Officer Kenneth Martin, Captain Helena Locklear, Sgt. Wayne Timmons, Officer John Hunt, Amanda Faulk, Officer Ms. Mary Beutler, Mr. Oxendine, Officer Mr. Justin Hardee, and Susan Goodman (hereinafter "DAC Defendants"), by and through counsel, Special Deputy Attorney General J. Locke Milholland, IV, and Defendants Dr. Arthur L. Campbell, Dr. Brian Sheitman, Dr. Abhay Agarwal (incorrectly identified as Abhay Agarloah), P.A. Carmen Hendricks, and FNP Diane Browning, by and through counsel, Jennifer D. Maldonado, (all defendants collectively referred to as "Moving Defendants") and hereby submit their brief in support of their joint motion to dismiss. In support, Moving Defendants show as follows:

I.      STATEMENT OF THE CASE

Plaintiff, Michael Louis Frazier, is an inmate in the custody of the North Carolina Department of Adult Correction ("NCDAC") who commenced this action by filing a *pro se* Complaint on

November 18, 2024, pursuant to 42 U.S.C. §1983. DE-1. Plaintiff named 31 people and the Department of Adult Correction as Defendants, specifically:

a. North Carolina Department of Adult Correction ("DAC"), Todd E. Ishee, Brandeshawn Harris, Gary Junker, Dr. Lewis Jonathan Peiper, Josh Panter, Sarah Cobb, Jessica Laub, Dr. Collins, Dr. Elton Amos, Charlotte Williams, Terri Catlett, Valerie Langley, Timothy Jones, Mrs. Amanda Ruiz, Sgt. Rene Hernandez, Sgt. Cameron Evans, Sgt. Richard Wargo, Officer Kenneth Martin, Captain Helena Locklear, Sgt. Wayne Timmons, Officer John Hunt, Amanda Faulk, Officer Ms. Mary Beutler, Mr. Oxendine, Officer Mr. Justin Hardee (DAC Defendants);

b. Dr. Arthur Campbell, Dr. Brian Sheitman, P.A. Carmen Hendricks, Dr. Abhay Agarwal, and FNP Diane Browning, (represented by Jennifer D. Maldonado);

c. RFNP Kelly Dennis, (represented by Maria Papaulias Wood).

On December 5, 2024, the court entered an order allowing Plaintiff to proceed with his case as an indigent. DE-5. On January 16, 2025, the court issued a notice of waivers sent to the NC DAC, indicating waivers are due by March 17, 2025. DE-6. On March 14, 2025, Attorney Wood appeared on behalf of Defendant Dennis and filed her waiver, and moved for an extension of time to answer, up to and including April 7, 2025, which was granted. DE-8, 9, 11.

On March 17, 2025, Attorney Maldonado appeared on behalf of Defendants Campbell, Hendricks, Sheitman, Agarwal, and Browning, and filed their waivers of service. DE-12-18. Also on March 17, 2025, DAC Defendants, with the exception of Richard Wargo and Beutler filed waivers of service and Notices Under Seal for issuance of summons were filed for Wargo and Beutler. DE-19, 20.

On March 20, 2025, summonses were issued as to Wargo and Beutler. DE-21. On April 4, 2025, the summons was returned executed for Richard Wargo, causing his answer to be due on April

2

23, 2025. DE-22. On April 7, 2025, Defendant Dennis moved to dismiss Plaintiff's Complaint. DE-23, 24. On April 8, 2025, the summons for Mary Beutler was returned as having been served on March 31, 2025, causing her answer to be due on April 21, 2025. DE-26.

On April 9, 2025, Plaintiff notified the court of a change of address. DE-27. On April 22, 2025, Defendants Wargo and Beutler moved or an extension of time to answer, up to and including May 16, 2025, which was granted on May 9, 2025 in a Text Order issued by the Court. DE-28. Also on April 22, 2025, Defendant Beutler filed a Motion to Have Defendant Beutler's Motion for Extension of Time Deemed Timely Filed, which was granted on May 8, 2025 in a Text Order issued by the Court. DE-29.

A Notice of Appearance was filed by Special Deputy Attorney General J. Locke Milholland, IV on behalf of Defendants Beutler and Wargo on the same day. DE-32. On April 24, 2025, Plaintiff filed a Motion to Amend Caption and Gender Identity of Plaintiff and Declaration in Support of Motion. DE-34, 35.

On May 12, 2025, Plaintiff notified the Court of a change of address. DE-38. Moving Defendants filed a Joint Motion for Extension of Time to File Answer or Otherwise Respond to Plaintiff's Complaint on May 16, 2025, which was granted by Text Order on May 27, 2025. DE-39.

Since May 23, 2025, Plaintiff has filed various motions and documents in support. DE-41-45, 47-51. On June 5, 2025, Plaintiff notified the Court of his change of address to Harnett Correctional Institution. DE-46. On June 12, 2025, the court entered an Order regarding Plaintiff's [49] Motion for Default with regard to Defendant Goodman and subsequently issued a Notice of Lawsuit and Request for Waiver of Summons with regard to Defendant, Officer Ms. Goodman that was due to the Court on August 11, 2025. DE-52, 53. On June 13, 2025, Attorney J. Locke Milholland, IV filed a limited appearance on behalf of the served DAC Defendants, together with a Motion for Protective

3

order from early discovery and Memorandum in Support. DE-54-56. Moving Defendants moved for an extension of time to answer, up to and including August 14, 2025, to answer or otherwise respond to Plaintiff's Complaint, which was granted by text order. DE-57.

Plaintiff filed a motion to have approval to file one copy of pleadings with the Clerk. DE-58. Defendant Dennis filed an opposition to Plaintiffs motion for leave to file an amended complaint. DE-59. On August 11, 2025, Defendant Goodman filed her executed waiver of service. DE-61. Moving Defendants now timely file their Joint Motion to Dismiss and Memorandum.

## II.    STATEMENT OF THE FACTS

Plaintiff alleges violations of the Fourth Amendment based on strip searches, the Eighth Amendment based on deliberate indifference as well as an instance of alleged excessive force, the Fourteenth Amendment based on equal protection and due process violations, violations of the Americans with Disabilities Act and the Rehabilitation Act based on disagreement with accommodations provided due to a diagnosis of gender dysphoria, and state law claims. DE-1. Plaintiff names a number of high-ranking officials as defendants in only their official capacity. DE-1. Plaintiff names the following Moving Defendants in their official capacity only: Secretary Ishee/Dismukes (*Id*, Def. 2, p 2; DE-47-1, ¶ 3), Brandeshawn Harris (DE-1, Def. 3, p 3), Terri Catlett *(Id,* Def. 16, p 15), Sarah Cobb *(Id,* Def. 10, p 14), Dr. Abhay Agarwal (*Id*., Def. 11, p  27), PA Carmen Hendricks (*Id*., Def. 14, p 28), Dr. Elton Amos (*Id*., Def. 17, p. 29), Dr. Collins *(Id*, Def. 13, p 15), Amanda Faulk *(Id,* Def. 29, p 19), Dr. Brian Sheitman *(Id,* Def. 6, p 25), Timothy Jones *(Id,* Def. 19, p 16), Gary Junker *(Id,* Def. 9, p 14), Valerie Langley *(Id,* Def.  18, p 16), Jessica Laub *(Id,* Def. 12, p 14), Josh Panter *(Id,* Def. 9, p 13), Dr. Lewis Jonathan Peiper (*Id*., Def. 8, p.13), Charlotte Williams *(Id,* Def. 15, p 15) and FNP Diane Browning (*Id*., Def. 32, p 37) . The remaining Moving Defendants are sued in their individual capacity: Officer Ms. Mary Beutler *(Id, Def.* 31, p 19), Sgt.

