IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| MICHAEL LOUIS FRAZIER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:24CV956 |
| | ) | |
| NORTH CAROLINA DEPARTMENT | ) | |
| OF CORRECTIONS, ET AL., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION, ORDER AND
RECOMMENDATION OF UNITED STATES
MAGISTRATE JUDGE**

The plaintiff, LuluBell Michelle Frazier,[1] filed suit against 34 defendants,[2] alleging that by denying her gender-affirming care while incarcerated, they were deliberately indifferent to her medical needs in violation of her rights under the Eighth Amendment of the United States Constitution and Article I, Section 27 of the North Carolina Constitution. *See* Docket Entry 1, hereinafter "Compl." She alleges the same lack of care violated the equal protection and due process clauses of the Fourteenth Amendment, the Americans with Disabilities Act (ADA), and Section 504 of the Rehabilitation Act of 1973 (Section 504). Finally, she alleges that correctional officers harassed and assaulted her, also in violation of her Eighth and Fourth Amendment and North Carolina constitutional rights.

Before the Court are the following fifteen motions:

1. Motion to Dismiss for Failure to State a Claim, Docket Entry 23 (defendant Dennis);
2. Motion for Reconsideration, Docket Entry 41 (Frazier);

---

[1] The Complaint indicates that the plaintiff was convicted under the name of Michael Louis Frazier. The Court will refer to the plaintiff as Frazier and, pursuant to the Magistrate Judge's May 28, 2025 order, the plaintiff's preferred pronouns. *See* Docket Entry dated 05/28/2025.

[2] The defendants, and whether they are being sued in their individual or official capacities, are set forth in Appendix A to this memorandum opinion and recommendation.

3. Motion to Produce, Docket Entry 42 (Frazier);
4. Motion for a Preliminary Injunction, Docket Entry 43 (Frazier);
5. Motion for Leave to File, Docket Entry 47 (Frazier);
6. Motion styled "Motion to Attach Exhibits to Complaint," Docket Entry 48 (Frazier);
7. Motion for Protective Order from Early Discovery, Docket Entry 55 (defendants Agarwal, Amos, Beutler, Browning, Campbell, Catlett, Cobb, Collins, Evans, Faulk, Goodman, Hardee, Harris, Hendricks, Hernandez, Hunt, Cooley-Dismukes (substituted for Ishee),[3] Jones, Junker, Langley, Laub, Locklear, Martin, NCDAC, Oxendine, Panter, Peiper, Ruiz, Sheitman, Timmons, Wargo, Williams, hereinafter the "Moving Defendants");
8. Motion, Docket Entry 58 (Frazier);
9. Motion to Exceed Word Count, Docket Entry 62 (Moving Defendants);
10. Motion to Dismiss for Failure to State a Claim, Docket Entry 64 (Moving Defendants);
11. Motion for Extension of Time to File Response/Reply, Docket Entry 69 (Frazier);
12. Motion to Exceed Page Limit, Docket Entry 71 (Frazier);
13. Motion for Discovery, Docket Entry 73 (Frazier);

14. Motion to file motions and pleadings through electronic court system, Docket Entry 75 (Frazier); and
15. Motion Entitled "Cease and Desist Request," Docket Entry 77 (Frazier).

## I. FACTS

Because all well-pled facts are accepted as true and considered in the light most favorable to the plaintiff, below are the facts as Frazier has alleged them in the Complaint. *See Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.,* 591 F.3d 250, 255 (4th Cir. 2009) (citation modified). Frazier's allegations fall into three categories: first, denial of medical care at various facilities related to gender dysphoria; second, harassment and/or physical abuse by correctional officers; and third, failure of certain correctional officers to protect her from physical harm at the hands of fellow inmates.

A. Frazier, an inmate in NCDAC custody, suffers from gender dysphoria and requests accommodations.

Frazier has been in NCDAC custody since January of 2011. *See* Compl. at 40. In May of 2021, psychological services coordinator Kelly G. Elkins diagnosed Frazier with gender dysphoria. *See id.* Frazier formally requested treatment and accommodation related to this

---

[3] The Director of the North Carolina Department of Adult Corrections (NCDAC) is now Leslie Cooley-Dismukes.

2

condition, including gender-affirming hormone therapy, social transition, clinical and psychiatric evaluation, a determination of whether sex reassignment surgery would be appropriate, curtailment of cross-gender strip searches, curtailment of group strip searches, gender-consistent pronouns, provision of a female uniform, body hair removal, and feminine hygiene products. *See id.* at 40-41.

Frazier alleges one detention facility provided her with female underwear, makeup and hygiene products, but she did not receive the same upon transfer to a different facility. *See id.* at 41. The denial of these accommodations exacerbated Frazier's "acute physical, emotional, and psychological distress associated with the root problem – gender dysphoria." *See id.* Additionally, Frazier alleges that NCDAC has not provided the accommodation of hormone therapy. *See id.*

On or about August 22, 2019, NCDAC established its Evaluation and Management of Transgender Offenders (EMTO) policy, creating a Division Transgender Accommodation Review Committee (DTARC) to review transgender inmates' requests for medical intervention. *See id.* at 42. Frazier alleges that DTARC has never found a medical need for gender reassignment

surgery to treat gender dysphoria. *See id.* at 43. She further alleges that the DTARC members generally lack expertise in treating individuals suffering from gender dysphoria and "defer to one member for determining the 'medical necessity' for SRS [sex reassignment surgery] – defendant Dr. Campbell." *See id.* at 44. Frazier alleges that this amounts to a "blanket ban" that does not "allow for the consideration of an inmate's particular medical needs." *See id.* (citation omitted).

DTARC's denial of sex reassignment surgery is not the only injury Frazier alleges related to gender dysphoria. She also notes that "trans(gender) individuals can seek to change their name and to amend their gender marker to be consistent with their gender identity" and that NCDAC personnel "have refused to allow the plaintiff the opportunity to 'update' or 'correct' plaintiff's gender marker in order to be consistent with gender identity on the prison identification(s) and birth certificate[.]"[4] *See id.* at 49.

   B. Frazier endures assault and harassment at various NCDAC facilities.

Frazier further states that the individually named corrections officers have "repeatedly, unnecessarily, and depravingly

---

[4] Frazier alleges that defendants Laub and Collins have refused to provide her with a "certification letter" to forward to the North Carolina Department of Motor Vehicles and the North Carolina Department of Health and Human Resources required to update the gender marker on Frazier's birth certificate.

Case 1:24-cv-00956-DAB-JGM    Document 79    Filed 08/10/26    Page 3 of 36

required ... the plaintiff to strip in front of other male correctional officers solely so that they may be 'entertained' by yielding the plaintiff's unique characteristics[.]" *See id.* at 53. Frazier provides specific examples:

- Laub and Collins refused to provide her with a "certification letter" to forward to the North Carolina Department of Motor Vehicles and the North Carolina Department of Health and Human Resources required to update the gender marker on Frazier's birth certificate;
- On December 29, 2021, at <u>Harnett Correctional Institution</u>, during a search of Frazier's locker, two officers ordered her into a shower stall, told her to remove her bra and panties, bend at the waist, and spread her buttocks three times, stating: "You aren't spreading your butt cheeks wide enough, do it again!";
- On March 17, 2022, at <u>Neuse Correctional Institution</u>, after officers left Frazier unprotected in the shower, fellow inmates stabbed her with a shank in the neck and raped her;
- On March 25, 2022, two individuals[5] "beat up the plaintiff and raped their 'victim'";

- On April 11, 2022, fellow inmates paid another inmate to attack the plaintiff "on the yard. There were no officers on the yard. There was no medical care provided after the rapes were reported";
- On June 10, 2022, upon transfer to <u>Pender Correctional Institution</u>, case manager (and named defendant) Ruiz and Sergeant (and named defendant) Hernandez performed an intake strip search of the plaintiff, during which Hernandez misgendered Frazier, stated "You cannot be [a] female, you're in an all god damn male prison," and tore up all of Fraizer's personal property, including her legal paperwork;
- On February 15, 2023, despite prison policy requiring only one officer to conduct a urinalysis drug test, Sergeant Hernandez and Sergeant (and named defendant) Evans were present when Frazier had one; when Frazier went to sit, Hernandez yelled, "You have to stand – you cannot sit to piss in the cup – you are not a real woman," causing Frazier emotional distress;
- On March 15, 2023, Sergeant Hernandez, Sergeant (and named defendant) Wargo ordered Officer (and named defendant) Martin to strip

---

[5] Frazier does not identify whether these individuals were corrections officers or

fellow inmates, only identifying them by race.

4

search Frazier and stayed to watch, despite Frazier consenting to Martin searching her solo; after the other defendants remained and Frazier indicated she would report the conduct, Hernandez stated, "Go ahead, no one will believe a queer convict – strip now!"; and

- After Frazier reported the prior incident to Captain Hankings, she was transferred six days later to a "Level 3 gang camp."

*See id*. at 53–57.

C. Frazier renews requests for accommodation at Scotland Correctional Institution.

On March 21, 2023, NCDAC transferred Frazier to the Scotland County facility. *See id*. at 57. There, Frazier requested private showering privileges and was advised that there were no private showers. On several occasions, while Frazier was showering, a "'mental health offender' would come to the toilet nearest a window [by the shower], stand there at the said window, stare through it at the shower and masturbate." *See id*. at 58.

On April 20, 2023, the Facility Transgender Accommodation Review Committee renewed Frazier's approved accommodations, including private showers. *See id*. Frazier alleges that the OPUS computer programming on the offender's HR-51

screen would have notified the staff of these accommodations. *See id*.

Concurrently, Frazier alleges, fellow inmates were extorting her for protection during shower and toilet use; "if not paid, they would stab Frazier to death." *See id*. at 59. On May 9, 2023, Frazier asked Officer (and named defendant) Goodman to either allow her to shower privately or provide protection when she did so publicly. *See id*. Officer (and named defendant) Hunt overheard the request and asked, "Do you have a vagina? Do you have a vagina?" *See id*. (emphasis in original).