Cameron Evans *(Id, Def.* 22, p 17), Shannon Goodman *(Id, Def.* 28, p 18), Mr. Justin Hardee *(Id,* Def. 34, p 20), Sgt. Rene Hernandez *(Id,* Def. 21, p 17), Officer John Hunt *(Id,* Def. 27, p 18), Captain Helena Locklear *(Id,* Def. 25, p 18), Officer Kenneth Martin *(Id,* Def. 24, p 17), Mr. Oxendine Louie *(Id,* Def. 33, p 20) Mrs. Amanda Ruiz *(Id,* Def. 20, p 16), Sgt. Wayne Timmons *(Id,* Def. 26, p 18), (Sgt. Richard Wargo *(Id,* Def. 23, p 17). Further along in the Complaint, Plaintiff, again, sets out the defendants and, this time, alleges Dr. Junker is also sued in his individual capacity. (*Id*, p 26). Plaintiff has sued Dr. Arthur Campbell in his official and individual capacities (Id., p 24).

In Plaintiff's 73-page Complaint (DE-1) and 21-page proposed Amended Complaint (DE-47-1), there are a number of general allegations not specific to any specified Defendant and a few allegations attributed to specific Defendants. DE-1, 47-1. Plaintiff generally complains of a diagnosis of gender dysphoria and not receiving the desired treatment. *Id*. Plaintiff wants continued consistent hormone therapy, not to be strip searched by men, to be referred to by Plaintiff's preferred pronouns, assistance with and gender markers changed on documentation and records, and vulvoplasty (sex reassignment surgery ("SRS")). Additionally, Plaintiff alleges, without attribution to any particular defendant, excessive transfers and being beat up by other prisoners. DE-1, 47-1.

Plaintiff's Defendant specific allegations include:

- That Defendant Beutler failed to stop and prevent PREA violations in the clothes house and warned Plaintiff complaints would cause Plaintiff to lose the job. DE-1, p 36.

- On Feb 15, 2023, Defendants Evans and Hernandez required Plaintiff to urinate in a cup in a sexually harassing manner. DE-1, p 56.

- On May 9, 2023, Defendants Hunt and Timmons sexually harassed Plaintiff, Timmons sprayed Plaintiff with mace, and then Goodman escorted Plaintiff to a decontamination shower and accidentally ran Plaintiff into a steel door. DE-1, p 34, 58-59, 60.

5

- On October 25, 2024, Defendant Oxendine failed to use Plaintiff's preferred pronouns and Defendant Hardee overheard and did not intervene. . DE-1, p 39.

- That upon transfer into Pender CI, Defendant Hernandez sexually harassed Plaintiff and damaged Plaintiff's personal property during the entry search while Defendant Ruiz watched. DE-1, p 55.

- That on February or March 15, 2023, Defendant Hernandez and Wargo escorted Plaintiff to be strip searched by Defendant Martin and remained present. DE-1, p 56, DE-47, p 18.

- That on April 20, 2023, Defendant Locklear was aware of Plaintiff's accommodations. DE-1, p 33.

- That between May 5, 2023 and October 10, 2023 and October 25, 2024 Defendant Oxendine misgendered Plaintiff by not using preferred pronouns. DE-1, p 38.

Plaintiff requests affirmative injunctive relief requiring Defendants to provide medical care in the way of "triatic treatment sequence" procedures; consistent hormone therapy, desired pronouns, gender affirming vulvoplasty surgery; and gender marker records adjustments; declaratory relief, compensatory damages, punitive damages, and attorney's fees. DE-1, p 64.

### III.  QUESTIONS PRESENTED

A.  Whether Plaintiff impermissibly joined multiple unrelated claims in the 73-page Complaint filed against 32 Defendants?

B.  Whether the State and Moving Defendants sued in their Official Capacities have Eleventh Amendment Immunity?

C.  Whether Plaintiff fails to state a claim upon which relief can be granted when failing to include specific allegations against named Defendants?

D.      Whether Plaintiff fails to state a claim upon which  relief can be granted when failing to allege facts sufficient to meet the claims alleged?

E.      Whether the court has subject matter jurisdiction over state law claims barred by enactment of N.C. Gen. Stat. 143-291(e)?

F.      Whether Plaintiff otherwise sufficiently pled state constitution violations?

## IV.      STANDARD OF REVIEW

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a defendant may seek dismissal of a complaint for "failure to state a claim upon which relief can be granted."  Such a motion should be granted if the complaint does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). The allegations must rise above a "speculative level," and instead, rise to a "plausible" level. *Id.* at 555 & 570. As explained by the United States Supreme Court:

A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (internal quotations and citations omitted). Courts are required to "assume the truth of all facts alleged in the complaint and the existence of any fact that can be proved, consistent with the complaint's allegations." *E. Shore Mkts. Inc. v. J.D. Assocs. Ltd. P'ship,* 213 F.3d 175, 180 (4th Cir. 2000). However, courts are not bound by the "legal conclusions drawn from the facts" and "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Id.* The Court is allowed to consider certain types of extrinsic evidence,

including "official public records, documents central to a plaintiff's claim, and documents sufficiently referred to in the complaint so long as the authenticity of these documents is not disputed." *Witthohn v. Fed. Ins. Co.*, 164 Fed. Appx. 395, 396-97 (4th Cir. 2006) (citing, in part, *Gasner v. Dinwiddie*, 162 F.R.D. 280, 282 (E.D. Va. 1995) (permitting court to take judicial notice of public documents, such as court records, even when the documents are neither referred by nor integral to plaintiff's complaint)).

A motion under Rule 12(b)(1) challenges a court's subject matter jurisdiction over the dispute. *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). A Rule 12(b)(1) motion can be presented in two ways. First, the movant may claim that the jurisdictional allegations of the complaint are not true. *Id*. Then, a court "is to regard the pleadings' allegations as mere evidence on the issue and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991) (citing *Adams*, 697 F.2d at 1219). Second, the movant may contend "a complaint simply fails to allege facts upon which subject matter jurisdiction can be based." *Adams*, 697 F.2d at 1219. When presented with this contention, a court assumes that the allegations in the complaint are true and affords the plaintiff the same procedural protection he would receive under Rule 12(b)(6). *Id*. The burden of proving that a court has subject matter jurisdiction rests with the plaintiff as he is the party asserting it. *Johnson v. N. Carolina*, 905 F. Supp. 2d 712, 719 (W.D.N.C. 2012). A court should grant dismissal "when the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Id*.

## V. <u>LEGAL ARGUMENT</u>

**A. Whether Plaintiff Impermissibly Joined Multiple Unrelated Claims in the 73-Page Complaint Filed Against 32 Defendants?**

8

Plaintiff's 73-page Complaint (DE-1) with 21-page supplement (DE-47-1) impermissibly joins multiple defendants in unrelated claims and should be dismissed. Permissible joinder of claims and parties under Federal Rules of Civil Procedure 18 and 20 allow plaintiffs to join only "as many claims as it has against an [one] opposing party",  and the joinder of several parties  only if the claims arise out of the same  transaction or occurrence and  contain a question of law or fact  common to all the defendants. Fed. R.Civ.P. 18, 20; *Ferebee v. Manis*, 2022 U.S. Dist. LEXIS 15942, \*4-5, 2022 WL 270870 (W.D.Va. Jan. 28, 2022) dismissed without prejudice by *Ferebee v. Manis*, 2022 U.S. Dist. LEXIS 90307 (W.D. Va., May 19, 2022).  "Thus, if the claims arise out of different transactions and do not each involve all defendants, joinder of the claims in one lawsuit should not be allowed." *Ferebee*, 2022 U.S. Dist. Lexis, at \*5. "a plaintiff may name more than one defendant in a multiple claim lawsuit only if the claims against all defendants arose out of the same incident or incidents and involve a common factual or legal question." *Id*, quoting *Green v. Denning*, 2009 U.S. Dist. LEXIS 15738, 2009 WL 484457, at \*2 (D. Kan. Feb. 26, 2009).