Frazier reported this incident; in response, Officer Hunt convinced Sergeant (and named defendant) Timmons to intervene on his behalf. *See id*. Timmons approached Frazier, said, "I'll show you sexual harassment – I'll give you what you want!" and "proceeded to mace Frazier who was placidly standing inside the entrance to the dorm (caught on video)." *See id*. Officers Hunt and Goodman then escorted Frazier, in handcuffs, to the segregation unit and in so doing, slammed her into a steel sallyport doorway, knocking her unconscious. *See id*. at 60. Frazier then spent 154 days in protective custody before her transfer to Avery/Mitchell Correctional Institution on October 10, 2023. *See id*.

In summary, the factual allegations reference specific incidents involving the following defendants: Beutler, Evans, Hernandez, Hunt, Timmons,

Ruiz, Wargo, Martin, Laub, and Collins.

## II. PROCEDURAL POSTURE

On November 18, 2024, Frazier filed suit, alleging violations of her rights under the Fourth, Eighth, and Fourteenth Amendments of the United States Constitution and Article I, Section 27 of the North Carolina Constitution, the ADA, and Section 504.

Before the Court are a flurry of motions Frazier has filed (many duplicative of one another), various defendants' responses to the same, two motions to dismiss, Frazier's motion to amend her complaint, and defendant Dennis' opposition thereto. Because the disposition of the motions to dismiss largely compels the disposition of the remaining motions, the Court addresses those first.

## III. MOTIONS TO DISMISS

### A. Standard of Review

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Legal conclusions "must be supported by factual allegations" that amount to more than "unadorned, the-defendant-unlawfully-harmed-me

accusation[s]." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). A plaintiff is not required to prove its case in the complaint, *see, e.g.*, *Robertson v. Sea Pines Real Est. Cos.*, 679 F.3d 278, 291 (4th Cir. 2012); *Scott v. City of Durham*, No. 1:20-CV-558, 2021 WL 3856168, at *2 (M.D.N.C. Aug. 27, 2021), but the complaint's allegations should "allow the court to draw a reasonable inference that the defendant is liable for the misconduct alleged," *Int'l Refugee Assistance Project v. Trump*, 961 F.3d 635, 648 (4th Cir. 2020) (cleaned up).

On a motion to dismiss, courts view the allegations in the complaint as true, drawing all inferences in the plaintiff's favor. *See Twombly*, 550 U.S. at 555–56 (2007); *Langford v. Joyner*, 62 F.4th 122, 124 (4th Cir. 2023). The purpose of Rule 12(b)(6) is "to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). But courts are not required to "accept as true 'legal conclusions drawn from the facts' or any other 'unwarranted inferences, unreasonable conclusions, or arguments.'" *Just Puppies, Inc. v. Brown*, 123 F.4th 652, 660 (4th Cir. 2024) (quoting *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008)). A *pro se* plaintiff's complaint must be construed liberally in his favor. *See Jehovah v. Clarke*, 798 F.3d 169, 176 (4th Cir. 2015).

6

### B. Discussion: Dennis' Motion to Dismiss

Frazier alleges that Dennis violated her rights under the Eighth and Fourteenth Amendments to the United States Constitution, as well as her rights under Article I, Section 27 of the North Carolina Constitution.[6] Her claims under all three fail.

### 1. Frazier's Eighth Amendment claim against Dennis fails.

Title 42, United States Code, Section 1983 "is a federal statutory remedy available to those deprived of rights secured to them by the Constitution and, in a more sharply limited way, the statutory laws of the United States" by persons acting under color of state law. *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). A Section 1983 claimant must show that a person acting under color of state law violated a Constitutional or other federal legal right. *West v. Atkins*, 487 U.S. 42, 48 (1988).

The Eighth Amendment of the United States Constitution prohibits punishment that involves "the unnecessary and wanton infliction of pain." *Gregg v. Georgia*, 428 U.S. 153,

173 (1976). "The Amendment also provides protection with respect to 'the treatment a prisoner receives in prison and the conditions under which he is confined.'" *Shakka v. Smith*, 71 F.3d 162, 165–66 (4th Cir. 1995) (quoting *Helling v. McKinney*, 509 U.S. 25, 31 (1993)). "In order to establish the imposition of cruel and unusual punishment, a prisoner must [allege] two elements—that the deprivation of [a] basic human need was objectively sufficiently serious, and that subjectively the officials act[ed] with a sufficiently culpable state of mind." *See id.* at 166 (internal quotation and citations omitted) (alterations in original).

Specifically, "a plaintiff must allege a serious or significant physical or emotional injury resulting from the challenged conditions, or a substantial risk of such serious harm resulting from the prisoner's unwilling exposure to the challenged conditions." *Hammock v. Watts*, 146 F.4th 349, 360 (4th Cir. 2025) (internal quotation and citation omitted).

The Fourth Circuit Court of Appeals has long held that an inmate is due "reasonable medical treatment." *See Bowring v. Godwin*, 551 F.2d 44, 47 (4th Cir. 1977). "Claims that prison

---

[6] It is unclear whether Frazier intended to sue Dennis in both her official and individual capacities, or only the former. The Complaint, in paragraph 30 (page 35) references that Dennis "in this capacity, determines and does document's [sic] the existence of any medical infirmities prevalent to all in

DAC-DOP custody." It goes on, at the end of the paragraph, to reference suing Dennis "under § 1983 in her official capacity[.]" *See id.* Dennis, in her motion to dismiss, argues that claims against her in both capacities fail. In an abundance of caution, the Court analyzes both.

Case 1:24-cv-00956-DAB-JGM    Document 79    Filed 08/10/26    Page 7 of 36

officials failed to provide adequate medical care to an inmate . . . sound in the Eighth Amendment." *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008). A plaintiff must show that the officer "acted with 'deliberate indifference' (subjective) to the inmate's 'serious medical needs' (objective)." *Id.* (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).

A serious medical need is "'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Id.* (quoting *Henderson v. Sheahan*, 196 F.3d 839, 846 (7th Cir. 1999)).

It is well-settled that "not every claim by a prisoner [alleging] that he has not received adequate medical treatment states a violation of the Eighth Amendment. Rather, the treatment must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness. Mere negligence, malpractice, or incorrect diagnosis is not actionable." *Boone v. Carvajal*, No. CV 6:21-3053-JD-KFM, 2024 WL 3052064, at *11 (D.S.C. Feb. 5, 2024), *report and recommendation adopted*, No. 6:21-CV-3053-JD-KFM, 2024 WL 3052046 (D.S.C. May 3, 2024), *aff'd*, No. 24-6588, 2025 WL 1098543 (4th Cir. Apr. 14, 2025) (internal quotations and citations omitted).

Therefore, an officer must act with a sufficiently culpable state of mind, that is with deliberate indifference;

he must have "*actual knowledge of the risk of harm* to the inmate" and also "'recognize[s] that *his actions were insufficient*' to mitigate the risk of harm to the inmate arising from his medical needs." *Iko*, 535 F.3d at 241 (quoting *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004)); *see also De'lonta v. Johnson*, 708 F.3d 520, 525 (4th Cir. 2013) (Acting with deliberate indifference is "something more than mere negligence but does not require actual purposive intent. It requires that a prison official actually know of and disregard an objectively serious condition, medical need, or risk of harm.") (internal quotation and citation omitted) (*De'lonta II*).

Prison officials may act with deliberate indifference by "intentionally denying or delaying access to medical care . . . ." *Estelle*, 429 U.S. at 105. But "[m]ere delay is not enough." *Moskos v. Hardee*, 24 F.4th 289, 298 (4th Cir. 2022). "A commonplace medical delay such as that experienced in everyday life will only rarely suffice to constitute an Eighth Amendment violation, absent unusual circumstances where the delay itself places the prisoner at 'substantial risk of serious harm,' such as where the prisoner's condition deteriorates markedly or the ailment is of an urgent nature." *Id.*

An inmate's disagreement with medical staff about his treatment is insufficient absent exceptional circumstances. *See Hixson v. Moran*, 1 F.4th 297, 302–03 (4th Cir. 2021) (citing *Wright v. Collins*, 766 F.2d

8

841, 849 (4th Cir. 1985) (citing *Gittlemacker v. Prasse*, 428 F.2d 1, 6 (3d Cir. 1970) (noting that exceptional circumstances are those in which medical care is "so grossly incompetent, inadequate or excessive as to shock the general conscience or to be intolerable to fundamental fairness"))); *see also Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014) ("[W]e consistently have found such disagreements [between an inmate and physician about proper medical care] to fall short of showing deliberate indifference.").

The Fourth Circuit has addressed the intersection of gender identity disorder care in the penal system and the Eighth Amendment twice now, in *De'lonta v. Angelone*, 330 F.3d 630 (4th Cir. 2003) (*De'lonta I*) and *De'lonta II*.

In *De'lonta I*, the plaintiff suffered from gender identity disorder and began experiencing nausea, itching, depression, and an uncontrollable urge to mutilate her genitals. *See* 330 F.3d at 632. The Court found that "need for protection against continued self-mutilation constitutes a serious medical need to which prison officials may not be deliberately indifferent ... [and] the allegations of denial of care based on a uniform policy, rather than on a medical judgment concerning [the prisoner's] specific circumstances, sufficiently made out *Farmer*'s subjective prong." *Id*. at 635 (internal quotation and citation omitted).

In *De'lonta II*, while prison officials had provided hormone therapy, the plaintiff required sex reassignment surgery; thus, the "need for protection against continued self-mutilation" met the objective prong, *see* 708 F.3d at 525, and "*Farmer*'s subjective prong [was] satisfied because the relevant standards of care indicated 'that sex reassignment surgery may be necessary for individuals who continue to present with severe GID after one year of hormone therapy and dressing as a woman.'" *Morris v. Fletcher*, 311 F. Supp. 3d 824, 829 (W.D. Va. 2018) (quoting and citing *De'lonta II*, 708 F.3d at 525).