> To allow [a plaintiff]to pay one filing fee, yet join disparate legal claims against multiple parties, concerning multiple different events and factual and legal issues, flies in the face of the letter and spirit of the Prison Litigation Reform Act ("PLRA"). PLRA restrictions on prisoner-filed civil actions include: requiring full payment of the filing fee for any civil action or appeal submitted by a prisoner — through prepayment or through partial payments withheld from the inmate's trust account; authorization of court review and summary disposition of any claim or action that is frivolous or malicious, fails to state a valid claim upon which relief can be granted or seeks relief against persons immune from such relief; and a "three strike" provision, which prevents a prisoner from proceeding without prepayment of the filing fee if the prisoner's litigation in federal court includes three or more cases dismissed as frivolous, malicious or as stating no claim for relief. *See gen*. 28 U.S.C. §§ 1915(b), €, and (g), and 1915A.
> *Id.*, at \*5-6.

Here, Plaintiff includes 31 individuals named as Defendants and DAC as an agency Defendant. DE-1. Of the DAC Defendants, only 13 are sued in their individual capacity and only 12 of those have allegations specifically identifying Defendants. *Id*. Among those Defendants with

specific allegations, there are multiple transactions allegedly giving rise to distinct claims. There is (1) an incident of Defendant Beutler failing to prevent Plaintiff from being sexually harassed in the clothes house; (2) Defendants Evans and Hernandez allegedly causing Plaintiff to provide a urine sample while sexually harassing Plaintiff; (3) an alleged incident where Timmons, Hunt, and Goodman were involved in an excessive force incident at Scotland CI; (3) an alleged occurrence of Defendant Oxendine failed to use Plaintiff's preferred pronouns while in the presence of Defendant Hardee, who did not intervene; (4) That Defendant Hernandez damaged Plaintiff's property when Plaintiff transferred in to Pender CI, sexually harassed Plaintiff, and Defendant Ruiz failed to intervene; that (5) Defendant Hernandez and Wargo escorted Plaintniff to be strip searched by Martin and all three were present (DE-47-1, p 17); and, (6) that Defendant Locklear was aware of Plaintiff's accommodations. DE-1, 47-1.

Of these, Defendant Hernandez is involved in (2), (4), and (5) with Defendants Evans, Ruiz, Wargo, and Martin. *Id*. Defendant Beutler is only involved with incident (1) with no other Defendants. Defendants Oxendine and Hardee are only involved in incident (3) with no other Defendants. Defendant Locklear is only involved in incident (6) with no other Defendants. These enumerated incidences are from two separate prisons. *Id*. The remaining Moving Defendants have no allegations attributed to them. *Id*. Plaintiff's entire Complaint and Supplemental Complaint spans three years and numerous facilities. *Id*. *See also* Attachment 8 to the Complaint, which provides the names of nine correctional facilities and times Plaintiff was there that give rise to Plaintiff's purported claims. DE-1, p 65. These aforementioned incidences implicate different constitutional provisions, if at all, and occur over a period of three years. *Id*.

Thus, this court should dismiss misjoined Defendants and sever misjoined claims. *Chambers v. Warden of Alexander Corr*., 2024 U.S. Dist. Lexis 47543, *6-7, 2024 WL 1184732 (W.D.N.C.

Mar. 18, 2024) (finding dismissal of defendants and severance of claims appropriate when a plaintiff's complaint presented multiple unrelated parties and claims from two different facilities due to being "unwieldy and inefficient, and would allow the Plaintiff to proceed in an omnibus action while paying only one filing fee, contrary to the PLRA.").

**B. Whether The State And Moving Defendants In Their Official Capacities Have Eleventh Amendment Immunity?**

Plaintiff's claims against Moving Defendants sued in only their official capacities and DAC should be dismissed on all but the ADA discrimination claim because the Eleventh Amendment bars such claims unless the state has waived its immunity, and the State of North Carolina has not done so. The Eleventh Amendment "bars claims against the State for § 1983 civil rights claims unless the State has waived its immunity…or unless Congress has exercised its undoubted power under § 5 of the Fourteenth Amendment to override that immunity." *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 66 (1989). The Eleventh Amendment is also applicable to state officers sued in their official capacity. *See Ford Motor Co. v. Dept. of Treasury*, 323 U.S. 459 (1945). "[A]suit against a state official in his or her official capacity is not a suit against the official but rather a suit against the official's office. As such, it is no different from a suit against the State itself." *Will*, 491 U.S. at 71. "State officials acting in their official capacity are therefore not 'persons' for the purposes of § 1983 and are not proper defendants to a § 1983 lawsuit." *Diggs v. Balogun*, 2017 WL 4921690, at *4 (D. Md. Oct. 31, 2017) (citing *Will*, 491 U.S. at 71). Plaintiff cannot sustain claims against Moving Defendants named solely in their official capacities because Moving Defendants are not "persons," but instead, an extension of the State of North Carolina, who has not waived immunity. Therefore, Moving Defendants sued only in their official capacities, including Secretary Ishee/Dismukes (*Id*, Def. 2, p 2; DE-47-1, ¶ 3), Brandeshawn Harris (DE-1, Def. 3, p 3), Terri Catlett (*Id,* Def. 16, p 15), Sarah Cobb *(Id,* Def. 10, p 14), Dr. Abhay Agarwal (*Id.*, Def. 11, p 27), PA Carmen Hendricks (*Id.*,

Def. 14, p 28), Dr. Elton Amos (*Id*., Def. 17, p. 29), Dr. Collins (*Id*, Def. 13, p 15), Amanda Faulk (*Id,* Def. 29, p 19), Dr. Brian Sheitman (*Id,* Def. 6, p 25), Timothy Jones (*Id,* Def. 19, p 16), Gary Junker (*Id,* Def. 9, p 14), Valerie Langley (*Id,* Def. 18, p 16), Jessica Laub (*Id,* Def. 12, p 14), Josh Panter (*Id,* Def. 9, p 13), Dr. Lewis Jonathan Peiper (*Id*., Def. 8, p.13), Charlotte Williams (*Id,* Def. 15, p 15) and FNP Diane Browning (*Id*., Def. 32, p 37) should be dismissed entirely. All remaining Moving Defendants should have the Complaint and Supplemental Complaint dismissed at least as to the extent they have been served in their official capacities and DAC should be dismissed except to the ADA claims. Moreover, the ADA claims should also be dismissed for failure to state a claim for reasons argued below.