Both opinions focused on the plaintiff's "need for protection against self-harm and self-mutilation." *Id*. at 830–31 (citing *De'lonta I*, 330 F.3d at 634 and *De'lonta II*, 708 F.3d at 525). Notwithstanding that Frazier alleges no similar allegations here, and without getting to the question of whether the symptoms she pleads meet the *Farmer* objective prong, Frazier has not alleged that *Dennis* is in any way involved in the denial of care giving rise to her claims.

Specifically, Frazier identifies Dennis in the complaint as a family nurse practitioner at Scotland Correctional Institution. *See* Compl. at 35. She alleges that "in this capacity, [Dennis] determines and does document's [sic] the existence of any medical infirmities prevalent to all in DAC-DOP custody. She is the primary source of treatment for any infirmity." *Id*.

9

Frazier's complaint otherwise never references Dennis. The factual allegations related to the Scotland facility where she worked reference treatment only insofar that NCDAC *approved* Frazier's treatment plan; to the extent the officers in that facility did not abide by it suggests nothing of Dennis' involvement in the same. Likewise, the complaint is devoid of any allegations that Dennis played any part in denying Frazier necessary medical care aside from the conclusory one identified above.

The bald allegation that a family nurse practitioner working at the Scotland Correctional Institution had the blanket authority over treatment for *all* inmates in DAC-DOP custody invites this Court to do what *Iqbal* prohibits: infer the "mere possibility of misconduct." 556 U.S. at 679. And, to do so, rely upon unwarranted inferences as well as unreasonable

conclusions. *See Philips*, 572 F.3d at 180.

Frazier's allegations against Dennis also constitute the "unadorned, the-defendant-unlawfully-harmed-me accusation" referenced in *Iqbal*, 556 U.S. at 678. In other words, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*[7] This is precisely what Frazier has advanced against Dennis.

> 2. Frazier's additional claims advanced in the response to Dennis' motion, even if considered, fail to state a claim.

Frazier's response to Dennis' motion, Docket Entry 37,[8] as well as her motion to amend the Complaint,

---

[7] Although the Supreme Court has reiterated that "[a] document filed *pro se* is to be liberally construed and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal citations and quotation marks omitted), the United States Court of Appeals for the Fourth Circuit has "not read *Erickson* to undermine *Twombly*'s requirement that a pleading contain more than labels and conclusions," *Giarratano v. Johnson*, 521 F.3d 298, 304 n.5 (4th Cir. 2008) (internal quotation marks omitted) (applying *Twombly* standard in dismissing *pro se* complaint); *accord*

*Atherton v. District of Columbia Off. of Mayor*, 567 F.3d 672, 681–82 (D.C. Cir. 2009) ("A *pro se* complaint . . . 'must be held to less stringent standards than formal pleadings drafted by lawyers.' But even a *pro se* complainant must plead 'factual matter' that permits the court to infer 'more than the mere possibility of misconduct.'" (quoting *Erickson*, 551 U.S. at 94, and *Iqbal*, 556 U.S. at 697, respectively)).

[8] Frazier alleges new facts regarding Dennis in paragraphs 4–5, 8, and 10–12 of her response in opposition to the motion, including referencing Dennis as a doctor, versus a registered family nurse practitioner. *See* Docket Entry 37.

10

Docket Entry 47, both of which seek to allege a host of new facts in support of her claims, do not change the prior calculus. First and foremost, regarding the response in opposition, it is beyond cavil that in evaluating a motion to dismiss under Rule 12(b)(6), the court may review

> the complaint in its entirety, as well as documents attached or incorporated into the complaint. However, the district court cannot go beyond these documents on a Rule 12(b)(6) motion; if it does, it converts the motion into one for summary judgment. Such conversion is not appropriate where the parties have not had an opportunity for reasonable discovery.

*E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448–49 (4th Cir. 2011). While persuasive authority indicates that the Court can consider additional facts alleged in a *pro se* litigant's response brief, *see Rush v. Am. Home Mortg., Inc.*, No. WMN–07–CV–0854, 2009 WL 4728971, slip op. at 3 (D. Md. Dec. 3, 2009), these allegations all predate the filing of the original Complaint, and, thus, Frazier knew them at the time she brought this action. Alleging them now to avoid dismissal of her claims against Dennis is precisely the type of gamesmanship that Rule 12 and caselaw related thereto prohibit, for both *pro se* and represented litigants alike.

Even considering these new allegations, though, Frazier's claims against Dennis would still fail. Specifically, in her response to Dennis' motion:

Paragraph 4: Frazier alleges that Dennis sought to prescribe Nair to her to alleviate symptoms of her gender dysphoria but was thwarted by DTARC. In sum, Dennis sought to provide adequate medical care but could not do so. This fails to state an Eighth Amendment claim.

Paragraph 5: Frazier alleges that Dennis prescribed her Finasteride, a medication commonly used to stop the growth of body hair, as a means to address Frazier's distress of her gender dysphoria. Again: Dennis sought to provide adequate medical care. This fails to state an Eighth Amendment claim.

Paragraph 8: Frazier alleges that Dennis sent her to a local hospital to receive care for the side effects of the prescribed medication, which caused pain and suffering. Yet again, Frazier alleges that Dennis was attempting to provide medical care. This fails to state an Eighth Amendment claim.

Paragraphs 10 through 12: Frazier alleges that Dennis is not a gender dysphoria expert, that she "knowingly" works under a policy preventing adequate care for transgender inmates, and that she declined to assist Frazier in correcting her gender on her birth certificate. Under well-settled Eighth Amendment jurisprudence, including

11

*De'lonta I* and *De'lonta II*, which specifically address Eighth Amendment allegations related to care provided to or withheld from transgender state prison inmates, Frazier advances no viable claims against Dennis even if the Court could consider these allegations, which it cannot.

   3. Frazier's motion to amend the complaint as against Dennis should be denied as futile.

The same holds true for the new allegations advanced in Frazier's proposed first amended complaint, *see* Docket Entry 47, which is why the Court should deny the motion to amend based on futility.

Federal Rule of Civil Procedure 15(a)(2) instructs courts to "freely give" parties leave to file amended pleadings. And while the Fourth Circuit has directed district courts to "liberally" permit amendment, if the amendment is futile, that is, "clearly insufficient or frivolous on its face," *see Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 510 (4th Cir. 1986), "district courts are free to deny leave to amend as futile if the complaint fails to withstand Rule 12(b)(6) scrutiny," *In re Triangle Cap. Corp. Sec. Litig.*, 988 F.3d 743, 750 (4th Cir. 2021). The Fourth Circuit reviews denial on such grounds *de novo*. *Id.*

Here, specifically as to Dennis, Frazier alleges:

Paragraph 16: Dennis (now referred to again as a registered family nurse practitioner) is limited by NCDAC policy to treat Frazier.

Paragraph 17: Dennis knew that she could not fully treat transgender patients with gender dysphoria.

Paragraph 24: Dennis ordered Nair for Frazier many times.

Paragraph 25: Dennis prescribed Finasteride to "go around the 'road blocks and gate keepers' [sic] 'routine practice' of denying even the Nair," which caused a liver reaction.

The proposed amended complaint also contains multiple conclusory statements alleging Dennis' knowledge of Eighth Amendment jurisprudence. *See, e.g.*, Docket Entry 47-1, ¶ 25 ("Dennis knew she personally was working around a 'freeze frame routine practice,' she knew about the Eighth Amendment violation from the *Zayre-Brown* case against DAC year [sic] prior, still worked under this unlawful procedural bank policy knowingly.").

The Court should deny Frazier's motion to amend the complaint as to Dennis because these proposed amendments are futile. They fail to state a claim under Rule 12(b)(6) for all of the same reasons that the original complaint and the response to Dennis' motion to dismiss do: the new allegations, construed liberally and to Frazier's benefit, do not constitute "the deprivation of [a] basic human need [that] was objectively sufficiently serious," and do not show "that subjectively the officials act[ed]

with a sufficiently culpable state of mind." *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995). Nor do they establish that Dennis was the perpetrator of any constitutional deprivation. And the factual allegations related to Dennis involve her efforts to provide care, not withhold it.

For all of these reasons, Frazier's Eighth Amendment claims, advanced in the original complaint, the response to the motion to dismiss, and the proposed amended complaint, fail. The court should dismiss the complaint against Dennis and deny Frazier's motion to amend it against Dennis.

4. Frazier's Fourteenth Amendment claims against Dennis fail.

Likewise, Frazier pleads no viable violations of her Fourteenth Amendment rights, either. Specifically, because as pled, Frazier was a prisoner of the State of North Carolina at all relevant times, her Section 1983 claims involving Dennis and medical care rest upon the Eighth Amendment, not the Fourteenth Amendment, which simply extends those same Eighth Amendment protections to *pre-trial* detainees. *See Bell v. Wolfish*, 441 U.S. 520, 545 (1979). *See also King v. Blackwood*, No. 25-1185, 2026 WL 1902547, at *4 (4th Cir. July 2, 2026) (noting that deliberate indifference claims for pretrial detainees are governed by the Fourteenth Amendment, and for convicted prisoners, by the Eighth

Amendment). Accordingly, her Fourteenth Amendment claims regarding medical care are duplicative of her Eighth Amendment claims and fail on the same grounds.

To the extent Frazier intended her Fourteenth Amendment claim against Dennis to allege equal protection or due process violations, those claims fail for the same reasons as her deliberate indifference claim against Dennis. *Compare Iqbal*, 556 U.S. at 678 (precluding "unadorned, the-defendant-unlawfully-harmed-me accusation" and "mere conclusory statements") *with Fauconier v. Clarke*, 966 F.3d 265, 277–78 (4th Cir. 2020) (providing required elements for an inmate's equal protection claim) *and Martin v. Duffy*, 858 F.3d 239, 253 (4th Cir. 2017) (providing elements for an inmate's due process claim). Frazier simply has not alleged that Dennis did anything other than document the medical infirmities at Scotland Correctional Institution where she was a nurse practitioner. Therefore, Frazier's equal protection and due process claims against Dennis, if any, fail and the proposed amended complaint does not plausibly suggest otherwise.

5. Frazier's North Carolina constitutional claim against Dennis fails.

Article I, Section 27 of the North Carolina Constitution provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel or unusual punishment inflicted."