**C. Whether Plaintiff Fails To State A Claim Upon Which Relief Can Be Granted When Failing To Include Specific Allegations Against Named Moving Defendants?**

Plaintiff fails to allege specific facts to maintain claims against Moving Defendants. A complaint serves to put each defendant on notice as to their alleged wrongdoing. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). While the facts need not be detailed, they "must be enough to raise a right to relief above the speculative level." *Id*. A pleader must allege facts, directly or indirectly, that support each element of the claim. *Dickson v. Microsoft Corp*., 309 F.3d 193, 201-02 (4th Cir. 2002). Conclusory allegations, unsupported by specific allegations of material fact are not sufficient. *Simpson v. Welch*, 900 F.2d 33, 35 (4th Cir. 1990); *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977) (failure to allege any personal connection between the named defendant and a violation of constitutional rights causes the action to fail).

While the court must accept all factual allegations in the complaint as true and draw all reasonable inferences in Plaintiff's favor, *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007). Legal conclusions, however, are not entitled to the same presumption of truth. *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 556(a plaintiff must still provide more than labels,

12

conclusions, or a "formulaic recitation of the elements of the cause of action").

Pro se litigant pleadings are afforded liberal construction and held to a less stringent standard than formal pleadings drafted by counsel. *Owen v. Schmidit*, 2024 U.S. Dist. Lexis 164447, *3, 2024 WL 4173805 (W.D.Va. Sep. 12, 2024) citing *Erickson*, 551 U.S. at 94. "Moreover, when a 12(b)(6) motion involves a civil rights complaint, '[the Court] must be especially solicitous of the wrongs alleged' and 'must not dismiss the complaint unless it appears to a certainty that the plaintiff would not be entitled to relief under any legal theory which might plausibly be suggested by the facts alleged.'" *Id*, 2024 U.S. Dist., at *3-4 quoting *Harrison v. United States Postal Serv.*, 840 F.2d 1149, 1152 (4th Cir. 1988). However, pro se Complaints "must still contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

Here, with respect to Moving Defendants Catlett, Cobb, Collins, Faulk, Harris, Ishee/Dismukes, Jones, Junker, Langley, Laub, Panter, Peiper, Sheitman, Campbell, Amos, Hendricks, Agarwal, and Browning, Plaintiff has failed to include any specific allegations. Plaintiff fails to put these Moving Defendants on notice as to any alleged wrongdoing and the Complaint should be dismissed outright as to these Moving Defendants. "Under the provisions of the Prison Litigation Reform Act, more specifically 28 U.S.C. § 1915(e)(2)(B), this court should dismiss an action filed by a prisoner which is 'frivolous' or 'fails to state a claim on which relief may be granted.' Because there are no allegations of any wrongdoing on the part of [a named defendant], Plaintiff's Amended Complaint is both frivolous and fails to state a claim on which relief can be granted as to [such Defendants]." *Simmons v. Byars*, Civ. Act. No.: 5:131950-RMG-KDW 2014 U.S. Dist. Lexis 16843, *6 (D.S.C. Jan. 6, 2014) Adopted by, *Simmons v. Byars*, 2014 U.S. Dist. LEXIS 15720 (D.S.C., Feb. 4, 2014); *See Cochran v. Morris*, 73 F.3d 1310 (4th Cir. 1996) (statute allowing

13

dismissal of in forma pauperis claims includes legally or factually baseless complaints); *Weller v. Dep't of Social Servs*., 901 F.2d at 389 n.2 (dismissal proper when there were no allegations to support claim).

**D. Whether Plaintiff Fails To State A Claim Upon Which Relief Can Be Granted When Failing To Allege Facts Sufficient To Meet The Claims Alleged?**

**1. Claims under 42 U.S.C. § 1983**

To state a claim under § 1983, a plaintiff must allege that she was "deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999).

**a. PREA Violations**

Plaintiff alleged violations of the Prison Rape Elimination Act ("PREA") (DE-1, DE-47) do not give rise to a cause of action under 42 U.S.C. § 1983. The PREA does not provide for a private cause of action because there is "no basis in law for a private cause of action under [42 U.S.C.] § 1983 to enforce a PREA violation." *Bracy v. Tully*, 1:22cv827 (RDA/WEF), 2022 U.S. Dist. LEXIS 143051, 2022 WL 3229325, at *3 (E.D. Va. Aug. 10, 2022) (collecting cases). Plaintiff cannot maintain a claim under PREA violations because the PREA "does not create a private cause of action that can be brought by an individual plaintiff." *Powell v. Temple*, 1:22cv302 (TSE/JFA), 2022 U.S. Dist. LEXIS 113494, 2022 WL 2306762, at *4 (E.D. Va. June 27, 2022). Thus, the purported PREA claim should be dismissed.

**b. Fourth Amendment**

Plaintiff alleges violations of Fourth Amendment rights stemming from being strip searched by men and presumably from the drug screen incident. The Fourth Amendment prohibits "unreasonable searches and seizures." U.S. Const. amend. IV. This right is necessarily abridged when an individual enters the prison setting. *Alexander v. Connor*, 105 F.4th 174, 180 (4th Cir. 2024),

14

citing, *Bell v. Wolfish*, 441 U.S. 520, 557, 99 S. Ct. 1861, 60 L. Ed. 2d 447 (1979) (dismissing any suggestion that prison officials need a warrant to search a prisoner's cell).Notwithstanding, the Fourth Amendment continues to guarantee prisoners "some legitimate expectation of privacy in [their] person," *Alexander*, at 180, quoting *King v. Rubenstein*, 825 F.3d 206, 215 (4th Cir. 2016) .

In deciding whether an in-prison search violates the Fourth Amendment, courts consider: (1) "the scope of the particular intrusion"; (2) "the manner in which it is conducted; (3) "the justification for initiating it"; and (4) "the place in which it is conducted." *Id*. Plaintiff's alleged Fourth Amendment violations stem from being subjected to strip searches by male officers. DE-1, p 51; DE-47-1, p 17, and an instance of being required to provide a urine sample while observed and standing. DE-1, p 56. First, Plaintiff only sets out bald conclusory allegations of being unconstitutionally strip searched by men, but does not set out the specific allegations to support the elements required to show a violation. Not getting to be strip searched by the guard of the prisoner's choice is not cognizable under the Fourth Amendment. *Fly v. United States* (D.N.D. Dec. 15, 2023) (strip searches of a prisoner with gender dysphoria not found to be a constitutional violation); *Timm v. Gunter*, 917 F.2d 1093, 1102 (8th Cir. 1990), the Eighth Circuit Court of Appeals explained: "Whatever minimal intrusions on an inmate's privacy may result from [opposite-sex] surveillance, whether the inmate is using the bathroom, showering, or sleeping in the nude, are outweighed by institutional concerns for safety and equal employment opportunities." See also *Hill v. McKinley*, 311 F.3d 899, 904-905 (8th Cir. 2002) (holding that a female detainee's "very narrow zone[ ] of privacy" was not violated even though she was made to undress in front of a male guard); *Zamal'iah Asia-Unique Carter-el v. Boyer,* 2020 U.S. Dist. LEXIS 33860, 2020 WL 939289 (E.D.Va. Feb. 25, 2020) (transgender strip search is not a cross gender strip search).