13

Thus, while it provides a prohibition similar to the Eighth Amendment, a "textual distinction [exists] between article I, section 27, which prohibits punishment that is 'cruel or unusual,' and the Eighth Amendment, which prohibits punishment that is 'cruel and unusual' .... For th[is and other] reasons, [the North Carolina Supreme Court has] conclude[d] that article I, section 27 of the North Carolina Constitution need not be interpreted in lockstep with the Eighth Amendment to the United States Constitution." *State v. Kelliher*, 873 S.E.2d 366, 382, 385 (N.C. 2022) (emphasis in original).

While neither provision precisely defines these terms,

> [w]hat is clear from the plain meaning of both terms is that determining whether a punishment is "cruel" or "unusual" requires a contextual inquiry, the results of which may change over time as society evolves. Thus, we are persuaded that, at this time, there is no reason to depart from the basic Eighth Amendment analytical framework as articulated by the United States Supreme Court in cases like *Trop* and *Graham* and described above. We draw the meaning of article I, section 27 from the evolving standards of decency that mark the progress of a maturing society, and we consider objective indicia of society's standards when we exercise [our] own

independent judgment [to decide] whether the punishment in question violates the Constitution.

*Id.* (quoting and citing *Trop v. Dulles*, 356 U.S. 86, 100–01 (1958) and *Graham v. Florida*, 560 U.S. 48, 61 (2010)) (internal quotations omitted).

Because Article I, Section 27 follows the same framework as Eighth Amendment jurisprudence, Frazier's North Carolina constitutional claim also fails.

6. Dennis is entitled to qualified immunity.

"Qualified immunity protects reasonable officers who try to comply with the law. Indeed, the doctrine shields all but the plainly incompetent or those who knowingly violate the law." *King*, 2026 WL 1902547, at \*4. In determining whether the violation is knowing, courts "conduct the inquiry based on the clearly established law at the time of the violation—an officer cannot be expected to know how the law might develop." *Id.* (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818–19 (1982)); *see also City of Tahlequah v. Bond*, 595 U.S. 9 (2021) (per curiam) ("To determine whether an officer's conduct violates clearly established law, a court must first specifically define the right."). Here, other than Frazier's conclusory allegation that Dennis controlled all medical decisions for all inmates in the state's prison system, she alleges no

14

violations of the law, clear or otherwise.

Because Frazier has not alleged Dennis violated her constitutional rights, she is entitled to qualified immunity. *See Harrold v. Hagen*, 174 F.4th 393, 401–02 (4th Cir. 2026).

### C. Discussion: Moving Defendants' Motion to Dismiss

Named defendants Agarwal, Amos, Beutler, Browning, Campbell, Catlett, Cobb, Collins, Evans, Faulk, Goodman, Hardee, Harris, Hendricks, Hernandez, Hunt, Cooley-Dismukes, Jones, Junker, Langley, Laub, Locklear, Martin, NCDAC, Oxendine, Panter, Peiper, Ruiz, Sheitman, Timmons, Wargo, and Williams (Moving Defendants) also move to dismiss on a number of grounds.

NCDAC and the individual defendants sued in their official capacities raise an Eleventh Amendment immunity bar. They also charge that Frazier impermissibly joined multiple unrelated claims in the complaint. Finally, the defendants assert Frazier's complaint lacks the specific allegations necessary to state a claim upon which relief can be granted.

In large part, the Moving Defendants are correct. For the reasons set forth below, it is recommended that the Court dismiss Frazier's claims against the Moving Defendants except for her Eighth Amendment excessive force

claims against Hunt, Goodman, and Timmons in their individual capacities.

### 1. The Eleventh Amendment bars the § 1983 suit against NCDAC and all state employees sued in their official capacities.

The Moving Defendants seek dismissal of all official capacity claims against the individual defendants, save those advanced under the ADA. Indeed, NCDAC is immune to all § 1983 claims. Courts have long recognized that "'[u]nder the doctrine of sovereign immunity, the State is immune from suit absent waiver of immunity.'" *Cannon v. Peck*, 36 F.4th 547, 574 (4th Cir. 2022) (quoting *Wray v. City of Greensboro*, 802 S.E.2d 894, 898 (N.C. 2017)). In other words, "the State cannot be sued without its consent[.]" *Smith v. State*, 222 S.E.2d 412, 417 (N.C. 1976).

The United States Supreme Court "has permitted a federal court to entertain a suit against a nonconsenting State on two conditions." *Allen v. Cooper*, 589 U.S. 248, 255 (2020). "First, Congress must have enacted 'unequivocal statutory language' abrogating the States' immunity from the suit." *Id.* (quoting *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 56 (1996)). "And second, some constitutional provision must allow Congress to have thus encroached on the States' sovereignty." *Id.*; *see also Biggs v. N.C. Dep't of Pub. Safety*, 953 F.3d

236, 241 (4th Cir. 2020) ("[S]tate sovereign immunity bars all claims by private citizens against state governments and their agencies, except where Congress has validly abrogated that immunity or the state has waived it.") (citation omitted).

"Congress has not abrogated sovereign immunity for § 1983 suits[.]" *Id.* (citing *Quern v. Jordan*, 440 U.S. 332, 345 (1979), *overruled on other grounds, Hafer v. Melo*, 501 U.S. 21, 27 (1991)). And "North Carolina has not consented to being sued under § 1983 and therefore has not waived sovereign immunity in that context." *Singh v. Univ. of N.C. at Chapel Hill*, 659 F. Supp. 3d 659, 669 (M.D.N.C. 2023). NCDAC "is a North Carolina agency." *Biggs*, 953 F.3d at 241. Therefore, the court should dismiss the § 1983 claims against NCDAC.

The Eleventh Amendment is also applicable to state officers sued in their official capacity. *See Ford Motor Co. v. Dep't of Treasury*, 323 U.S. 459 (1945). "[A] suit against a state official in his or her official capacity is not a suit against the official but rather a suit against the official's office. As such, it is no different from a suit against the State itself." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). "State officials acting in their official capacity are therefore not 'persons' for the purposes of § 1983 and are not proper defendants to a § 1983 lawsuit." *Diggs v. Balogun*,

2017 WL 4921690, at \*4 (D. Md. Oct. 31, 2017) (citing *Will*, 491 U.S. at 71).

Therefore, the court should dismiss the official capacity claims against the state employee defendants. *See Love-Lane v. Martin*, 355 F.3d 766, 783 (4th Cir. 2004) (affirming the district court's dismissal of the § 1983 claim against the individual defendant in his official capacity as duplicative of the claim against the Board of Education) (citing *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985)); *see also Armstrong v. City of Greensboro*, 190 F. Supp. 3d 450, 463 (M.D.N.C. 2016) (dismissing the official capacity § 1983 claim against the individual defendant).

This then would leave an ADA/Section 504 claim against NCDAC and the defendants sued in their official capacities, and claims against Agarwal, Amos, Beutler, Browning, Campbell, Catlett, Cobb, Collins, Dennis, Evans, Faulk, Hardee, Harris, Hendricks, Hernandez, Hunt, Jones, Junker, Langley, Locklear, Martin, Oxendine, Panter, Peiper, Ruiz, Sheitman, Timmons, Wargo, and Williams in their individual capacities. However, of all of these claims, as set forth in detail below, only the Eighth Amendment excessive force claims against Hunt, Goodman, and Timmons would survive.

2. Frazier states an excessive force claim against Goodman, Hunt, and Timmons but otherwise fails to state a claim upon which relief can be granted as to multiple defendants.

In addition to alleging a cause of action, a

> complaint must make defendant-specific allegations. The allegations must be particular enough to allow one to infer what each defendant did and knew. Lumping defendants together won't do. A plaintiff who makes only collective allegations . . . without specifying how each individual defendant interacted with her or bore responsibility for the alleged constitutional deprivation . . . has not stated a plausible claim against any defendant. We require instead specific factual allegations for each defendant, because only such allegations provide fair notice to that defendant of the plaintiff's claim and underlying factual support.

*Rice v. Adams*, 172 F.4th 428, 432 (4th Cir. 2026) (citations and quotation marks omitted).

While many of Frazier's allegations generalize alleged unlawful conduct and therefore do not place the alleged actor on notice,[9] Frazier has made defendant-specific allegations about the following named defendants:

Evans: Frazier alleges he was present during a urinalysis test at the Pender County facility when Hernandez yelled, "You have to stand – you cannot sit to piss in the cup – you are not a real woman," causing Frazier emotional distress. *See* Compl. at 56.

Hernandez: Frazier alleges Hernandez's participation in the conduct described above.

Frazier further alleges that Hernandez performed an intake strip search of Frazier, during which Hernandez misgendered her, stated "You cannot be [a] female, you're in an all god damn male prison," and

---

[9] Of note, Frazier alleges three different assaults in 2022, *see* Compl. at 53–57, that sound in an Eighth Amendment deliberate indifference to substantial risk of serious harm violation, *see generally Farmer*, 511 U.S. 825, but the Complaint lacks important details. First, while Frazier specifies that the March 17, 2022 assault occurred at Neuse Correctional Institution, she does not specify where the March 25 and April 11 assaults took place. As to the March 25 assault, Frazier does not indicate whether fellow inmates or officers assaulted her. Finally, it is unclear from the allegations which defendants specifically bear liability for them. And, if all three assaults did take place at the Neuse facility, this Court lacks venue to hear claims arising from them. Should the Court grant leave for Frazier to amend her complaint, *see infra* Section III.C.3, she should address these pleading deficiencies accordingly.

tore up all of Frazier's personal property, including her legal paperwork. *See id.* at 55.

Finally, Frazier alleges that Hernandez and Sergeant Wargo ordered Officer Martin to strip search Frazier and stayed to watch, despite Frazier consenting to Martin searching her solo; after the other defendants remained and Frazier indicated she would report the conduct, Hernandez stated, "Go ahead, no one will believe a queer convict – strip now!" *See id.* at 57.

Wargo: Frazier alleges Wargo's participation in the above-described conduct.

Martin: Frazier alleges Martin's participation in the above-described conduct.