### c. Eighth Amendment Deliberate Indifference

15

Plaintiff alleges Eighth Amendment rights violations stemming from a use of OC pepper spray by Defendant Sgt. Timmons and claims of medical indifference relating to transgender treatment. The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" through its guarantee against cruel and unusual punishments. *Gregg v. Georgia*, 428 U.S. 153, 173, 96 S. Ct. 2909, 49 L. Ed. 2d 859 (1976); see *Estelle v. Gamble*, 429 U.S. 97, 102, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976); *Hixson v. Moran*, 1 F.4th 297, 302 (4th Cir. 2021); *King v. Rubenstein*, 825 F.3d 206, 218 (4th Cir. 2016); *Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016). "But, the Eighth Amendment 'proscribes more than physically barbarous punishments.'" *Carrington v. Dorsey*, Civil Action No. ELH-19-3587, 2023 U.S. Dist. LEXIS 159616, *14, 2023 WL 5831088 (D.Md. Sep. 8, 2023) (citing *Estelle*, 429 U.S. at 103.). It also "embodies" the "'concepts of dignity, civilized standards, humanity, and decency . . . .'" *Id*. (citation omitted). It "protects inmates from inhumane treatment and conditions while imprisoned." *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996). "Moreover, the protection conferred by the Eighth Amendment imposes on prison officials an affirmative 'obligation to take reasonable measures to guarantee the safety of . . . inmates.'" *Carrington* , 2023 U.S. Dist. Lexis, at *14, quoting *Whitley v. Albers*, 475 U.S. 312, 319-20, 106 S. Ct. 1078, 89 L. Ed. 2d 251 (1986); see *Farmer v. Brennan*, 511 U.S. 825, 832, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994); *Raynor v. Pugh*, 817 F.3d 123, 127 (4th Cir. 2016); cf. *DeShaney v. Winnebago County Dep't of Social Servs.,* 489 U.S. 189, 199-200, 109 S. Ct. 998, 103 L. Ed. 2d 249 (1989) (stating, "when the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being"); *John Doe 4 v. Shenandoah Valley Juvenile Center Comm'n,* 985 F.3d 327, 338 (4th Cir. 2021) (same).

### i.   Sexual Harassment Is Not Recognized as a Claim

Plaintiff's allegations of sexual harassment fail to give rise to an Eighth Amendment violation. Plaintiff alleges some of the Moving Defendants sexually harassed Plaintiff by using the wrong pronouns and making other derogatory remarks. DE-1; DE-47-1. "While prisoners have a right to be free from sexual abuse, the Fourth Circuit has been reluctant to recognize an Eighth Amendment violation where prison officials' conduct amounts to 'mere verbal sexual harassment.'" *Owen v. Schmidit,* Civ. Act. No. 7:22-CV-675, 2024 U.S. Dist. Lexis 16447, *5 (W.D.Va. Sep. 12, 2024) quoting *Jackson v. Holley*, 666 Fed. App'x 242, 244 (4th Cir. 2016); *Henslee v. Lewis*, 153 F. App'x 178, 180 (4th Cir. 2005) (allegations of verbal abuse and harassment, without more, fail to state a claim under § 1983); *Snodgrass v. Messer*, No. 7:16cv50, 2017 U.S. Dist. LEXIS 34329, 2017 WL 975992, at *5 (W.D. Va. Mar. 10, 2017) (dismissed with alllegations defendant was alleged to have repeatedly made comments of a sexual nature), aff'd, 694 F. App'x 157 (4th Cir. 2017).

"[W]here an incident of alleged sexual abuse does not involve physical contact, the alleged misconduct must be severe to implicate constitutional protections." *Bishop v. Lambert*, No. 7:22cv61, 2023 U.S. Dist. LEXIS 17686, 2023 WL 1466621, at *2-3 (W.D. Va. Feb. 2, 2023) (defendant's actions of watching plaintiff urinate on one occasion and using profanity about it does not rise to an Eighth Amendment claim); *Jackson*, 666 Fed. App'x at 244 (defendant sending one "sexually explicit and lurid" letter; posing "seductively before [Jackson] and whisper[ing] sexually explicit words to [him]," and placing "her groin area in [Jackson's] face while [he] was seated for [his] haircut in the barber's chair" is not an Eighth Amendment violation); *Kokinda v. Penn. Dep't of Corr., No. 2*:16-CV-1580-MRH-CRE, 2017 U.S. Dist. LEXIS 142820, 2017 WL 3912350, at *1-2 (W.D. Pa. Sept. 5, 2017) (defendant displaying a "latent sexual interest" for plaintiff and staring at plaintiff's groin area many times "for an uncomfortable duration" while plaintiff was in his boxers in his cell does not

17

state the requisite level of severity to make out an Eighth Amendment claim), aff'd, 779 F. App'x 944, 950 (3d Cir. 2019) (unpublished).

"Not all alleged incidents of sexual misconduct or touching are objectively, sufficiently serious to constitute a violation of the Eighth Amendment." *Owen*, at *6-7 citing *Jackson*, 666 F. App'x at 244. "In the context of a sexual assault, a plaintiff 'must allege facts on which he could prove that the unwanted touching had some objectively sexual aspect to it; his own subjective perceptions alone that the contact was of a sexual nature are not sufficient.'" *Id.*, quoting *Lee v. Kanode*, No. 7:20-CV-00305, 2022 U.S. Dist. LEXIS 178947, 2022 WL 4798263, at *5 (W.D. Va. Sept. 30, 2022). Actionable sexual contact must be incompatible with "contemporary standards of decency." *Id.*, quoting *Helling v. McKinney*, 509 U.S. 25, 113 S. Ct. 2475, 125 L. Ed. 2d 22 (1993).

Plaintiff also sets out a myriad of unrelated allegations of Defendants strip searching Plaintiff and viewing Plaintiff in a state of undress during a urine screen. DE-1, DE-47-1. In addition to not violating the Fourth Amendment, these allegations do not violate the Eighth Amendment. Drug screens and prison transfers suggests that strip searches and viewing Plaintiff during a state of undress occurred "pursuant to a legitimate security policy rather than from sexual motivation. '[T]he United States Supreme Court has clearly upheld as constitutional random, visual strip searches of inmates, whether convicted felons or pretrial detainees, after they return from opportunities to obtain contraband.'" *Id.*, at *7-8 quoting *Ellis v. Elder*, No. 7:08cv642, 2009 U.S. Dist. LEXIS 7814, 2009 WL 275316, at *3 (W.D. Va. Feb. 4, 2009); *Bell v. Wolfish*, 441 U.S. 520, 99 S. Ct. 1861, 60 L. Ed. 2d 447 (1979)). Accordingly, neither the Complaint nor the Amended Complaint states sufficient facts to allege an Eighth Amendment violation related to the removal of Plaintif's clothing. *See, e.g., Ellis v. Elder*, 2009 U.S. Dist. LEXIS 7814, 2009 WL 275316, at *3 (dismissing Eighth Amendment claim where, "other than his own perceptions," plaintiff had "fail[ed] to allege facts indicating that Elder

18

intended the pat down contact as any sort of sexual proposition or harassment"); *Caldwell v. Crossett*, No. 9:09cv576, 2010 U.S. Dist. LEXIS 56573, 2010 WL 2346337, at *3 (N.D.N.Y. May 24, 2010) (dismissing Eighth Amendment claim where a corrections officer grabbed plaintiff's testicles during a pat-frisk causing serious pain around his groin area).

### ii. Eighth Amendment Excessive Use of Force

Plaintiff asserts an excessive force claim by Sgt. Timmons administering a burst of OC pepper spray. DE-1. When an inmate brings an excessive force claim against prison officials, the court must determine "whether force was applied in good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Whitley v. Albers*, 475 U.S. 312, 320-321 (1986). "Eighth Amendment analysis necessitates inquiry as to whether the prison officials acted with a sufficiently culpable statement of mind (subjective component) and whether the deprivation suffered, or injury inflicted on the inmate was sufficiently serious (objective component." *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996). Even a serious injury cannot establish an 8th amendment violation when the subjective component cannot be met. *Whitley*, at 319.