Hunt: Frazier alleges that when she asked Officer Goodman to either allow her to shower privately or provide protection when she did so publicly, Hunt overheard the request and asked, "Do you have a vagina? Do you have a vagina?" *See id.* at 59.

Frazier further alleges that when she reported this incident, Hunt convinced Timmons to intervene on his behalf. Timmons approached Frazier, said, "I'll show you sexual harassment – I'll give you what you want!" and "proceeded to mace Frazier who was placidly standing inside the entrance to the dorm (caught on video)." *See id.*

Hunt and Goodman then escorted Frazier, in handcuffs, to the

segregation unit and in so doing, slammed her into a steel sallyport doorway, knocking her unconscious. *See id.* at 60. Frazier then spent 154 days in protective custody before her transfer to Avery/Mitchell Correctional Institution on October 10, 2023.

Prior to the transfer, all events involving Hunt took place at the Scotland facility.

Timmons: Frazier alleges Timmons' participation in the above-described conduct.

Ruiz: Frazier alleges that Hernandez and Ruiz performed an intake strip search of the plaintiff in the Pender County facility, during which Hernandez misgendered Frazier and destroyed her private property. There is no allegation that Ruiz was involved in the destruction of property. *See id.* at 55.

The majority of these allegations (save the alleged assaults Goodman, Hunt, and Timmons perpetrated) fall, at worst, under the category of sexual harassment claims, which are "properly analyzed under the Eighth Amendment, with 42 U.S.C. § 1983 supplying the cause of action." *Owen v. Schmidit*, No. 7:22-CV-675, 2024 WL 4173805, at *2 (W.D. Va. Sept. 12, 2024). To that end, it is well-settled that "[a]lthough prisoners have a right to be free from sexual abuse, whether at the hands of fellow inmates or prison guards, the Eighth Amendment's protections do not necessarily extend to mere verbal

sexual harassment." *Jackson v. Holley*, 666 F. App'x 242, 244 (4th Cir. 2016) (unpublished) (citing *Austin v. Terhune*, 367 F.3d 1167, 1171 (9th Cir. 2004)).

"[W]here an incident of alleged sexual abuse does not involve physical contact, the alleged misconduct must be severe to implicate constitutional protections." *Bishop v. Lambert*, No. 7:22cv61, 2023 WL 1466621, at *2–3 (W.D. Va. Feb. 2, 2023) (finding the defendant's actions of watching plaintiff urinate on one occasion and using profanity about it do not amount to an Eighth Amendment claim); *Kokinda v. Penn. Dep't of Corr.*, No. 2:16-CV-1580-MRH-CRE, 2017 WL 3912350, at *1, *2 (W.D. Pa. Sept. 5, 2017) (finding that the defendant's displaying a "latent sexual interest" for plaintiff and staring at plaintiff's groin area many times "for an uncomfortable duration" while plaintiff was in his boxers in his cell does not state the requisite level of severity to make out an Eighth Amendment claim), *aff'd*, 779 F. App'x 944, 950 (3d Cir. 2019) (unpublished). The alleged sexual harassment here lacks the severity required for a constitutional violation.

To the extent that Frazier alleges constitutional violations based on strip searches during intake, "the United States Supreme Court has clearly upheld as constitutional random, visual strip searches of inmates, whether convicted felons or pretrial detainees, after they return from opportunities to obtain contraband." *Ellis v. Elder*, No.

7:08cv642, 2009 WL 275316, at *3 (W.D. Va. Feb. 4, 2009) (citing *Bell v. Wolfish*, 441 U.S. 520 (1979)). Here, Frazier has alleged that the strip searches at issue occurred during routine intake at a new facility. Therefore, they cannot serve as constitutional violations.

As to the excessive force claim against Goodman, Hunt, and Timmons, an inmate's right to be free from the use of excessive force derives from the Eighth Amendment. *Whitley v. Albers*, 475 U.S. 312, 327 (1986); *see also Graham v. Connor*, 490 U.S. 386, 395 n.10 (1989) ("The Eighth Amendment . . . serves as the primary source of substantive protection to convicted prisoners in cases . . . where the deliberate use of force [by prison officials] is challenged as excessive and unjustified.").

A claim for the use of excessive force "involves both an objective and a subjective component." *Dean v. Jones*, 984 F.3d 295, 302 (4th Cir. 2021). "The objective component measures the nature of the force employed, asking whether that force 'was sufficiently serious to establish a cause of action.'" *Id.* (quoting *Brooks v. Johnson*, 924 F.3d 104, 112 (4th Cir. 2019)). "This is not a high bar; de minimis or trivial force is not enough, but anything more will suffice." *Id.* (citing *Brooks*, 924 F.3d at 112).

"The more demanding . . . subjective component . . . asks a single question: whether the officers acted with a 'sufficiently culpable state of mind,'" *id.* (quoting *Williams v. Benjamin*, 77

F.3d 756, 761 (4th Cir. 1996)), that is, "wantonness in the infliction of pain," *id.* The plaintiff must establish that the officer applied force "maliciously and sadistically for the very purpose of causing harm" rather than "in a good-faith effort to maintain or restore discipline." *Dean*, 984 F.3d at 302.

For example, an officer acts in good faith when confronting "immediate risks to physical safety" and "compelling compliance with prison rules and procedures" to "preserve internal order." *Brooks*, 924 F.3d at 113 (citing *Hudson v. McMillian*, 503 U.S. 1, 6–7 (1992)).

The United States Supreme Court recognized long ago that "corrections officials must make their decisions 'in haste, under pressure, and frequently without the luxury of a second chance.'" *Hudson*, 503 U.S. at 6 (quoting *Whitley*, 475 U.S. at 320). They "must balance the need 'to maintain or restore discipline' through force against the risk of injury to inmates." *Id.* Accordingly, "'[p]rison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.'" *Id.* (quoting *Whitley*, 475 U.S. at 321–22).

But an officer crosses the line and acts maliciously and sadistically, for example, "when [he] inflict[s] pain . . .

to punish an inmate for intransigence or to retaliate for insubordination," *Brooks*, 924 F.3d at 113–14, n.4 (citing cases finding a reasonable jury could infer the officer used excessive force in response to the inmate's use of profanity and threats of violence and other similar statements directed at officers), or "to punish or retaliate against an inmate for his prior conduct," *Dean*, 984 F.3d at 302, and possibly when the officer "use[s] force on an inmate who is restrained and compliant and posing no physical threat," *id.* (noting this conduct "raises the specter of such an impermissible motive").

"[T]he extent of injury suffered by an inmate is one factor that may suggest 'whether the use of force could plausibly have been thought necessary' in a particular situation." *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (quoting *Hudson*, 503 U.S. at 7). But "the 'core judicial inquiry' … [i]s not whether a certain quantum of injury was sustained, but rather 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Id.* (quoting *Hudson*, 503 U.S. at 7 and citing *Whitley*, 475 U.S. at 319–21).

To determine the nature of the force, courts assess "[1] the need for application of force, [2] the relationship between that need and the amount of force used, [3] the threat 'reasonably perceived by the responsible officials,' and [4] 'any efforts made to temper the severity of a forceful response.'" *Hudson*, 503

20

U.S. at 7 (quoting *Whitley*, 475 U.S. at 321).

Here, there were two instances of force: the use of mace, and the slamming of Frazier into the sallyport. Both, as pled, satisfy the objective and subjective prongs of the Eighth Amendment excessive force analysis and can move forward.

First and foremost, it is well-settled that any allegation that a prison official deployed pepper spray on a docile prisoner can state a sufficient excessive force claim. *See Iko*, 535 F.3d at 239–40; *Boone v. Stallings*, 583 F. App'x 174, 176 (4th Cir. 2014) (unpublished) ("Our precedent establishes that the use of pepper spray on a docile prisoner could qualify as excessive force[.]"); *see also Williams v. Benjamin*, 77 F.3d 756, 763 (4th Cir. 1996) ("[I]t is a violation of the Eighth Amendment for prison officials to use mace, tear gas, or other chemical agents in quantities greater than necessary or for the sole purpose of infliction of pain[.]").

Regarding the sallyport incident, again, rendering a handcuffed prisoner unconscious states a viable Eighth Amendment claim. As alleged, there was no good faith effort to restore discipline here. On the contrary, the facts allege a sadistic desire to cause harm. And while not "every malevolent touch by a prison guard gives rise to a federal cause of action[,]" *see Hudson*, 503 U.S. at 9, slamming a handcuffed inmate into a steel sallyport with enough force to render her unconscious certainly

qualifies at the pleading stage. *See, e.g.*, *Sacra v. Haga*, No. 7:22CV00244, 2023 WL 6217759, at *1 (W.D. Va. Sept. 25, 2023) (officers dropping handcuffed inmate to the ground, rendering him unconscious, could constitute excessive force); *Hall v. Setser*, No. 1:22-CV-00059-MR, 2022 WL 994656, at *1 (W.D.N.C. Apr. 1, 2022) (inmate alleging correctional officers beat him unconscious while he was handcuffed stated a viable Eighth Amendment claim). Accordingly, Frazier has alleged a viable Section 1983 excessive force claim against Hunt, Goodman, and Timmons in their individual capacities.

And they are not entitled to qualified immunity, as it was well-settled at the time of the alleged assault that such conduct would run afoul of the Eighth Amendment's prohibition on cruel and unusual punishment. Specifically,

> the Eighth Amendment protection against the malicious and sadistic infliction of pain and suffering applies in a diverse range of factual scenarios. That unifying thread provides fair notice to prison officials that they cannot, no matter their creativity, maliciously harm a prisoner on a whim or for reasons unrelated to the government's interest in maintaining order. That principle applies with particular clarity to cases such as this one, where the victim is restrained, compliant, and

incapable of resisting or protecting himself, and otherwise presents no physical threat in any way.

*Thompson v. Commonw. of Va.*, 878 F.3d 89, 105 (4th Cir. 2017).

And, because (as set forth above) Article I, Section 27 of the North Carolina Constitution follows the same framework as Eighth Amendment jurisprudence, Frazier's North Carolina constitutional claims against these defendants also survive.