In assessing a claim of excessive force under the Eighth Amendment, "[t]he 'core judicial inquiry' ... [i]s not whether a certain quantum of injury was sustained, but rather 'whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Wilkins v. Gaddy*, 559 U.S. 34, 37, 130 S. Ct. 1175, 175 L. Ed. 2d 995 (2010) (per curiam) (quoting *Hudson v. McMillian*, 503 U.S. 1, 7, 112 S. Ct. 995, 117 L. Ed. 2d 156 (1992)). *Owens*, at *9. Here, Plaintiff fails to forecast what Hunt told Timmons so that claim can be shown to have any subjective malicious intent by Timmons. "Absent a showing that force was even unreasonably applied, Plaintiff cannot demonstrate that it was applied maliciously and sadistically for the very purpose of causing harm." *Aliff v. West Virginia Reg'l Jail and Corr. Facility Auth.*, No. 2:15cv13513,

2016 U.S. Dist. LEXIS 131310, 2016 WL 5419444, at *6 (S.D.W. Va. Sept. 26, 2016). *Owens*, at *9-10 (Failure to describe the circumstances which gave rise to the use of force, the security threat, if any, posed, or any other circumstantial detail allowing the Court to gauge the reasonableness of the defendant's action subjects an excessive force claim to dismissal for failure to state a claim). With respect to the escort to decontamination, Plaintiff's allegations refute any malicious intent or subjective motive to cause harm, characterizing the act as an accident. This incident should likewise be dismissed. *Owens,* at *9-10.

### iii. Eighth Amendment Deliberate Indifference

The United States Supreme Court discussed the extent of a prisoner's right to medical attention in *Estelle v. Gamble*, 429 U.S. 97, 97 S. Ct. 285 (1976), and explained that only "deliberate indifference to serious medical needs of prisoners" violates the Eighth Amendment. *Id.* at 104, 97 S. Ct. at 291. A deliberate indifference claim has both objective and subjective components. *Id.*; *see also Farmer v. Brennan*, 511 U.S. 825, 114 S. Ct. 1970 (1994); *Iko v. Shreve*, 535 F.3d 225 (4th Cir. 2008). As to the objective component, a plaintiff must first show that the alleged deprivation is sufficiently serious. *Farmer*, 511 U.S. at 533-34, 114 S. Ct. at 1977. A "serious medical need" is "a condition 'diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *DePaola v. Clarke*, 884 F.3d 481, 486 (4th Cir. 2018) (citation omitted).

The subjective deliberate indifference standard "sets a particularly high bar to recovery." *Iko,* 535 F.3d at 241. It requires that a defendant know of, and purposefully ignore, "an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan,* 511 U.S. 825, 837 (1994). "To show an Eighth Amendment violation, it is not enough that

an official should have known of a risk, *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014), "the official actually must have recognized that his actions were insufficient." *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004). This second prong "entails something more than mere negligence." *Rish v. Johnson*, 131 F.3d 1092, 1096 (4th Cir. 1997). "It requires that a prison official actually know of and disregard an objectively serious condition, medical need, or risk of harm." *Id.* In other words, the prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. Allegations that might be sufficient to support negligence and medical malpractice claims do not, without more, rise to the level of a cognizable Section 1983 claim. *Estelle*, 429 U.S. at 106. "[E]ven if a prison doctor is mistaken or negligent in his diagnosis or treatment, no constitutional issue is raised absent evidence of abuse, intentional mistreatment, or denial of medical attention." *Stokes v. Hurdle*, 393 F. Supp. 757, 762 (D. Md. 1975), *aff'd*, 535 F.2d 1250 (4th Cir. 1976). Further, disagreements between a physician and prisoner regarding proper care do not constitute deliberate indifference. *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014)

Only when an action meets both the objective and subjective elements will it offend the "evolving standards of decency" in such a way as to violate the Eighth Amendment's prohibition against "unnecessary and wanton infliction of pain." *Estelle*, 429 U.S. at 104-06, 97 S. Ct. 285, 291; *Farmer*, 511 U.S. at 834, 114 S. Ct. at 1977; U.S. Const. amend. VIII. Only "extreme deprivations" are sufficient to constitute a violation of the Eighth Amendment; *De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003).

Moving Defendants concede for purposes of this motion only that Plaintiff had a serious medical need. Plaintiff's claim, however, fails to sufficiently plead the subjective component and for reasons discussed herein, the claim should be dismissed. Generally, "deliberate indifference is a very high standard – a showing of mere negligence will not meet it." *Parrish ex rel. Lee v. Cleveland*, 372 F.3d

21

294, 302, (4th Cir. 2004) (quoting *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999)). Regarding prisoners complaints about medical care, the Supreme Court held that "society does not expect that prisoners will have unqualified access to health care." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). "To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990).

Plaintiff's claims are best categorized as a disagreement as to diagnosis. Disagreements between health care providers and the inmate over the diagnosis and the proper course of treatment are not sufficient to support a deliberate indifference claim, and questions of medical judgment are not subject to judicial review. *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985); *Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975). This case falls within the precedent set by *Wright* and *Russell*. The determining facts in *Russell* were that Russell claimed he was being denied adequate medical treatment while incarcerated at Botetourt Correctional. *Russell*, at 318. The affidavits submitted to the District Court reflected that Russell was under constant medical supervision from the time of his arrival at Botetourt. *Id*. The Court ruled that questions of medical judgment are not subject to judicial review and affirmed summary judgment in favor of defendants. *Id*.

Plaintiff presents bald conclusory allegations of being denied his preferred transgender treatment. DE-1, DE-47-1. The vast majority of Plaintiff's allegations relating to deliberate indifference are legal conclusions, which the court should disregard in analyzing a 12(b)(6) motion. *Erickson*, 551 U.S., at 94. Plaintiff's specifics as to deliberate indifference to medical needs are not being provided a preferred expert evaluation instead of the evaluation provided (DE-1, p 37) and represents a mere disagreement with existing treatment. *Wright*, 766 F.2d, at 849

### iv. Fourteenth Amendment Equal Protection

Plaintiff fails to sufficiently plead Fourteenth Amendment violations. The Fourteenth

22

Amendment's Equal Protection Clause states "[n]o State shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV, § 1. "The purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564, 120 S. Ct. 1073, 145 L. Ed. 2d 1060 (2000). (internal quotation marks and alteration omitted). The equal protection requirement "does not take from the States all power of classification," *Personnel Adm'r v. Feeney*, 442 U.S. 256, 271 (1979), but "keeps governmental decisionmakers from treating differently persons who are in all relevant respects alike." *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992). Thus, "An equal protection violation occurs in one of two ways: (1) when the government explicitly classifies people based on [sex], or (2) when a law is facially neutral, but its administration or enforcement disproportionately affects one class of persons over another and a discriminatory intent or animus is shown." *Monroe v. City of Charlottesville*, 579 F.3d 380, 388 (4th Cir. 2009).