### 3. Frazier impermissibly joined claims and parties.

To the extent Frazier's claims would survive against the defendants not specifically addressed in Section III.C.2 *supra*, the complaint does not comply with Federal Rule of Civil Procedure 8. It is well-settled that Rule 8 requires "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and to provide "fair notice of what the … claim is and the grounds upon which it rests," *Twombly*, 550 U.S. at 555 (alteration in original; quotation omitted).

"Where a litigant does not comply with Rule 8's requirements, the court may strike any portion of the complaint that is redundant or immaterial pursuant to Rule 12(f)." *Owens v. Connecticut*, 771 F. Supp. 3d 92, 94 (D. Conn. 2025) (citing Fed. R. Civ. P. 12(f)) (reviewing the plaintiff's 188-page complaint alleging at least 62 claims against 29 defendants).

Here, Frazier has filed a 73-page complaint against 34 defendants, alleging conduct occurring over a number of years in a number of different NCDAC facilities, some of which lie out of this judicial district, purportedly impacting a number of rights under the United States and North Carolina Constitutions, as well as federal statutes. Thus, it is neither "short and plain," Fed. R. Civ. P. 8(a), nor is it "simple, concise, and direct." Fed. R. Civ. P. 8(d)(1). *See, e.g.*, *Salahuddin v. Cuomo*, 861 F.2d 40, 43 (2d Cir. 1988) (affirming the district court's dismissal of a complaint that "spans 15 single-spaced pages and contains explicit descriptions of 20-odd defendants, their official positions, and their roles in the alleged denials of Salahuddin's rights; it contains a surfeit of detail," noting it did not comply with Rule 8).

Nor does this complaint comply with the joinder requirements in Federal Rule of Civil Procedure 20, a rule which applies equally to *pro se* plaintiffs. *See Owens*, 771 F. Supp. 3d at 94. A plaintiff may join parties as defendants if the claims against them arise from "the same transaction, occurrence, or series of transactions or occurrences" and involve common questions of law or fact. *See* Fed. R. Civ. P. 20(a)(2)(A)–(B). As noted throughout this recommendation, the defendants' alleged actions or inactions took place at various institutions over the course of years, foreclosing Frazier's attempt to

consolidate all of the alleged harms into one complaint.

In *Salahuddin*, the Second Circuit remanded the matter to the district court to give leave for the plaintiff to amend his complaint in compliance with Rule 8, noting the "jurisprudential preference for adjudication of cases on their merits rather than on the basis of formalities[.]" 861 F.2d at 42. There, though, the *pro se* plaintiff had pled "at least some claims that [could] not be termed frivolous on their face" and, notably, had provided details that properly noticed the defendants. *See id.* at 43.

Here, dismissal with leave to amend is *not* appropriate for Dennis, Evans, Hernandez, Martin, Ruiz, Laub, or Wargo in their individual capacities, as the complaint alleges specific actions by these individuals that fail to state a claim under Rule 12(b)(6) for the reasons set forth *supra*. Thus, such amendment would be futile. *See U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 376 (4th Cir. 2008) ("Although such motions [to amend] should be granted liberally, a district court may deny leave if amending the complaint would be futile—that is, 'if the proposed amended complaint fails to satisfy the requirements of the federal rules.'") (quoting *United States ex rel. Fowler v. Caremark RX, LLC*, 496 F.3d 730, 740 (7th Cir. 2007) (citation omitted)).

Because Federal Rule of Civil Procedure 15(a)(2) counsels that "a court should freely give leave [to amend] when justice so requires," it is recommended that the Court give Frazier leave to amend her complaint against the following defendants, about which no specific conduct was alleged in the complaint: Agarwal, Amos, Beutler, Browning, Campbell, Catlett, Cobb, Collins, Faulk, Hardee, Harris, Hendricks, Jones, Junker, Langley, Locklear, Oxendine, Panter, Peiper, Sheitman, and Williams in their individual capacities.

The Court should warn Frazier of the following should it grant leave to amend: "[t]o comply with Rule 8, Plaintiff's amended complaint should explain in short and plain statements the following: (1) who allegedly violated his federally protected rights; (2) how that person or entity allegedly violated his federally protected rights; (3) when and where that person or entity allegedly violated his federally protected rights; and (4) why he allegedly is entitled to relief (and if so, what relief he is seeking)." *Owens*, 771 F. Supp. 3d at 92.

Further, "[t]o comply with Rule 20, Plaintiff's amended complaint should only contain claims that aris[e] out of the same transaction, occurrence, or series of transactions and occurrences. *Id.* (internal citation omitted) (alteration in original).

Therefore, it is recommended that the Court dismiss the claims against Dennis, Evans, Hernandez, Martin, Ruiz, Laub, and Wargo in their

23

individual capacities *with* prejudice and dismiss the claims against Agarwal, Amos, Beutler, Browning, Campbell, Catlett, Cobb, Collins, Faulk, Hardee, Harris, Hendricks, Jones, Junker, Langley, Locklear, Oxendine, Panter, Peiper, Sheitman, and Williams in their individual capacities *without* prejudice with leave to amend.

> 4. Any ADA and Section 504 claims sound in deliberate indifference to a serious medical need, not disability discrimination.

"Title II of the ADA prohibits state prisons from discriminating against disabled inmates on account of their disability." *Jackson v. Dameron*, 171 F.4th 641, 651 (4th Cir. 2026); *see also Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 498, n.17 (4th Cir. 2005) (recognizing that, although the causation standards are quite different, courts have "generally . . . construed" "[t]he ADA and Rehabilitation Act . . . to impose the same requirements"). "It is also true that disability discrimination in prisons includes failing to provide reasonable accommodations to inmates with

disabilities." *Jackson*, 171 F.4th at 651.

Frazier refers to the ADA and Section 504 of the Rehabilitation Act a handful of times in her complaint. *See* Compl. at 21 (listing the ADA and Section 504) & 22 (alleging the NCDAC is a public entity under the ADA and receives federal funding as that relates to Section 504 coverage). She does, though, regularly employ the word "accommodation" in her allegations. *See, e.g.*, *id.* at 40–41.

However, when Frazier refers to "accommodations," they are most often in the context of her medical treatment (or lack thereof).[10] For example, at the start of her "Statement of Claim(s)," she notes her May 2021 diagnosis of gender dysphoria but then describes it as a "serious medical condition" for which she has requested "constitutionally adequate treatment." *Id.*; *see also, e.g.*, *id.* at 45 (alleging gender dysphoria is a "serious medical need" for which the Eighth Amendment requires treatment), 45–46 (alleging deliberate indifference when the DTARC committee "summarily denied [the requested] accommodation" of "clinical and psychological evaluations"), & 50

---

[10] The few additional alleged "accommodations" that do not relate to the provision of medical care are "curtailment of cross-gender strip searches" and "group strip searches," "gender consistent pronouns," "ability to update the gender marker to correct gender," and "female uniform." *See*

Compl. at 41. Frazier has not sufficiently alleged how these accommodations would afford her access to the benefits of prison programs, services, or activities. *See, e.g.*, *Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998). Nothing in her proposed amended complaint changes that conclusion.

24

(alleging that "failing to accommodate this specific transgender accommodation aptly demonstrates the subjective 'deliberate indifference' by N.C.D.A.C.").

In other words, even construing the allegations liberally, "[t]he thrust of [Frazier's] complaint, its essential grievance, [is] deliberate indifference" to a serious medical need. *Jackson*, 171 F.4th at 651 (affirming the construction of the allegations as an Eighth Amendment claim rather than an ADA claim); *see also id.* at 650 ("[W]hen the thrust of a complaint points to an 'essential grievance,' courts are not required to scour pleadings for stray phrases that could, with the benefit of hindsight, be consistent with another theory, and then construe those phrases to assert separate claims.").

In *Jackson*, the inmate plaintiff alleged a serious medical condition which medical staff disregarded and, consequently, posed risks to him. *Id.* (discussing allegations of "refusal to engage . . . about the ankle sleeve" and "placement in a cell near stairs" and refusal to provide "a medical boot exemption at work"). Just as "Jackson's factual assertions are almost exclusively aimed at [the medical staff's] awareness of his medical needs and their conscious disregard towards them," *id.* at 652, so, too, are Frazier's allegations.

And Frazier's proposed amended complaint further supports the conclusion that she is alleging deliberate indifference to a serious

medical need in violation of the Eighth Amendment, not an ADA or Section 504 claim. *See* Docket Entry 47-1.

For these reasons, the Court should find that Frazier has not stated an ADA or Section 504 claim.

IV.    REMAINING MOTIONS

This leaves a number of motions that require cleaning up. In short order:

A.    Frazier's Motion for Reconsideration, Docket Entry 41

The Court denies Frazier's Motion for Reconsideration, Docket Entry 41, of the initial denial of appointment of counsel. This matter has not yet proceeded to discovery, let alone trial, and the surviving claims are not complex. Moreover, Frazier has demonstrated her ability to advocate for herself through the multitude of motions she has filed in this matter. *See Jenkins v. Woodard*, 109 F.4th 242, 247-48 (4th Cir. 2024) (requiring the court to determine if the plaintiff has a colorable claim, the complexity of the claim, and the plaintiff's abilities to present the claim herself). Should appointment of counsel be warranted after any summary judgment motions have been determined, the Court can reconsider the request then.

B.    Frazier's Motion to Produce, Docket Entry 42

25

The Court denies Frazier's Motion to Produce, Docket Entry 42. Pending the District Judge's disposition of the motions to dismiss, any discovery is premature.

    C.    Frazier's Motion for a Preliminary Injunction, Docket Entry 43

The undersigned recommends that the Court deny Frazier's Motion for a Preliminary Injunction, Docket Entry 43. This motion alleges cross-gender strip searches and assault, with an additional allegation that mail is being withheld, at Neuse Correctional Institution, Scotland Correctional Institution, and Warren Correctional Institution, where Frazier was housed when she filed the motion. It is unclear who specifically Frazier seeks to enjoin. And only the Scotland facility lies in this district.