"To succeed on an equal protection claim, a plaintiff must first demonstrate that [s]he has been treated differently from others with whom [s]he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001). The court then considers "whether the disparity in treatment can be justified under the requisite level of scrutiny." *Id.*; see *King v. Rubenstein*, 825 F.3d 206, 220 (4th Cir. 2016). Generally, sex-based classifications are subject to intermediate scrutiny. *Grimm v. Gloucester Cnty. Sch. Bd.,* 972 F.3d 586, 608 (4th Cir. 2020), as amended (Aug. 28, 2020) (explaining that courts "have held that various forms of discrimination against transgender people constitute sex-based discrimination for purposes of the Equal Protection Clause because such policies punish transgender persons for gender non-conformity, thereby relying on sex stereotypes"). However, the Fourth Circuit has explained that when equal protection challenges arise in a prison context, "courts

must adjust the level of scrutiny to ensure that prison officials are afforded the necessary discretion to operate their facilities in a safe and secure manner." *Veney v. Wyche*, 293 F.3d 726, 732 (4th Cir. 2002) (evaluating equal protection claim brought by inmate).

Under this more deferential standard, courts must determine whether the disparate treatment is "reasonably related to [any] legitimate penological interests." *Id*. (explaining that while courts are to "apply this deferential standard even when the alleged infringed constitutional right would otherwise warrant higher scrutiny[,] . . . this more deferential review does not make [the court] ignorant to the concerns that justify application of a heightened standard outside of the prison context") (citation and internal quotation marks omitted). In determining whether an action is reasonable under this deferential standard, courts consider the following factors: (1) whether there is a valid, rational connection between the policy and penological interest; (2) whether an alternative means of exercising the right remains available to the inmate; (3) the impact accommodation of the asserted right will have on guards, other inmates, and the allocation of prison resources; and (4) the absence of ready alternatives that accommodate prisoners' rights at de minimis cost to valid penological interests. Morrison, 239 F.3d at 655 (citing *Turner v. Safley*, 482 U.S. 78, 89-90, 107 S. Ct. 2254, 96 L. Ed. 2d 64 (1987)).

In Plaintiff's Complaint, Plaintiff alleges discrimination by not being provided strip searches by guards of a preferred sex, not being provided sex reassignment surgery, and to be treated as all other females in custody, but to remain at a male facility. DE-1, p 73. Plaintiff's allegations admit having been through the Facility Transgender Accommodation Committee (FTARC) and Division Transgender Accommodation Committee (DTARC) processes. Plaintiff's conclusory allegations and legal assertions fail to explain why the accommodations provided are discriminatory. Plaintiff therefore has failed to state a Fourteenth Amendment equal protection claim. *Iqbal*, 556 U.S. at 678;

24

*Twombly*, 550 U.S. at 556(a plaintiff must provide more than labels, conclusions, or a "formulaic recitation of the elements of the cause of action").

### v. Fourteenth Amendment Due Process

Plaintiff alleges several pages of Plaintiff's journal were torn out after a search, triggering a Fourteenth Amendment Due Process violation. DE-1, p 60. This fails to state a claim. *Hudson v. Palmer*, 468 U.S. 517, 534 (1984) (unauthorized intentional deprivation of property by a state official does not give rise to a Fourteenth Amendment due process claim when there are adequate state remedies); see *Gallimore v. Sink*, 27 N.C. App. 65, 67, 218 S.E.2d 181, 182 (1975) (under North Carolina law, an action for conversion will lie against a public official who wrongfully deprives an owner of his property by an unauthorized act); *Wilkins v. Whitaker*, 714 F.2d 4, 6 (4th Cir. 1983) (due process satisfied where North Carolina tort law provides an adequate avenue for relief for state prisoner). Accordingly, the Plaintiff has failed to state a plausible due process claim.

### vi. Claims under the ADA and Rehab Act

To state a claim under the ADA a plaintiff must show that: (1) she has a disability; (2) she was otherwise qualified to receive the benefits of a public service, program, or activity; and (3) she was denied the benefits of such service, program, or activity, or was otherwise discriminated against, on the basis of the disability. See *Nat'l Fed. of the Blind v. Lamone*, 813 F.3d 494 (4th Cir. 2016); *Doe v. Univ. of Md.* Med. Sys. Corp., 50 F.3d 1261 (4th Cir. 1995). Here, Plaintiff alleges to be a qualified person with a disability under the ADA pursuant to the medical diagnoses of gender dysphoria and intersex status and that Defendants discriminated against Plaintiff by denying Plaintiff reasonable accommodations of medical treatment owed to women. DE-1.

While prisoners have a right to reasonable accommodations for disabilities, prison officials may determine the reasonableness of the accommodation request in consideration of other

penological needs in the prison setting, such as security, safety and administrative exigencies. *Gates v. Rowland*, 39 F.3d 1439, 1446-47 (9th Cir. 1994) (applying the *Turner v. Safley*, 482 U.S. 78, 107 S. Ct. 2254, 96 L. Ed. 2d 64 (1987) rational relationship test in determining the reasonableness of accommodations requested under the ADA for HIV-positive prisoners in light of other penological concerns). Further, prison administrators should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve the internal order and discipline and to maintain institutional security. *Bell v. Wolfish*, 441 U.S. 520, 99 S. Ct. 1861, 60 L. Ed. 2d 447 (1979).

In this case, the crux of the issue is whether Plaintiff is being provided reasonable accommodations for Plaintiff's disability of gender dysphoria by not being provided sex reassignment surgery, being strip searched by the guards of Plaintiff's preference, and otherwise being treated as a woman. DE-1. Plaintiff admits being provided HRT, women's underwear, and private showers at varying times of incarceration. As differences with treatment decisions do not give rise to constitutional violations, *Wright,* 766 F.2d, at 849; *Russell*, 528 F.2d,at 319, merely not being provided the desired accommodations are likewise not actionable under the ADA. Nothing in the ADA requires Defendants to accommodate the whims of a disabled inmate simply because he is disabled." *Alton v. Md. Dep't of Pub. Safety, 2016 U.S. Dist. LEXIS 143712, *12* (D.Md. Oct. 14, 2016) (*A plaintiff's failure to complete work release eligibility requirements "was simply due to his dissatisfaction with all efforts to accommodate his disability and the denial of his requests to be sent to a prison of his choice. Those circumstances vitiate his claim under the ADA.").

Plaintiff alleges having participated in the FTARC and DTARC processes and to being provided a variety of accommodations. DE-1. Plaintiff's conclusory allegations that the accommodations provided are inadequate are thus insufficient to state a claim. *Iqbal*, 556 U.S. at 678;

26

*Twombly*, 550 U.S. at 556(a plaintiff must provide more than labels, conclusions, or a "formulaic recitation of the elements of the cause of action").

### E.  Whether The Court Has Subject Matter Jurisdiction Over State Law Claims Barred By Enactment Of N.C. Gen. Stat. 143-291(E)?

This court lacks subject matter jurisdiction over all of Plaintiff's claims other than the claim brought under 42 U.S.C. § 1983 and all such claims should be dismissed. The North Carolina Industrial Commission, through enactment of the Tort Claims Act, provides the exclusive jurisdiction for claims of negligence against state officials acting in their official capacity. N.C. Gen. Stat. § 143-291; *Estate of Long v. Fowler*, 270 N.C. App. 241, 245-6, 841 S.E.2d 290, 295-6 (2020). This represents the limited scope to which the state has waived sovereign immunity for claims of negligence, and claims of negligence only, and there is no jurisdiction to hear state claims for negligence outside of that tribunal. *Id*. Claims other than negligence made against the state are barred by sovereign immunity. This includes claims against a state official acting in his official capacity. *Id*.

In *Meyer v. Walls*, the North Carolina Supreme Court held "[a] plaintiff may maintain both a suit against a state agency in the Industrial Commission under the Tort Claims Act and a suit against the negligent agent or employee in the General Court of Justice for common-law negligence." 347 N.C. 97, 108, 489 S.E.2d 880, 886 (1997).