It is well-settled that the purpose of a preliminary injunction is to "protect the status quo and to prevent irreparable harm during the pendency of a lawsuit, ultimately to preserve the court's ability to render a meaningful judgment on the merits." *In re Microsoft Corp. Antitrust Litig.*, 333 F.3d 517, 525 (4th Cir. 2003). It is "an extraordinary remedy involving the exercise of a very far-reaching power, which is to be applied only in the limited circumstances which clearly demand it." *Centro Tepeyac v. Montgomery Cnty.*, 722 F.3d 184, 188 (4th Cir. 2013) (quoting *Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952

F.2d 802, 811 (4th Cir. 1991)) (internal quotation marks omitted).

When a litigant seeks to enjoin the activities of a correctional facility, as here, "courts should grant preliminary injunctive relief involving the management of correctional institutions only under exceptional and compelling circumstances." *See Collins v. Antonelli*, No. 2:24-CV-03915-RMG-MGB, 2025 WL 3144261, at *2 (D.S.C. Oct. 21, 2025) (citing *Taylor v. Freeman*, 34 F.3d 266, 270 n.2 (4th Cir. 1994)), *report and recommendation adopted*, No. 2:24-CV-03915-RMG, 2025 WL 3142419 (D.S.C. Nov. 10, 2025).

To that end, the Prison Litigation Reform Act (PLRA) empowers the district court to enter an order for preliminary injunctive relief, but specifies that the relief

> must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system.

18 U.S.C. § 3626(a)(2). The Supreme Court identified four prongs a movant must satisfy: "(1) they are likely to succeed on the merits; (2) they will likely suffer irreparable harm absent an injunction; (3) the balance of hardships weighs in their favor; and

(4) the injunction is in the public interest." *League of Women Voters of N. Carolina v. North Carolina*, 769 F.3d 224, 236 (4th Cir. 2014) (citing *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)).

Frazier's motion fails for a number of reasons. First and foremost, it addresses a new prison facility from the one at issue in her complaint: Warren Correctional Institution (mail allegations). And "new claims unrelated to the allegations contained in the complaint cannot serve as the basis for a preliminary injunction." *Imagine Medispa, LLC v. Transformations, Inc.*, 999 F. Supp. 2d 862, 867 (S.D.W. Va. 2014); *see also Nealson v. Cole*, No. 7:24-CV-00799, 2025 WL 1370823, at *1 (W.D. Va. May 12, 2025) ("In addition to the factors set forth in *Winter*, a party seeking preliminary injunctive relief 'must necessarily establish a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint.'") (quoting and citing *Omega World Travel v. Trans World Airlines*, 111 F.3d 14, 16 (4th Cir. 1997)).

Assuming *arguendo* the basis of Frazier's motion and complaint (or even proposed amended complaint) were the same, under the case law, she cannot demonstrate likely success on the merits, as her motion rests upon "unsubstantiated allegations. 'The Court cannot issue such injunctions or restraining orders based on such unsubstantiated claims, which Plaintiff will be able to fully litigate

and have resolved in his underlying action.'" *See Collins*, 2025 WL 3144261, at *4 (quoting and citing *Page v. Padula*, No. 9:09-cv-0952-HFF-BM, 2009 WL 3332991, at *2 (D.S.C. Oct. 15, 2009), as amended).

Next, Frazier has not proffered "both actual and immediate" harm, versus that which is "remote and speculative." *See, e.g.*, *Al-Abood v. El-Shamari*, 71 F. Supp. 2d 511, 514 (E.D. Va. 1999). And, specifically as to the mail allegations, the record reflects that Frazier has continued to file motions without impediment. *See* Docket Entry 48, 58, 69, 71. *See also Nealson*, 2025 WL 1370823, at *1 (allegation of irreparable harm undercut by prisoner's continuing ability to litigate his case).

In terms of the balance of equities, the prison environment is a unique one: "The realities of running a penal institution are complex and unique to the prison environment. Federal courts have traditionally been reluctant to interfere in the problems of prison administration. Indeed, the decisions made by prison administrators in their informed discretion have been accorded wide-ranging deference by the federal courts." *Wetzel v. Edwards*, 635 F.2d 283, 288 (4th Cir. 1980) (internal quotation omitted). This factor does not weigh in Frazier's favor here. *See Taylor v. Freeman*, 34 F.3d 266, 274 & n.1 (4th Cir. 1995) (vacating grant of preliminary injunction and noting that the district court failed to adequately account for "the degree to

27

which the public interest is disserved when federal courts assume the role of state prison administrators").

And finally, on this record, which consists of Frazier's presently unsubstantiated allegations, the undersigned cannot recommend that the Court grant such drastic relief that would "require interfering with the prison administrators' decisions concerning the operation of [the facility], where Plaintiff is currently housed." *See Collins*, 2025 WL 3144261, at *4 (denying incarcerated plaintiff's motion for injunctive relief).

> D. Frazier's "Motion to Attach Exhibits to Complaint," Docket Entry 48

In this motion, Frazier asks the Court to consider 49 documents appended to the motion as part of the complaint. Frazier filed this motion on June 9, 2025, over six months after she filed the original complaint on November 18, 2024, and two months after the first defendant's motion to dismiss was filed on April 7, 2025. *See generally* Docket.

"[A] court may consider [a document outside the complaint] in determining whether to dismiss the complaint" if it "was integral to and explicitly relied on in the complaint" and there was no challenge to its authenticity. *See Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999). "However, the district court cannot go beyond these documents on a Rule 12(b)(6) motion; if it does, it converts the motion into

one for summary judgment. Fed. R. Civ. P. 12(b), 12(d), 56. Such conversion is not appropriate where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448 (4th Cir. 2011) (citation omitted).

Courts have interpreted "explicit" referral in the complaint to be specific to the document, versus a document that could generally fall into the same category as an allegation. *See, e.g., In re Cree, Inc. Sec. Litig.*, 333 F. Supp. 2d 461, 470 (M.D.N.C. 2004) ("Though Plaintiffs have not 'explicitly relied' on the articles in their complaint, Defendants essentially ask the court to look behind the complaint to find such reliance. This is not proper on a motion to dismiss."); *Tatum v. R.J. Reynolds Tobacco Co.*, 294 F. Supp. 2d 776, 781–82 (M.D.N.C. 2003) (because complaint did not reference documents at issue, documents should be excluded from consideration on a motion to dismiss under *Phillips*).

In the same vein, "[a] document is integral to a complaint when the plaintiff's claims are based on the document." *Selective Way Ins. Co. v. Home Depot Prod. Auth., LLC*, 823 F. Supp. 3d 583, 590 (E.D. Va. 2026).

Here, Frazier has submitted a series of inmate grievance forms and adjudications relating to incidents taking place at multiple correctional

28

facilities. While they follow the pattern of Frazier's more general allegations regarding, for example, a denial of gender-conforming clothing or cross-gender strip searches, none meet the requirement of explicit referral or integral reliance from the complaint.

And, most critically, Frazier had access to these when filing the original complaint; this stands in stark contrast with the majority of case law applying *Phillips*, where the *defendant* submitted the proposed documents for consideration at the motion to dismiss stage. As the Fourth Circuit has noted, "[t]he rationale underlying this exception [to Rule 12(d)] is that the primary problem raised by looking to documents outside the complaint—lack of notice to the plaintiff—is dissipated [w]here plaintiff has actual notice … and has relied upon these documents in framing the complaint." *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004) (internal quotation and citation omitted).

Frazier proffers no justification for her failure to append these documents to the original complaint, or to amend the complaint including them within the time allotted by Federal Rule of Civil Procedure 15(a).

Thus, pursuant to Rule 12(d) and *Phillips*, the undersigned recommends that the Court deny Frazier's motion to attach exhibits to the complaint, Docket Entry 48.

E. Moving Defendants' Motion for Protective Order from Early Discovery, Docket Entry 55, and Frazier's Motion for Discovery, Docket Entry 73

Here, the Moving Defendants seek a protective order pursuant to Federal Rule of Civil Procedure 26(c) providing that they are not compelled to respond to Frazier's premature discovery requests. They are correct: the Court has not yet ruled on the pending motions to dismiss and has not entered a scheduling order. Unless and until the Court enters a scheduling order, discovery shall not proceed. The Court grants the Moving Defendants' motion and denies Frazier's.

F. Frazier's Motion to File Electronically, Docket Entry 58, and Frazier's Second Motion to File Electronically, Docket Entry 75

Frazier has filed two separate motions to file electronically via the CM/ECF system. Pursuant to Local Rule 5.3(c)(2), "[u]pon the approval of the assigned Judge, a party to a case who is not represented by an attorney may register as a CM/ECF Filing User in the CM/ECF System solely for the purpose of the action." This is committed to the discretion of the Court, which can withdraw these permissions at any time.

29

The Court grants Frazier's motion to file electronically with this warning: duplicative filings will result in immediate termination of this privilege and the striking of any filings that run afoul of the Federal Rules of Civil Procedure or the Local Rules.

> G. Moving Defendants' Motion to Exceed Word Count, Docket Entry 62

For good cause shown, the Court grants this motion.

> H. Frazier's Motion for Extension of Time to File Response/Reply, Docket Entry 69; and Frazier's Motion to Exceed Page Limit, Docket Entry 71

With justification provided therefor, the Court grants these motions.

> I. Frazier's Cease and Desist Request, Docket Entry 77.

Finally, Frazier has submitted a filing styled as a "Cease and Desist Request" itemizing appeals of various internal prison decisions. The facts alleged mirror those advanced in the complaint, as well as the multiple filings Frazier has submitted throughout the life of this litigation.

This Court is not a prison review board. This Court is not a grievance committee. This Court abides by the structures set in place by the Federal Rules of Civil Procedure, the Local Rules of this district, and binding precedent issued by the appellate courts interpreting those rules. Litigants are bound by the same, whether represented or proceeding *pro se*. Going forward, filings that simply repeat the same allegations or request relief already sought will be stricken.