In October 2023, the North Carolina legislature legislatively negated *Meyer v. Walls* by having enacted subsection (e), which states:

> This Article provides the sole and exclusive remedy for any claim that arises as a result of the negligence of any officer, employee, involuntary servant, or agent of the state while acting within the scope of his office, employment, service, agency, or authority, and the North Carolina Industrial Commission is the sole and exclusive forum for hearing any such claims. Any such claims filed in any other forum arising out of or relating to the same subject matter against the officer, employee, involuntary servant, or agent of the State is precluded.

N.C. Gen. Stat. § 143-291(e).

The clear and unequivocal intent from a reading of 143-291(e), is to preclude all other state law claims after a plaintiff has chosen to pursue a remedy under the Tort Claims Act. N.C. Gen. Stat. § 143-291(e).

Prior to the 2023 amendment to N.C. Gen. Stat. § 143-291, sovereign immunity and the Tort Claims Act already established the Industrial Commission as the sole forum for negligence claims against the state and barred other claims for negligence filed elsewhere. N.C. Gen. Stat. § 143-291(a); *Estate of Long v. Fowler*, 270 N.C. App. 241, 245-6, 841 S.E.2d 290, 295-6 (2020). This represents the limited scope to which the state has waived sovereign immunity for claims of negligence, and claims of negligence only, and there is no jurisdiction to hear state claims for negligence outside of that tribunal. *Id.*

In determining legislative intent, the words and phrases of a statute must be interpreted contextually, in a manner which harmonizes with the other provisions of the statute, and which gives effect to the reason and purpose of the statute. *Burgess v. Your House of Raleigh, Inc.*, 326 N.C. 205, 215, 388 S.E.2d 134 (1990). "All parts of the same statute dealing with the same subject are to be construed together as a whole, and every part thereof must be given effect if this can be done by any fair and reasonable interpretation." *State v. Tew*, 326 N.C. 732, 739, 392 S.E.2d 603 (1990); *Belmont Ass'n v. Farwig, 381 N.C. 306, 315, 873 S.E.2d 486, 491-2 (2022).*

In sum, statutory interpretation requires that all of a statute's provisions are to be reconciled with one another in order to maintain the sanctity of the statute while guided by the legislature's clear intent embodied in the law's subsection. For the 2023 subsection (e) to be given meaning and effect, it must bar all state law claims against all defendants, whether sued in their individual capacity or their official capacity, arising out of the same facts. To be read as only restricting negligence claims

28

against the state from being filed outside of the Industrial Commission would render subsection (e) redundant to preexisting law and without meaning.

**F.  Whether Plaintiff Otherwise Sufficiently Pled State Constitution Violations?**

**1.  Plaintiff's Claim is Barred Because There is an Adequate State Remedy.**

"[A] direct cause of action under the State Constitution is permitted only 'in the absence of an adequate state remedy.'" *Hawkins v. State*, 117 N.C. App. 615, 629 (1995).  At best, Plaintiffs have a claim for negligence, which they are currently pursuing in the North Carolina Industrial Commission.  Since Plaintiff has an adequate state remedy, the claims under the North Carolina Constitution should be dismissed.

**2.  Plaintiff's State Constitutional Claim is Barred Against the Individual Moving Defendants**

"Our Supreme Court has held that a plaintiff cannot maintain a claim against government employees in their individual capacities for alleged violations of state constitutional free speech rights.  Based on the Court's discussion in Corum, we hold that the Court's holding applies equally to alleged violations of other state constitutional rights." *Hawkins*, 117 N.C. App. at 630.  Thus, the individual Defendants should be dismissed from the state constitutional claim.

**3.  Alternatively, Plaintiff Cannot Satisfy the Elements for Such a Claim**

Article I, Section 27 is the counterpart to the Eighth Amendment of the U.S. Constitution, prohibiting infliction of "cruel or unusual punishments" N.C. Const. Art. I, Sec. 27. Claims under the North Carolina "cruel or unusual punishments" clause are generally analyzed the same as under the U.S. Constitution. *State v. Kelliher*, 381 N.C.  558, 584-85, 873 S.E.2d 366, 385-86 (2022) (acknowledging the textual difference in North Carolina's "Cruel or unusual" and the Eighth Amendment's "cruel and unusual" clauses, evolving cruel and unusual punishment analysis guies Section 27 analysis); See *Griffin v. Mortier*, 837 Fed. Appx. 166, 170-171 (4th Cir. 2020). Thus, for

29

the reasons discussed above, Plaintiff fails to sustain a N.C. Const. Article I, Sec. 27 claim.

## CONCLUSION

For the forgoing, Plaintiff's complaint and amended complaint should be dismissed with prejudice.

This the 14th day of August, 2025.

**JEFF JACKSON**
**ATTORNEY GENERAL**

/s/ J. Locke Milholland, IV
J. Locke Milholland, IV
Special Deputy Attorney General
N.C. State Bar No. 35449
N.C. Department of Justice
Public Safety Section
P.O. Box 629
Raleigh, North Carolina 27602-0629
Telephone: (919) 716-6540
Facsimile: (919) 716-6761
E-Mail:        jmilholland@ncdoj.gov

**BATTEN MCLAMB SMITH, PLLC**

/s/ Jennifer D. Maldonado
Jennifer D. Maldonado
N.C. State Bar No.: 25708
Attorneys for Defendants Dr. Arthur L.
Campbell, Dr. Abhay Agarwal, P.A. Carmen
Hendricks, and RFNP Diane Browning
4141 Parklake Ave., Suite 350
Raleigh, North Carolina 27612
Telephone: (919) 439-2221
Facsimile: (919) 780-5382
jmaldonado@battenpllc.com

30

## CERTIFICATE OF WORD COUNT

I hereby certify that Defendants' Memorandum in Support of their motion to dismiss does not comply with the word count limits pursuant to Local Rule 7.3(d); however, Defendants have filed a Motion to Exceed Word Count prior to this filing.

This the 14th day of August, 2025.

**JEFF JACKSON**
**ATTORNEY GENERAL**

/s/ J. Locke Milholland, IV
J. Locke Milholland, IV
Special Deputy Attorney General
N.C. State Bar No.  35449
N.C. Department of Justice
Public Safety Section
P.O. Box 629
Raleigh, North Carolina 27602-0629
Telephone: (919) 716-6540
Facsimile: (919) 716-6761
E-Mail:        jmilholland@ncdoj.gov

31

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that, on the above date, I filed electronically a copy of the foregoing utilizing the CM/ECF System. I also certify that, on the date below, I caused Plaintiff, a *non-CM*/ECF participant, to be served a copy of the foregoing document by depositing a copy of same in the United States mail, first-class postage prepaid, addressed as follows:

Maria Papoulias Wood
Hall Booth Smith, P.C.
5420 Lake Park Blvd., Ste 130
Raleigh, NC 27607
Email: mwood@hallboothsmith.com

Jennifer D. Maldonado
BATTEN MCLAMB SMITH, PLLC
4141 Parklake Ave., Suite 350
Raleigh, North Carolina 27612
Email: jmaldonado@battenpllc.com

Michael Louis Frazier
OPUS No. 0966292
Harnett Correctional Institution
1210 E. McNeil Street
Lillington, NC 27546
*Pro Se Plaintiff*

This the 14th day of August, 2025.

/s/ J. Locke Milholland, IV
J. Locke Milholland, IV
Special Deputy Attorney General

32