The Court has inherent authority to manage its docket, *see Dietz v. Bouldin*, 579 U.S. 40, 47 (2016), and strike improper filings, *see Iota Xi Chapter of Sigma Chi Fraternity v. Patterson*, 556 F.3d 138, 150 (4th Cir. 2007). Because this "cease and desist" filing does not fall into any permissible filing category, the Court directs the clerk to strike it.

## V. CONCLUSION

It is therefore **RECOMMENDED** that the Court grant in part and deny in part the defendants' Motions to Dismiss, in that the Court should:

> 1. **GRANT** the motion to dismiss with prejudice all claims against Dennis, Docket Entry 23;
> 2. **GRANT** the motion to dismiss with prejudice all claims against Agarwal, Amos, Beutler, Browning, Campbell, Catlett, Cobb, Collins, Evans, Faulk, Hardee, Harris, Hendricks, Hernandez, Hunt, Cooley-Dismukes, Jones, Junker, Langley, Laub, Locklear, Martin, Oxendine, Panter, Peiper, Ruiz, Sheitman, Timmons, Wargo, and

Williams in their official capacities, Docket Entry 64;

3. **GRANT** the motion to dismiss with prejudice all claims against NCDAC, Docket Entry 64;

4. **GRANT** the motion to dismiss with prejudice all claims against Evans, Hernandez, Martin, Ruiz, Laub, and Wargo in their individual capacities, Docket Entry 64;

5. **GRANT** the motion to dismiss without prejudice all claims against Agarwal, Amos, Beutler, Browning, Campbell, Catlett, Cobb, Collins, Faulk, Hardee, Harris, Hendricks, Cooley-Dismukes, Jones, Junker, Langley, Laub, Locklear, Oxendine, Panter, Peiper, Sheitman, and Williams in their individual capacities, Docket Entry 64;

6. **DENY** the motion to dismiss the Section 1983 claims and North Carolina constitutional claims against Hunt, Goodman, and Timmons in their individual capacities, Docket Entry 64;

7. **DENY** Frazier's motion for a preliminary injunction, Docket Entry 43;

8. **DENY** Frazier's motion for leave to file an amended complaint, Docket Entry 47; and

9. **DENY** Frazier's motion to attach exhibits to the complaint, Docket Entry 48.

**IT IS FURTHER ORDERED** that:

1. Frazier's Motion for Reconsideration, Docket Entry 41, is **DENIED**;

2. Frazier's Motion to Produce, Docket Entry 42, is **DENIED**;

3. Various defendants' Motion for Protective Order from Early Discovery, Docket Entry 55, is **GRANTED**;

4. Frazier's Motion to File Electronically, Docket Entry 58 and Frazier's Second Motion to File Electronically, Docket Entry 75 are **GRANTED**;

5. Moving Defendants' Motion to Exceed Word Count, Docket Entry 62; Frazier's Motion for Extension of Time to File Response/Reply, Docket Entry 69; and Frazier's Motion to Exceed Page Limit, Docket Entry 71 are **GRANTED**;

31

6. Frazier's Motion for Discovery, Docket Entry 73, is **DENIED;**
7. Frazier's Motion Entitled "Cease and Desist Request," Docket Entry 77, shall be **STRICKEN**.


_____
JoAnna Gibson McFadden
United States Magistrate Judge


August 10, 2026

32

| Defendant Name | Individual Capacity | Official Capacity | Causes of Action |
|---|---|---|---|
| NCDAC | NA | NA | |
| Leslie Cooley-Dismukes, Secretary of NCDAC | | Yes | 42 U.S.C. § 1983 (8th and 14th Amendments); Article I, Sections 19 and 27 of the N.C. Constitution |
| Brandeshawn Harris, Commissioner of the Division of Prisons (DOP) for NCDAC | | Yes | 42 U.S.C. § 1983 (8th and 14th Amendments); Article I, Sections 19 and 27 of the N.C. Constitution |
| Gary Junker, Assistant Commission of the DOP for NCDAC | Yes | Yes | 42 U.S.C. § 1983 (8th and 14th Amendments); Article I, Sections 19 and 27 of the N.C. Constitution |
| Lewis Jonathan Peiper, Director of Behavioral Health for DOP | | Yes | 42 U.S.C. § 1983 (8th Amendment); Article I, Section 27 of the N.C. Constitution |
| Elton Amos, member of the Utilization Review Board for DOP | | Yes | 42 U.S.C. § 1983 (8th and 14th Amendments); Article I, Section 27 of the N.C. Constitution |
| Josh Panter, Director of Operations for DOP | | Yes | 42 U.S.C. § 1983 (8th and 14th Amendments); Article I, Section 27 of the N.C. Constitution |
| Sarah Cobb, Director of Rehabilitative Services of DOP | | Yes | 42 U.S.C. § 1983 (8th and 14th Amendments); Article I, Section 27 of the N.C. Constitution |
| Jessica Laub, Staff Psychologist at Scotland Correctional Institution | | Yes | 42 U.S.C. § 1983 (8th and 14th Amendments); Article I, Section 27 of the N.C. Constitution |
| Dr. Collins, Regional Supervisor of Psychology covering Scotland Correctional Institution | | Yes | 42 U.S.C. § 1983 (8th and 14th Amendments); Article I, Section 27 of the N.C. Constitution |
| Charlotte Williams, Prison Rape Elimination Director for NCDAC | | Yes | 42 U.S.C. § 1983 (8th and 14th Amendments); Article I, Section 27 of the N.C. Constitution |

| Defendant Name | Individual Capacity | Official Capacity | Causes of Action |
|---|---|---|---|
| Terri Catlett, Director of Health Care Administration for DOP | | Yes | 42 U.S.C. § 1983 (8th and 14th Amendments); Article I, Section 27 of the N.C. Constitution |
| Valerie Langley, Director of Nursing for DOP | | Yes | 42 U.S.C. § 1983 (8th and 14th Amendments); Article I, Section 27 of the N.C. Constitution |
| Timothy Jones, Correctional Administrator I of the Pender Correctional Institution | | Yes | 42 U.S.C. § 1983 (8th and 14th Amendments); Article I, Section 27 of the N.C. Constitution |
| Amanda Ruiz, Case Manager, Pender Correctional Institution | Yes | | 42 U.S.C. § 1983 (8th and 14th Amendments); Article I, Section 27 of the N.C. Constitution |
| Rene Hernandez, Correctional Officer, Pender Correctional Institution | Yes | | 42 U.S.C. § 1983 (4th, 8th, and 14th Amendments); Article I, Section 27 of the N.C. Constitution |
| Cameron Evans, Correctional Officer, Pender Correctional Institution | Yes | | 42 U.S.C. § 1983 (4th, 8th, and 14th Amendments); Article I, Section 27 of the N.C. Constitution |
| Richard Wargo, Correctional Officer, Pender Correctional Institution | Yes | | 42 U.S.C. § 1983 (4th, 8th, and 14th Amendments); Article I, Section 27 of the N.C. Constitution |
| Kenneth Martin, Correctional Officer, Pender Correctional Institution | Yes | | 42 U.S.C. § 1983 (4th, 8th, and 14th Amendments); Article I, Section 27 of the N.C. Constitution |
| Helena Locklear, Correctional Officer Supervisor, Scotland Correctional Institution | Yes | | 42 U.S.C. § 1983 (4th, 8th, and 14th Amendments); Article I, Section 27 of the N.C. Constitution |
| Wayne Timmons, Correctional Officer, Scotland Correctional Institution | Yes | | 42 U.S.C. § 1983 (4th, 8th, and 14th Amendments); Article I, Section 27 of the N.C. Constitution |

34

| Defendant Name | Individual Capacity | Official Capacity | Causes of Action |
|---|---|---|---|
| John Hunt, Correctional Officer, Scotland Correctional Institution | Yes | | 42 U.S.C. § 1983 (4th, 8th, and 14th Amendments); Article I, Section 27 of the N.C. Constitution |
| Amanda Faulk, Psychologist, Scotland Correctional Institution | | Yes | 42 U.S.C. § 1983 (8th and 14th Amendments); Article I, Section 27 of the N.C. Constitution |
| Mary Beutler, Correctional Officer, Pender Correctional Institution | Yes | | 42 U.S.C. § 1983 (4th, 8th, and 14th Amendments); Article I, Section 27 of the N.C. Constitution |
| Oxendine Louie, Nurse, Scotland Correctional Institution | Yes | | 42 U.S.C. § 1983 (8th and 14th Amendments); Article I, Section 27 of the N.C. Constitution |
| Justin Hardee, Correctional Officer, Scotland Correctional Institution | Yes | | 42 U.S.C. § 1983 (8th and 14th Amendments); Article I, Section 27 of the N.C. Constitution |
| Susan Goodman, Correctional Officer, Scotland Correctional Institution | Yes | | 42 U.S.C. § 1983 (4th, 8th, and 14th Amendments); Article I, Section 27 of the N.C. Constitution |
| Arthur L. Campbell, Medical Director for DOP | Yes | Yes | 42 U.S.C. § 1983 (8th Amendment); Article I, Section 27 of the N.C. Constitution |
| Brian Sheitman, Chief of Psychiatry for DOP | | Yes | 42 U.S.C. § 1983 (8th Amendment); Article I, Section 27 of the N.C. Constitution |
| Abhay Agarwal, Deputy Medical Director for DOP | | Yes | 42 U.S.C. § 1983 (8th and 14th Amendments); Article I, Section 27 of the N.C. Constitution |
| Carmen Hendricks, Physician's Assistant practicing at Scotland Correctional Institution | | Yes | 42 U.S.C. § 1983 (8th and 14th Amendments); Article I, Section 27 of the N.C. Constitution |

35

| Defendant Name | Individual Capacity | Official Capacity | Causes of Action |
|---|---|---|---|
| Diane Browning, Family Nurse Practitioner, Pender Correctional Institution | | Yes | 42 U.S.C. § 1983 (8th and 14th Amendments); Article I, Section 27 of the N.C. Constitution |
| Kelly Dennis, Family Nurse Practitioner, Scotland Correctional Institution | | Yes | 42 U.S.C. § 1983 (8th and 14th Amendments); Article I, Section 27 of the N.C. Constitution |

36